| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No.  05CIV19-000006

TERESA ANN THOMPSON, Individually, )
and as Special Administer of the Estate of )
WINFIELD THOMPSON, SR., Deceased, and )
the ESTATE of WINFIELD THOMPSON, )
MELISSA PROCHNOW AND JAMIE )          **COMPLAINT**
HELGESON, as Special )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, )

             Plaintiffs, )

     v. )

WILLIAM HARRIE and  THE NILLES LAW )
FIRM, aka NILLES, SELBO &  HARRIE, )
LTD., and NODAK INSURANCE )
COMPANY, (fna NODAK MUTUAL )
INSURANCE COMPANY), and NODAK )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An )
Intermediate Stockholding Company), )
)

             Defendants.

COMES NOW, the Plaintiffs, Teresa Thompson, individually, and as Special

Administrator of the Estate of Winfield Thompson, deceased, and the Estate of Winfield

Thompson, Sr., Melissa Prchnow and Jamie Helgeson, by and through their counsel, Robin L.

Zephier and Seamus Culhane, make and file the Plaintiffs' causes of action against the above-

named Defendants, the Nilles Law Firm aka Nilles, Selbo and Harrie, Ltd., and the Defendant

Nodak Insurance Company, (fna Nodak Mutual Insurance Company and a mutual holding

company, Nodak Mutual Group, Inc., which are wholly owned subsidiaries of an interemediate

EXHIBIT
B

1

stockholding company known as N.I. Holding, Inc.), based upon the following facts and allegations, and Plaintiffs specifically also incorporate the Circuit Court's Order dated March 29, 2016 and the accompanying Findings of Fact and Conclusions of Law dated March 29, 2016 in Civ. No. 12-105. (Attached as **Exhibit "A"**). Therefore, this Complaint is based upon the following statements. Plaintiffs state and allege as follows:

1.      That the Plaintiff Teresa Thompson, is a resident of Sisseton, Roberts County, South Dakota.

2.      Winfield Thompson, deceased, the natural father of Plaintiff Teresa Thompson, was a resident of Sisseton, Roberts County, State of South Dakota.

3.      Plaintiff Melissa Prochnow and Jamie Helgeson, are the personal representative/special administrators of the Estate of Nicholas Helgeson, deceased, are resident of Hankinson, North Dakota.

4.      Plaintiff the Estate of Nicholas was setup in the State of North Dakota. Decedent Nicholas Helgeson was the natural son of Melissa Prochnow and Jamie Helgeson.

5.      Upon Plaintiffs' best knowledge and reasonable belief, Plaintiffs' know that Defendant William Harrie is and was at all times relevant to this action, an attorney with the Nilles Law Firm in Fargo, North Dakota, and that Harrie is and was licensed to practice law in the states of North Dakota and Minnesota. According to Plaintiffs' best knowledge and belief, the Nilles Law Firm regularly does insurance defense and personal injury defense work for civil defendants and for insurance companies such as Nodak. Nilles' registered agent is Nilles, Selbo & Harrie of Fargo, North Dakota.

6.      At the time of the subject November 6, 2009 motor vehicle accident, the

2

tortfeasor in the third party negligence action, Civ. No. 12-105, Fifth Circuit Court, Roberts County, South Dakota, Nicholas Helgeson (deceased), was an insured under an automobile insurance policy through the Defendant Nodak Insurance Company, (fna Nodak Mutual Insurance Company), and had said policy in effect at the time of said subject accident in 2009. The Defendant Nodak Insurance Company, (hereinafter, "Nodak"), to the Plaintiffs' best information, knowledge, and belief, was at all times relevant to this action, a duly registered insurance company, registered with the Divisions of Insurance for the State of North Dakota (but apparently not in South Dakota), and transacts insurance business and sells insurance policies in all counties in the state of South Dakota, and within the entire State of North Dakota. Nodak Insurance Company is now a wholly owned subsidiary of N.I. Holdings, Inc., and a part of Nodak Mutual Group, Inc. (a mutual holding company). All Nodak companies including N.I. Holdings, are located in Fargo, North Dakota.

7.     The acts complained of against said Defendants occurred in the state of South Dakota, and involved the physical presence and the telephonic communications in and with parties located within the State of South Dakota.

8.     On or about August 31, 2012, Plaintiff Teresa Thompson sued Nicholas Helgeson (now deceased) for the wrongful death of her father Winfield Thompson, Sr., (also deceased) in Roberts County, South Dakota, Fifth Judicial Circuit Court, Civil No. 12-105.

9.     On or about October 12, 2012, according to Plaintiffs' best knowledge and belief, Defendant Attorney William P. Harrie and his law firm, the Nilles Law Firm, were hired by Defendant Nodak Insurance Company, the auto liability insurance carrier (named insured was Melissa Prochnow, Helgeson's natural mother and Jamie Helgeson, the father of Nicholas Helgeson), to provide a civil defense for Helgeson in the third party direct action against

3

Helgeson in the wrongful death vehicle accident civil action, Civil No. 12-105. Attorney Harrie filed and served a formal written Notice of Appearance on the case dated October 12, 2012.

10.     On or about June 18, 2014, the Plaintiff received the formal written Answer and Demand for Jury Trial, signed by William Harrie as "Attorney for Defendant".

11.     Defendant Harrie appeared for hearings (all by telephone) in Roberts County, South Dakota on behalf of Nicholas Helgeson, at various proceedings on July 30, 2014, and December 3, 2015, and at a video conference deposition of Helgeson on June 30, 2015.

12.     According to Plaintiffs' best knowledge and belief, the Defendants Harrie and the Nilles Law Firm, as the legal counsel/legal agent, did, and had previously, acted as hired legal counsel and as legal agents for and on behalf of Defendant Nodak Insurance Company on many occasions, including the action in Civ. No. 12-105.

13.     That all the critical acts complained herein giving rise to the Complaint occurred within the state of South Dakota, including the discovery of the alleged negligent and/or intentional conduct of all of the Defendants, the full extent of the related damages, the motor vehicle accident in question and all of the litigation conduct relevant here, did occur within the state of South Dakota. The amount of claimed damages meets the requirements for the jurisdiction of the Circuit Court, and the venue is proper in the county circuit court for the State of South Dakota. Personal and subject matter jurisdiction exists over all parties in this action for all the reasons cited herein, and according to the state's long arm jurisdiction.

14.     That at all times pertinent herein, the Defendants, William Harrie and/or Nilles Law Firm, were acting by and through their agents and/or employees and legal representatives and personnel, including Nodak representatives, which acted for and on behalf of tortfeasor Helgeson and/or Nodak Insurance Company in all relevant acts complained

## PRACTICE OF LAW LEGAL NEGLIGENCE

4

Plaintiffs hereby incorporate paragraphs one through _____ (1-___) of this Complaint as if specifically set forth herein.

15.     That on or about November 6, 2009, the tortfeasor in the separate, but related underlying third party claim, Nicholas Helgeson, the third party tortfeasor, a Nodak Insurance Company insured, operated a motor vehicle owned by Patrick Nelson, near New Effington, Roberts County, South Dakota, in a negligent, careless and reckless manner. That negligence was the sole proximate cause of a motor vehicle accident resulting in bodily injuries and death to the Decedent Winfield Thompson, Plaintiff Teresa Thompson's natural father.

16.     That third party tortfeasor Nicholas Helgeson, owed Decedent Winfield Thompson, a duty to exercise reasonable care in the operation of the motor vehicle that the tortfeasor was operating at the time of the subject accident. Tortfeasor Helgeson breached that duty in that he failed to operate the vehicle in a safe and reasonable manner and thereby proximately and directly caused said motor vehicle accident killing two (2) passengers, including Decedent Winfield Thompson. The physical injuries and subsequent death of Decedent Winfield Thompson, occurred when the vehicle Helgeson was driving, crashed into the vehicle Winfield Thompson was riding in as a passenger, due to Helgeson's negligence, at the intersection of of 466th Avenue and Highway 127, in Roberts County, South Dakota.

17.     That as a direct and proximate result of the negligence of tortfeasor Helgeson, Decedent Winfield Thompson suffered serious injuries to his body, and died approximately four (4) hours later while being medically treated for the accident related injuries.

18.  ·   As a direct and proximate result of tortfeasor Helgeson's breach of his legal duty, Decedent Winfield Thompson suffered past medical expenses in an amount in excess of ($20,000) and other compensatory and special and general damages including but not limited to wrongful death, bodily injury, physical and emotional injuries, pain and suffering, loss of

5

enjoyment of life, disfigurement, funeral expense and other consequential damages. Plaintiff Teresa Thompson, individually and with the heirs of Winfield Thompson, and the Estate of Winfield Thompson, also suffered damages as a result of their father's death.

19.     The Decedent Winfield Thompson was not in any way, contributorily negligent in any manner or form, in causing this accident, or any of the Plaintiffs' damages.

20.     Plaintiff Teresa Thompson is one of the natural surviving daughters of the decedent, Winfield Thompson.

21.     Plaintiff Teresa Thompson is the administrator of the estate of Winfield Thompson, Sr..

22.     Plaintiffs are entitled to receive damages for and on behalf of the Estate, as well as in their own right, and that of Decedent Winfield Thompson's heirs.

23.     The acts of Nicholas Helgeson directly and proximately caused Winfield Thompson's death on November 6, 2009.

24.     Decedent suffered fatal internal injuries which caused his death.

25.     Decedent survived for 4 hours after the injury, until his ultimate death on November 6, 2009.

25.     That I am the attorney for Plaintiffs Teresa Thompson, as Special Administrator for the Estate of Winfield Thompson, and the Estate, in the above entitled action;

26.     That on the 26th day of September 2012, the Defendant Nicholas Helgeson was served the Summons and Complaint in Civ. No. 12-105 by and through an Admission of Service signed by his then, private civil defense counsel, Kurtis Greenley. (See **Exhibit A**, attached). Helgeson had been paying attorney Greenley out of his own private funds.

27.     That on September 26, 2012 Plaintiff's counsel gave Defendant Helgeson and his

6

defense attorney, an indefinite amount of time to formally Answer the Summons and Complaint in light of the fact that a civil declaratory action on the insurance coverage issue was still being litigated in a separate civil action entitled Nodak Mutual Insurance Company vs. Nicholas Helgeson, Dale Laroche, as Personal Representative of the Estate of Richard Chell; and Teresa Thompson, as Special Administrator of the Estate of Winfield Thompson, Civil File No.: 11-55, which was filed in Fifth Circuit Court, Roberts County, South Dakota, with Circuit Court Judge Jon Flemmer presiding.  (See **Exhibit B,** attached).

   28.     That on October 12, 2012, Defendant attorney William P. Harrie was apparently hired by Defendant Helgson's auto liability insurance carrier, Nodak Mutual Insurance Company, to provide a civil defense for Helgeson in the third party direct action against Helgeson in this case, Civil No. 12-105.  Attorney Harrie filed and served a formal Notice of Appearance on that case dated October 12, 2012, thereby appearing to serve as lead defense counsel on the direct action.  There was no other mention or reference to any other Defense attorney in said notice, except for William Harrie.

   29.     That the Circuit Court in the declaratory action, Nodak Mutual Insurance Company vs. Nicholas Helgeson, Dale Laroche, as Personal Representative of the Estate of Richard Chell; and Teresa Thompson, as Special Administrator of the Estate of Winfield Thompson, Civil File No.: 11-55, issued its memorandum decision dated March 12, 2014, which declared that Nodak must provide coverage and a defense for Helgeson individually, immediately and thereafter.  (See **Exhibit D,** attached).

   30.     That on April 14, 2014, Plaintiffs' counsel sent a letter to Defendant's counsel Mr. Harrie, (which was the only attorney who had formally entered any sort of formal appearance on behalf of Defendant Helgeson in Civ. No. 12-105), requesting if Defendant had filed its formal Answer in the above-referenced action, and expressly providing time limit

settlement demands of both estates. The settlement demand offer for the Thompson Estate was for the policy limits of $100,000 and the time limit demand required an acceptance of said policy limits demand no later than April 28, 2014 by 5:00 p.m. MST.

31.    There was no formal or informal response at all from Harrie, Nilles, Nodak or Nicholas Helgeson, to the $100,000 policy limits demand on or before April 28, 2014, so said policy limits demand was withdrawn.

32.    That on May 12, 2014 Plaintiffs' counsel sent a letter requesting that Defendant's attorney William Harrie formally file a formal Answer to the Complaint on behalf of Defendant Helgeson. (See **Exhibit E**, attached). That letter specifically said:

> I am writing to you to ask you to please file your formal Answer on the above-referenced matter within 30 days of the date of this letter. I am forced to write this letter to you in light of the fact that I have not received any type of response from you to my earlier communication dating back to early April, 2014.

33.    That on June 18, 2014, the Plaintiff received the Answer and Demand for Jury Trial, signed by William Harrie. [not signed by Mark Hanson, who is another listed attorney in Mr. Harrie's law firm in Fargo, North Dakota].

34.    That more than thirty-three (33) days had passed as of the date of the First Motion for Default Judgment. It was now 585 days past since the formal Answer was due on or about June 17, 2014.

35.    That two (2) formal hearings have taken place, one (1) on July 31, 2014, on Plaintiff's Motion for Default Judgment, and a subsequent formal hearing on December 3, 2015, on Plaintiff's Motion to Compel the Discovery Deposition of Defendant, both of which Defense attorney William Harrie attended and appeared. No other attorney including Mr. Hanson, made any appearance at those hearings, nor signed any of the formal pleadings. It was learned that

8

Mr. Harrie was not licensed to practice law in the State of South Dakota, and did not seek to file a formal Pro Hac Vice notice or Affidavit on his own behalf. Mr. Harrie was signed all previous pleadings in his own name, and at no time in Mr. Hanson's name. In January 2016, another separate attorney form Mr. Harrie's firm in North Dakota, Mark Western, physically appeared at the Roberts County Courthouse to take the depositions of all of the Decedent's heirs on January 20, 2016. Mr. Western also was not licensed to practice in South Dakota, but he did not sign formal pleadings or appear at a trial or formal hearing, such as Mr. Harrie had done. Mr. Harrie did nothing to disclose or reveal his alleged unauthorized practice of law in this case under these circumstances, to Plaintiff's counsel, the Defendant or to the Circuit Court.

36.     That having previously filed suit against Nicholas Helgeson on _____ in the direct third party negligence action in Roberts County Fifth Circuit Court, Civ. No. 12-105, Plaintiffs Thompson and the Thompson Estate on _____ set a time limit $100,000 policy limits time limit settlement demand to Defendant Harrie by letter indicating that Nicholas Helgeson had until _____ in which to accept the $100,000 liability policy limits settlement demand to completely resolve the case/claims in Civ. No. 12-105. The Defendant Nicholas Helgeson had not yet even been contacted by Harrie or Nilles prior to expiration date of the _____ time limit policy limits settlement demand.

37.     Although Harrie and Nilles owed a fiduciary duty to inform their client Nicholas Helgeson of any settlement offers/demands, and especially a demand within Nicholas Helgeson's liability policy limits of $100,000, neither Harrie, Nilles nor Nodak, contacted, advised or discussed said time limit/policy limit settlement demand at all, prior to the expiration of that demand which expired on _____.

38.     That the Declaratory Action entitled Nodak _____ v. _____, Civ. No.

9

_____, Defendant Nodak was seeking to have the Circuit Court declare that Nodak had no duty to defend Helgeson or any duty to cover him or the Thompson/Chell claims, nor to indemnify Nicholas Helgeson, its own insured.

39.     Nicholas Helgeson had to hire his own private legal counsel, Kurt Greenley, at his own expense, to defend him and his interests in the Declaratory Action in Circuit Court, Civ. No. _____. The costs of that defense would end up exceeding the $50,000.

40.     The Circuit Court, Honorable Jon S. Flemmer, did previously rule on an initial Plaintiffs' (First) Motion for Default Judgment filed by Plaintiff Teresa Thompson in Civ. No. 12-105, dated June 17, 2014, where the Circuit Court (the Trial Court) denied said motion because an Answer signed by Helgeson's attonrey,  Defendant Harrie, had been filed approximately 33 days beyond the time to Answer.

41.     The formal Answer had been initially due on May 14, 2014, based upon correspondence between counsel prior to the Plaintiff's First Motion for Default Judgement being filed.

42.     The Circuit Court at a hearing held on July 30, 2014, did deny said Plaintiffs' (First) Motion for Default Judgment and did allow the leeway for Helgeson's Answer to stand, which was filed on or about June 18, 2014.

43.     The previous formal Answer filed by defense counsel, Defendant Harrie, dated June 18, 2014, listed Attorney Mark Hanson, (a member of Defendant Harrie's Fargo, North Dakota law firm, Defendant Nilles Law Firm), and Defendant Harrie, but the Answer was only actually signed by Defendant Harrie, and not by Mr. Hanson.

44.     That Defendant Harrie did physically appear as defense counsel at a discovery deposition of his client, Mr. Helgeson, taken by video conference from Fargo, North Dakota, on June 30, 2015.

10

45.     That Plaintiff Teresa Thompson did file a Plaintiff's First Motion to Compel dated December 30, 2015, to attempt to re-depose Mr. Helgeson as a result of Defendant Harrie's abusive conduct and advisements to his client during said June 30, 2015 deposition. Harrie appeared at the hearing on said motion. The Circuit Court granted the motion to redepose Helgeson.

46.     That Plaintiffs' counsel did discover on or about January 21, 2016, or soon thereafter, that Defense attorney Defendant Harrie, was not licensed to practice law in the state of South Dakota, and that Defendant Harrie had never sought admission to practice in South Dakota on the case by Pro Hac Vice, at all, from October 12, 2012 through January, 2016.

47.     Defendant Harrie represented Nicholas Helgeson for nearly four (4) years and did nothing to disclose or reveal his alleged unauthorized practice of law in the State of South Dakota in this case, to anyone, including the Trial Court, nor did he file for Pro Hac Vice to be admitted to practice in South Dakota at any time prior to the events in early February 2016.

48.     That based upon the information learned by Plaintiffs' counsel, a Renewed Motion for Default Judgment against Helgeson, and a Motion to Quash all prior pleadings signed by Defendant Harrie, were filed and served upon Helgeson and Defendant Harrie on or about January 26, 2015.

49.     Harrie then sought Pro Hac Vice admission to practice in the South Dakota Court by Affidavit and Motion filed by Attorney Greg Peterson of Aberdeen, South Dakota, dated January 28, 2016.

50.     That Plaintiff Teresa Thompson did file an objection to Harrie's Pro Hac Vice Admission request, dated January 28, 2016.

51.     That the Circuit Court, on February 26, 2016, did rule upon Defendant Harrie's

11

January 28, 2016 Motion for Pro Hac Vice, and determined that the Motion for Pro Hac Vice filed by Mr. Peterson on behalf of Defendant Harrie, was denied.

52.    The Circuit Court found that Defendant Harrie did not comply with the requirements of SDCL §16-18-2 before he commenced practicing law in South Dakota, which requirements are mandatory, and not subject to substantial compliance.

53.    The Circuit Court specifically found that Defendant Harrie unlawfully practiced law in South Dakota from June 2014 to January 26, 2016, appearing for at least one deposition and two formal hearings before the Trial Court (one on July 31, 2014, and the second on December 3, 2015).

54.    During the time from June 2014 to January 26, 2016, Defendant Harrie never attempted to remedy his non-compliance with SDCL §16-18-2.  Rather, Defendant Harrie continued to practice in South Dakota without notifying the Court, or the Plaintiffs.

55.    The Circuit Court specifically found that, Defendant Harrie's conduct counsels against him satisfying subsection six (6) of SDCL 16-18-2. It provides:

> A statement that the applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]  SDCL 16-18-2(6).

56.    The Circuit Court found that between June 2014 and January 26, 2016, Defendant Harrie of the Nilles Law Firm of Fargo, North Dakota, did commit the unauthorized practice of law in the State of South Dakota in violation of SDCL §16-18-1 and 16-18-2.

57.    That between June 2014 and January 26, 2016, Defendant Harrie never once reasonably, willingly or formally disclosed this unauthorized practice of law to Plaintiffs' counsel Mr. Zephier, or to the Trial Court.

12

58.     Defendant Harrie's conduct in the case indicated that he could not satisfy the requirements of SDCL 16-18-2 (6), which provides that the "applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]".

59.     The Circuit Court found that doing what he did in the case, Defendant Harrie engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he began practicing law without a license in front of the Circuit Court and by failing to notify the Court for one year and seven months.

60.     Defendant Harrie's conduct in this case did constitute a violation of Rule 8.4 (c) of the South Dakota Rules of Professional Conduct.  Rule 8.4 (c) states that it is professional misconduct for a lawyer to: "(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation".

61.     The Circuit Court, upon examination of Defendant Harrie's conduct and his affidavit for pro hac vice admission, was not satisfied that Harrie could "observe the ethical standards required of attorneys in this state[.]"

62.     The Circuit Court's conclusion in the matter in denying Defendant Harrie's admission to practice law in this state under the pro hac vice statutory requirements, was further solidified by the lack of civility and professionalism exhibited by Defendant Harrie at the Deposition of Nicholas Helgeson conducted on June 30, 2015.

63.     The Circuit Court determined that the Plaintiffs Teresa Thompson and the Estate of Winfield Thompson, were and are prejudiced by Defendant Harrie's conduct and his unauthorized practice of law in this State, and in the case.

13

64.     The Circuit Court determined that the Court's time had been wasted in that Defendant Harrie made several appearances before the Trial Court and, although the Court did not directly ask Defendant Harrie if he was licensed to practice law in South Dakota, Defendant Harrie did not indicate to the Court that he was not licensed to do so, and appeared on his own at that time, without licensed counsel.

65.     While it appeared that a member of the law firm that Defendant Harrie is a part of, Mr. Hansen, was licensed to practice law in South Dakota, the name of Mr. Hansen was on the formal Answer, but the signature on the June 18, 2014 formal Answer of Helgeson, was Mr. Harrie's signature, and Mr. Harrie was not authorized to practice law in South Dakota at that time. Mr. Harrie also appeared before the Court on his own on each occasion without notifying the Court or party opponents of his unlicensed status.

66.     The appropriate way for an attorney who is not licensed in South Dakota to become able to proceed in appearing in South Dakota as set forth in the pro hac vice statutes, SDCL 16-18-2, is to follow that procedure, but that procedure was not even attempted to be followed until Mr. Peterson became involved in the case, and the request for pro hac vice admission was made on January 28, 2016.

67.     The Circuit Court was familiar with the prior proceedings and matters that the Trial Court had been involved in regarding the declaratory action and the criminal proceeding involving Helgeson.

68.     The Circuit Court recognized that the pro hac vice statute would require an attorney like Defendant Harrie in that situation, to appear with a South Dakota resident attorney present in the Trial Court for all court hearings, as well as actually having the admission pro hac vice completed before any legal pleadings were signed or filed.

14

69.     While Mr. Hansen could certainly have signed pleadings and made appearances as a licensed member of the South Dakota bar, he did not take those actions in the case at all.  It was only Defendant Harrie who appeased.

70.     The Circuit Court concluded that the formal Answer prepared and filed by Defendant Harrie in June 2014, was quashed, as Defendant Harrie was not authorized to practice law in South Dakota at the time that he took action on behalf of the Helgeson by signing and filing formal pleadings in the Court, and appearing and arguing before the Trial Court without a license in South Dakota or without admission pro hac vice.

71.     While Default Judgment may be a harsh remedy, the Circuit Court must examine whether or not there was excusable neglect and whether there was a meritorious defense.

72.      While there had been a defense set forth in the formal Answer of June 18, 2014, the neglect and conduct in the case by Mr. Harrie, is in the failure to become admitted prior to proceeding with the formal proceedings in this South Dakota court.  This is not excusable.

73.     To allow the formal June 18, 2014 Answer to stand, in the Circuit Court's determination and discretion, would simply reward the conduct and allow the action to proceed, when, in fact, no legitimate Answer was ever filed.

74.     The pleadings signed and/or filed by Defendant Harrie acting as defense counsel for Helgeson, because of Harrie's unauthorized practice of law in South Dakota, were ruled to be null and void, including the formal Answer dated June 18, 2014.

75.     The Circuit Court concluded that the appropriate action was to quash the Answer and all other pleadings signed by Defendant Harrie and to therefore, grant the Plaintiffs' Renewed Motion for Default Judgment in asmuch as Defendant Harrie's actions were a nullity, and no Answer or responsive pleading has been filed at all in this case.

15

76.     On March 29, 2016, the Honorable Jon S. Flemmer signed an Order Granting Plaintiffs' Renewed Motion for Default Judgment, and signed the Findings of Fact and Conclusions of Law (**Exhibit A**).

77.     Plaintiffs sustained damages as a direct and proximate cause of Defendant Nodak Insurance Company's and Defendant Harrie's, breach, of their duty to properly represent Helgeson and as a result of Harrie's unauthorized practice of law, which ended up costing Plaintiffs time and expense in the form of attorneys fees, costs of litigation, and damages associated with anxiety, mental suffering, negligent/intentional infliction of emotional distress, frustration, humiliation, worry, embarrassment, pain and suffering, loss of peace of mind, loss of trust in the court system,  lost income, travel expenses, and other consequential losses.

78.     Defense counsel Mark Arndt of Sioux Falls took over Helgeson's civil defense on the case on March 4, 2016.  Arndt moved to set aside the default judgment.  The Court denied said motion on March 29, 2016.

79.     A Damages trial was set to be held on November 1, 2017, in order to determine the full extent, nature and amount of Plaintiffs' damages.

80.     Attorney Arndt, on Helgeson's behalf, filed a May 18, 2016 Motion for Jury Trial to be held on the damages, rather then to have a court trial.  Thompson opposed said motion.

81.     The Circuit Court held a hearing on April 10, 2017, and granted Helgeson's Motion to have a Jury Trial on the Plaintiffs' damages.

82.     The January 20, 2016 depositions of the Thompson heirs were deemed invalid by Plaintiffs as a result of Harrie's unauthorized practice of law which had, up until that point, remained unknown, concealed, suppressed, misrepresented, and/or purposefully hidden from Plaintiffs and the Court.

16

83.     Harrie's conduct in practicing law in South Dakota without a license caused undue delay and significant added monetary expense because of its illegality.

84.     Defendant Nodak and Defendant Nilles Law Firm apparently and/or obviously knew or should have known of the fact that in this case, Civ. No. 12-105, Harrie was practicing law in a South Dakota case without a proper South Dakota law license or without proper pro hac vice admission.

85.     Defendants Nodak, Nilles, and Harrie, all did, or should have reasonably known, that such information such as Harrie's lack of legal authorization to practice in South Dakota in this case, was an obvious fact that absolutely needed to be revealed and disclosed to the Court and their opponents in the litigation, Plaintiffs.  Defendants therefore knew or should have known that such concealment, suppression, misrepresentation and nondisclosure of such a material fact would and will cause damage to the party opponents, the Plaintiffs.  But Defendants went ahead negligently, recklessly, and/or purposefully, anyway, despite that knowledge or those likely consequences, and in light of what the Defendants each knew not to be the truth.

86.     That Defendants Harrie, Nilles and Nodak acted intentionally, wantonly, oppressively, purposefully, willingly, and with reckless disregard for Plaintiffs' rights, remedies, interests, or condition, when the Defendants chose to intentionally deceive and/or defraud the Court and the Plaintiffs in Civ. No. 12-105, as a result of Harrie's conduct.

Craig O. Ash is a licensed attorney practicing law in South Dakota.

87.     William Harrie is a licensed attorney practicing law in North Dakota.

88.     At all times relevant to this Complaint, William Harrie practiced law with the law firm known as NILLES LAW FIRM.

89.     At all times relevant to this Complaint, the law firm known as NILLES LAW FIRM

17

was a Professional Partnership, with an office in Fargo, North Dakota.

90.     From at least October ___, 2012 through February 1, 2016, Nicholas Helgeson was a client of William Harrie and NILLES LAW FIRM.

91.     On or before October ___, 2012, William Harrie and NILLES LAW FIRM undertook the legal representation Nicholas Helgeson on a personal injury claim Teresa Thompson and the Thompson Estate had arising from a motor vehicle incident on November ___, 2009.

92.     At the time of the motor vehicle incident on November___, 2009, Nicholas Helgeson was driving a Jeep vehicle owned by Patrick Nelson, a Fargo resident.

93.     Decedent Winfield Thompson and Richard Chell, were insured and died as a direct result of the motor vehicle incident when the Chell vehicle with Winfield Thompson as a passenger was struck by the Jeep vehicle being driving by Nicholas Helgeson with the permission of Patrick Nelson.

94.     The circumstances under which Winfield Thompson was injured and died from, gave rise to a legal claim for personal injuries and wrongful death by Teresa Thompson and the Thompson Estate against Nicholas Helgeson.

95.     On or about _____, Robin L. Zephier and Abourezk & Zephier Law Firm issued a COMPLAINT that asserted Teresa Thompson and Thompson Estate's personal injury claim against Nicholas Helgeson, the driver of an automobile involved in the incident on November ___, 2009.

96.     The document attached to this Complaint as Exhibit A is an accurate copy of the substance of the COMPLAINT that Robin L. Zephier and Abourezk & Zephier Law Firm issued on or about _____ on behalf of Teresa Thompson and the Thompson Estate.

97.     At all times relevant to this Complaint, William Harrie and Nilles Law Firm

18

provided legal representation to Nicholas Helgeson with respect to the motor vehicle incident on November __, 2009.

98.    At all times relevant to this Complaint, William Harrie was acting on behalf of the partnership known as NILLES LAW FIRM and within the scope of his authority to do so.

99.    Defendants owed Nicholas Helgeson (deceased) the duty to possess the knowledge and skill ordinarily possessed by attorneys in good standing engaged in handling personal injury claims in South Dakota, the duty to use the care and skill ordinarily exercised under similar circumstances by attorneys in good standing handling personal injury claims in South Dakota, and the duty to be diligent in an effort to accomplish the purposes for which they were employed.

100.    Defendants violated their duties to Nicholas Helgeson (deceased); their failures include, *but are not necessarily limited to*:

    a.    failing to possess the knowledge and skill ordinarily possessed by attorneys in good standing engaged in handling personal injury claims in South Dakota;

    b.    failing to use the care and skill ordinarily exercised under similar circumstances by attorneys in good standing handling personal injury claims in South Dakota;

    c.    failing to obtain any proper legal authority and/or authorization to legally practice law in the State of South Dakota in a timely and appropriate manner;

    d.    failing to advise their client that handling his claim may require knowledge, skill, and expertise beyond that possessed by the Defendants;

    e.    failing to initiate a pro hac vice motion in which to legally and properly represent Nicholas Helgeson in the South Dakota action;

    f.    subordinating Nicholas Helgson's interest to the conflicting interest of another of their clients;

    g.    failing to refer their client to an attorney possessing any special knowledge, skill, and expertise required to handle her personal injury claim;

    h.    failing to be diligent in an effort to accomplish the purposes for which they were employed;

    i.    failing to prosecute their client's claim;

    j.    failing to keep their client reasonably apprised of the status of her claim; and

19

k.   failing to make reasonable efforts to settle their client's claim.

l.   failing to communicate the _____ $100,000 Nodak auto liability policy limits settlement demand to their client Nicholas Helgeson before said time limit policy limit demand expired on _____..

m.   Failing to advise their client Nicholas Helgeson to accept the _____ policy limits settlement demand prior to or by the time limits demand expiration date of _____.

101. As a direct and proximate result of Defendants' failure to fulfill their duties to

Nicholas Helgeson, Helgeson sustained

a.   general damages that include mental anguish and loss of enjoyment of life; and

b.   special damages that include, but are not necessarily limited to

     i.   defense legal fees and costs in Civ. No. _____;

     ii.   interest on the above amount; and

     iii.   increased legal fees and costs.

     iv.   Pain & suffering.

     v.   Loss of enjoyment of life.

     vi.   Anxiety, frustration, loss of income.

102. Defendants' violation of their duties to Nicholas Helgeson was in wanton and

reckless disregard of Nicholas Helgeson's rights, such that Nicholas Helgeson's Estate is entitled

to exemplary damages.

## COUNT TWO: FRAUD AND DECEIT

Plaintiffs hereby incorporate paragraphs one through ___ (1-___) of the Complaint as if

fully set forth herein

103. Fraud in South Dakota pursuant to SDCL § 20-10-1 is defined as:

One who willfully deceives another, with an intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

104. Deceit in South Dakota pursuant to SDCL § 20-10-2 is defined as:

(1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
(2) the assertion, as a fact, of that which is not true, by one who has no reasonable

20

ground for believing it to be true;
(3) the suppression of a fact by one who is bound to disclose it, or who gives
information of other facts which are likely to mislead for want of communication
of that fact, or
(4) a promise made without any intention of performing.

105. The Circuit Court has already determined as a matter of fact and law that
Defendant Harrie has committed "fraud," "deceit", "dishonesty" and "misrepresentation" in his
actions in practicing law in the State of South Dakota without a South Dakota law license or by
proper admission under pro hac vice.

106. Harrie's law firm, Defendant Nilles Law Firm in Fargo, North Dakota, it is
alleged, knew or should have known of Harrie's conduct, individually and/or collectively, and
that Harrie had done similar things in the past with other clients and other cases.

107. Harrie's conduct is legally imputed to that of the Nilles Law Firm as he is a
partner in that firm and the Nilles Law Firm did or should have authorized and/or condoned all
of Harrie's conduct in Civ. No. 12-105 and in other similar South Dakota personal injury and
insurance claim defense claims and cases over the past years.

108. Defendant Harrie and Defendant Nilles Law Firm, to Plaintiffs' best knowledge
and belief, have been hired by Defendant Nodak Mutual Insurance Company for many previous
and subsequent personal injury and/or insurance defense cases out of South Dakota, other then
the case involving Helgeson in Civ. No. 12-105.  Nodak Mutual employed Harrie and Nilles,
whereby Nodak paid Harrie and Nilles to represent Nodak itself and/or Nodak Insureds (such as
Prochnow and Helgeson) in cases involving South Dakota events, courts and persons.  Harrie
and Nilles therefore served as Nodak's agents in an agency setting, and/or as employer and
employee, and/or as master and servant under respondiat superior principles and considerations,
at all times relevant to these proceedings. Nicholas Helgeson and Plaintiffs Melissa Prochnow

21

and the Estate of Nicholas Helgeson, were clients of William Harrie and Nilles Law Firm and were first party named insureds of Defendant Nodak at all times relevant to these claims.

109. That therefore as a result of the agent and agency relationship and/or the employer/employee relationship of Nodak to Harrie and Nilles, Harrie's and Nills' conduct and knowledge, is also legally imputed to Nodak by either actual and/or constructive knowledge, awareness, permission, authorization (ostensible, actual, apparent and/or direct) and acquiesce.

110. The fraudulent conduct of Harrie committed in South Dakota by and through his appearance though telecommunications, at hearings and/or depositions and by signing pleadings, forms the basis of the fraudulent inducement which occurred, and created a proximate cause and/or direct cause resulting in damage to all Plaintiffs, (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) the Court(s), and the public at large. The direct damage to then client, Nicholas Helgeson, resulted in the legal negligence, et. al, claims against Winfield Thompson and Nilles Law Firm and Nodak, being legally assigned to Teresa Thompson and Estate of Winfield Thompson, Melissa Prochnow, Jamie Helgeson and the Estate of Nicholas Helgeson retain some of their own separate injury/damage that is also assigned.

111. Harrie's conduct in practicing law without a license in South Dakota in Civ. No. 12-105, and by intentionally not disclosing his unlicensed status to the Court, caused damage to Plaintiffs in the form of undue delay, pain and suffering, anxiety, mental anguish, intentional infliction of emotional distress, negligent infliction of emotional distress, worry, frustration, embarrassment, loss of peace of mind, humiliation, lost income, loss of trust in the Courts, pain and suffering, travel expenses, attorneys fees in excess of $200,000, litigant expenses in excess of $50,000, and other consequential losses.

112. Harrie and Nilles, and Nodak, all intentionally and/or negligently and/or recklessly concealed and/or suppressed Harrie's and Nilles' unauthorized practice of law to the Court and to the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson), since October 2012, when Harrie first signed an appearance in Fifth Circuit Court in Civ. No. 12-105, and through 2016.

113. Harrie, Nilles and Nodak, intentionally misrepresented Harrie's status as a properly authorized or licensed attorney in South Dakota, since Harrie's first appearance in Civ. No. 12-105 in October 2012, and through 2016.

114. Harrie, Nilles and Nodak, intentionally deceived the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) (and the Courts) by Harrie's unauthorized practice of law in South Dakota since his first appearance in Civ. No. 12-105, in October 2012 and through 2016.

115. The individual and combined intentional and/or negligent conduct of the Defendants Harrie, Nilles and/or Nodak, on a joint and several basis, in defrauding, concealing, suppressing, misrepresenting, and deceiving the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) (and the Courts and the public) by Harrie's unauthorized practice of law in South Dakota in Civ. No. 12-105, from October 2012 through 2016, directly and/or indirectly induced the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) (and the Courts) to continue spending time, money, expense, emotional energy, and physical and emotional effort on pursuing justice in Civ. No. 12-105, not knowing of Harrie's concealed and undisclosed unauthorized practice of law, all

23

to Plaintiffs' detriment and damage. This conduct was both negligent, reckless and/or intentional.

116. By committing fraud, deceit, dishonesty and misrepresentation in these matters, the Defendants, proximately and directly caused damage to the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) in the form of attorneys fees, costs of litigation, intentional/negligent infliction of emotional distress, anxiety, pain and suffering, worry, frustration, humiliation, embarrassment, loss of peace of mind, loss of trust in the court system, lost income, travel expenses and other consequential losses.

## COUNT THREE:
## CIVIL CONSPIRACY AGAINST DEFENDANTS HARRIE, NILLES LAW FIRM, AND NODAK INSURANCE COMPANY

Plaintiffs hereby incorporate paragraphs one through _____ (1-___) of the Complaint as if fully set forth herein.

117. Since the time of initiation of the litigation in Civ. No. 12-105, and now as of the date of the present action, Nodak Mutual Insurance Company has changed its name to Nodak Insurance Company which is a subsidiary of a holding company known as Nodak Mutual Group, Inc., in Fargo, North Dakota. Nodak Insurance Company is a wholly owned subsidiary of N.I. Holdings, Inc., in Fargo North Dakota. Nodak Mutual Group, Inc., is a mutual holding company recently formed and owns 55% of the N.I. Holdings, Inc., All of the Nodak Companies, including N.I. Holdings, are located in and have registered agents in Fargo, North Dakota.

118. Conspiracy to violate the law, occurs when one or more parties (persons, artificial persons, entities, companies, corporations, etc.), agree to violate the law. In this action, Plaintiffs' best knowledge and reasonable belief suggests that all Defendants knew of Harrie's

24

conduct in the case of Civ. No. 12-105, and potentially in many other previous and/or subsequent claims and cases, and all defendants conspired to continue to violate the law of the unauthorized practice of law in South Dakota courts.

119. That between October 12, 2012 and January 21, 2016 Defendants Nodak, Harrie and Nilles, knew or should have reasonably known that Harrie was practicing law in South Dakota without a license, with the full permission, consent, acquiescence and/or knowledge of all Defendants..

120.    According to Plaintiffs' best knowledge and belief, Defendants Harrie, Nilles and Nodak have both suppressed and failed to reasonably disclose their use of unlicensed attorneys, to its policyholders and to the public, as well as to the Courts and to party opponents, when suppression of these facts is likely to, and actually does, mislead the policyholders, courts and litigants, as it did all Plaintiffs, here.

121. According to Plaintiffs' best knowledge and belief, Defendants Harrie, Nilles Law Firm and Nodak, have and may have been committing the unauthorized practice of law, in the State of South Dakota on many other similar insurance related and personal injury actions and claims in South Dakota, such as the one involving Helgeson in Civ. No. 12-105, in the past, present, and since January 2016.

122. The arrogant and snub nature in which Defendant Harrie conducted himself in the tort action in Civ. No. 12-105, before he was caught in his unauthorized practice of law conduct in 2016, reasonably suggest that he and his firm, as the main legal defense firm for Nodak Insurance Company's insurance claims and cases in North and South Dakota, may be utilizing or have utilized, unlicensed attorneys in other claims in South Dakota, with the apparent and /or actual knowledge, consent, permission, and/or acquiescence of Nodak Insurance Company and

25

of course, Harrie and Nilles.

123. Harrie's and Nodak's conduct in Civ. No. 12-105 suggests that it was no significant concern that Harrie was practicing law in South Dakota without a license to do so. That conduct suggest culpability and an intent to continue to do so. If that is true, then such is a conspiracy to violate state law and the rules of the South Dakota Courts, and the rights and remedies of party opponents such as all Plaintiffs here.

124. The effect of this alleged civil conspiracy is to violate state, tribal and federal law, to breach duties of reasonableness, ethics, good faith and fair dealing, and to unfairly defraud, and to deceive innocent party litigants, opponents, claimants, the Courts and the public, and consumers in general, including all Plaintiffs here.

125. Nodak, as an insurance corporation along with its parent and subsidiary companies, N.I. Holdings, Inc., and Nodak Mutual Group, Inc., are required to abide by the laws of any state where they transact the business of insurance (sales, marketing, claims handling, etc.). therefore, Nodak and its companies are required to abide by the specific South Dakota insurance regulation statutes such as SDCL §58-6-1, 58-6-2, 58-33-49, 58-33-66 (2), 58-33-67, and 58-33-68.

126. The alleged civil conspiracy committed by the Defendants as mentioned herein, proximately and directly caused damage to all of the Plaintiffs as previously enunciated in Counts I, II and III.

## COUNT FOUR: BARRATRY/ABUSE OF PROCESS

Plaintiffs hereby incorporates paragraphs one through _____(1-____) of this Complaint as if fully set forth herein.

127. Nicholas Helgeson was insured by Defendant Nodak Mutual Insurance Company

(now, known as Nodak Insurance Company) ("Nodak") with an insurance policy number

_____("Policy").

128. Nodak does business in North and South Dakota, including the sale of the Policy to Nicholas Helgeson and his mother Melissa Prochnow.

129. According to Plaintiffs' best knowledge and reasonable belief, Defendant Harrie, Nilles and Nodak knew that Harrie and others at the Nilles Law Firm, were getting hired by Nodak on insurance defense and personal injury defense claims and cases in South Dakota (and possibly in other states), when Harrie and/or any other attorneys from the Nilles Law Firm were not licensed to practice law in South Dakota.

130. According to Plaintiffs' best knowledge and reasonable belief, that if Defendants all knew that such unauthorized practice of law was occurring in South Dakota on said claims and cases, and the Defendants purposefully and intentionally proceeded in the face of that known fact, then such negligent, intentional and/or reckless conduct would and was conducted in a malicious way and with bad faith toward the Courts, the public, and to the innocent opposing parties, such as all Plaintiffs here.

131. Plaintiffs suffered separate harm and damage as a result of the Defendants' negligent, reckless and/or intentional conduct, which proximately and directly caused said damage to all Plaintiff in the form of pain and suffering, intentional/negligence infliction of emotional distress, anxiety, mental suffering, worry, embarrassment, undue delay, humiliation, loss of peace of mind, loss of trust in the court system, attorneys fees, litigation costs, travel expenses, loss of income, and other consequential losses.

## COUNT FIVE: NODAK'S BREACH OF CONTRACT

Plaintiffs hereby incorporates paragraphs one through _____(1-___) of this

27

Complaint as if fully set forth herein.

132. Nicholas Helgeson and Melissa Prochnow, at all time material therein, were insured under the Policy.

133. Nicholas Helgeson and Melissa Prochnow were insured by Nodak on or about November ___, 2009. On this date Nicholas Helgeson caused a motor vehicle accident in Roberts County, South Dakota, which ended up causing sever bodily injury and ultimate death of Winfield Thompson and Richard Chell.

134. The Policy provides coverage for liability motor vehicle benefits in the even Nicholas Helgeson would injure/damage someone else in a covered accident.

135. That among other things, Nodak was required to property review, investigate, and in good faith evaluate the third party liability claim made against Nicholas Helgeson.

136. By Nodak's conduct, it breached the contract of insurance reflected in the Policy.

137. In order to pursue Theresa Thompson's and Thompson Estate's personal injury/survival/wrongful death claims, Teresa Thompson and Thompson Estate filed a lawsuit against Nicholas Helgeson captioned in the State of South Dakota, Fifth Judicial Circuit, Roberts County, Civil File No. 12-105 which resulted in a jury verdict in the amount of $_____.

138. As a result of Nodak's refusal to honor its contract, Nicholas Helgeson and Nicholas Helgeson Estate was damaged. Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson, and the Nicholas Helgeson Estate, also suffered emotional and physical distress complicated and exacerbated by the additional stress of having to go to trial and the rigors of litigation due to the conduct of Nodak in refusing to indemnify and pay the claimants/Plaintiffs for their damages pretrial, and to accept the April 14, 2014 policy limits time limit settlement demand of the Thompson Estate.

## COUNTY SIX: NODAK'S BREACH OF DUTY OF GOOD FAITH AND FAIR DEALINGS

Plaintiffs hereby incorporates paragraphs one through _____ (1-____) of this Complaint as if fully set forth herein.

139. Plaintiffs reallege and incorporate by reference the foregoing paragraphs.

140. Every contract in South Dakota includes the duty of good faith and fair dealing.

141. Nodak did not honor its duty of good faith and fair dealings with respect to Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate.

142. Nodak preferred itself and its own financial interest, in contravention and resistance of its good faith and fair dealings, over that of its insured.

143. Nodak failed to perform its required duties and obligations which it owed to their insured, Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate.

144. Nodak breached the duty of good faith and fair dealing it owed to Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate.

145. As a result of Nodak's breach of its duty of good faith and fair dealing, Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, were damaged.

## COUNT SEVEN: NODAK'S BAD FAITH

Plaintiffs hereby incorporates paragraphs one through _____ (1-____) of this Complaint as if fully set forth herein.

146. Nodak drafted the policy.

147. Nodak knew that Nicholas Helgeson had a contractual right to be defended and indemnified in the claim against Nodak under the terms and conditions of the policy.

148. Nodak knew that Nicholas Helgeson has a contractual right to be defended and

29

indemnified in the claim against Nodak under the terms and conditions of the Policy.

149. Nodak failed in fulfilling its duties and obligations which it owed to its insured under the terms and conditions of the Policy.

150. Nodak acted in bad faith toward Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, in refusing to follow proper claims handling procedures and in performing the duties owed to Nicholas Helgeson, Melissa Prochnow, and Jamie Helgeson as a result of the Thompson claim.

151. Nodak acted in bad faith toward Nicholas Helgeson, Melissa Prochnow, and Jamie Helgeson in refusing to indemnify them for the full value of the policy limits coverage and/or jury verdict as a result of forcing him to defend against a claim in order to protect his rights.

152. As a result of Nodak's bad faith conduct toward Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, all Plaintiffs were damaged.

## COUNT EIGHT: NODAK'S BREACH OF FIDUCIARY DUTY

Plaintiffs hereby incorporates paragraphs one through _____(1-____) of this Complaint as if fully set forth herein.

153. That Defendant Nodak Insurance Company has acted in bad faith in its failure to reasonably and promptly provide payment of the $100,000 liability policy limit time limit settlement demand made by Teresa Thompson and the Thompson Estate which expired on April 28, 2014 of first party Uninsurd Motorist (UM) and/or Medical Payments Coverage (MPC) insurance benefits to Todd Mack for his bodily injuries, by unreasonably withholding said benefits, when it is obvious and undeniable that Teresa Thompson and the Winfiled Thompson Estate had suffered bodily injury and death as a result of the accident, at least to some undisputed degree and amount.

30

154. That Defendant Nodak Insurance Company has acted in bad faith, and not in good faith, in its failure to reasonably investigate said accident, its severity, and the serious and severe nature of Winfield Thompson and Thompson Estate's injuries and damages, as a result of the accident of its own insured caused by Nicholas Helgeson negligence, and in denying and/or delaying a reasonable payment of liability bodily injury policy benefits to Teresa Thompson, Thompson Estate, once adequate reasonable proof of the same has been provided to Defendant Nodak's claims personnel.

155. The Defendant, at the point of marketing, sale and initiation of the automobile insurance policy product to innocent and unsuspecting citizens such as to Nicholas Helgeson, Melissa Prochnow, and Jamie Helgeson, and those other named insureds similarly situated, by and through its agents, does not reasonably, fully, or sufficiently disclose to its named insureds, that first party claim(s) for benefits will be subject to this form of claim handling and scrutiny, prior to first party claim benefits being handled, diminished, withheld, denied or paid. In fact, unsuspecting named insureds are most times totally unaware of these types of first party claims handling tactics, until it is too late, and they find themselves feeling the physical, emotional and financial stress of having their own insuror deny, withhold or diminish first party benefits defense costs, indemnity, in this unreasonable fashion, and at a time when the policyholder/insured needs to the carrier's obligation to come through the most. This is the position Plaintiff Decedent Nicholas Helgeson and Melissa Prochnow found themselves in as a result of Defendant's conduct.

156. That by reason of the foregoing, the Defendant is liable to the Plaintiff by and for Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, for an amount to be determined by a jury and, in addition thereto, for the intentional, malicious and

31

unreasonable refusal to pay reasonable damages to its insured; and for punitive and exemplary

damages in the sum to be set by a jury herein, after giving due consideration to the net worth and

earnings of the Defendant.

157. That Defendant Nodak Insurance Company and/or its successors and predecessors

in interest has acted in bad faith by unfairly and unreasonably using a computer software claims

handling system(s) called Colossus and/or COA, etc., in MPC and UM/UIM claims. Colossus

and/or Claims Outcome Analyst (COA), are amongst several competing software claims

handling systems used purportedly for valuing verdict values of first and third party bodily

injury claims. These systems are represented to the public, when they are disclosed at all, as a

"tool" for helping the adjustor to reach the injury value due to the insured or claimant. To

Plaintiff's best knowledge and belief, Defendant uses Colossus, COA and/or some similar claims

handling program or process to delay and undervalue claims, to save money for the Defendant's

claims department, at the claimants expense.

158. By allowing their claims employees and/or hired house legal counsel to participate

in its employee incentive compensation program(s), Nodak, according to Plaintiffs' best

knowledge and reasonable belief, is promoting a claim handling system which does not pay

much or promptly on claims, including legitimately owed third party liability claims, and which

is intended to achieve combined ratio goals that would create a conflict of itnerest for claims

handlers if they receive incentive pay or bonuses for achieving lower claims payments. This

incentive pay structure leads to using claim severity goals to affect the company's profitability

which has an effect on individual claims payment amounts to Nodak's insureds, including

Plaintiffs here.

159. Plaintiffs reallege and incorporate by reference the foregoing paragraphs.

160. Nodak owed a fiduciary duty to its insured Nicholas Helgeson, Melissa Prochnow.

161. Nodak preferred its own interest over that of its insured, by refusing to property follow the proper claims and procedures in handling the claim of their insured.

162. Nodak breached its fiduciary duty to Nicholas Helgeson and Melissa Prochnow.

163. As a result of Nodak's breach of its fiduciary duty, Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate were damaged.

### COUNT NINE: NODAK'S RESPONSIBILITY FOR ATTORNEY FEES

Plaintiffs hereby incorporates paragraphs one through _____(1-____) of this Complaint as if fully set forth herein.

164. Nodak refused to pay the full amount of the loss as required under the Policy.

165. Nodak refusal to properly handle the Teresa Thompson and Thompson Estate claim without reasonable cause.

166. Nodak's refusal to indemnify, investigate, and handle proper policies and procedures of claims handling/settlement was without reasonable cause.

167. Nodak should be required to pay a sum to Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate as reasonable attorney fees on attorney fees for the costs of defending Nicholas Helgeson and recover the defense costs and verdict indemnity amounts owed to Nicholas Helgeson Estate, Melissa Prochnow, Jamie Helgeson, Teresa Thompson and Thompson Estate under the policy.

### COUNT TEN: NODAK'S RESPONSIBLE FOR EXEMPLARY DAMAGES

Plaintiff reallege and incorporate by reference the foregoing paragraphs.

168. Nodak committed the torts of bad faith and breach of fiduciary duty against Plaintiff's Estate of Nichals Helgeson, Melissa Prochnow and Jamie Helgeson.

33

169. Nodak's torts were willful, malicious and/or wanton.

170. Nodak must be punished for their conduct, and an example must be made of the conduct of American Family.

171. Exemplary damages should be awarded against Nodak to deter this type of conduct in the future.

## COUNT VII

## PUNITIVE DAMAGES

Plaintiff hereby incorporates paragraphs 1-_____ of this Complaint as if fully set forth herein.

172. In doing all the tings herein alleged, Defendant Nodak acted intentionally, recklessly, vexatiously, oppressively and/or maliciously and is guilty of a wanton and reckless disregard of the contractual, common law and statutory rights of the Nichals Helgeson, Melissa Prochnow and Jamie Helgeson and Nicholas Helgeson Estate.

173. Plaintiffs are entitled to punitive damages as the only way of deterring Nodak Insurance Company from continuing to employ these wrongful, willful, intentional, unreasonable, and vexatious tactics against its own policyholders and first party insureds.

174. According to Plaintiffs' best knowledge and belief, in doing all the things herein alleged, Defendants Harrie, Nilles and/or Nodak Insurance Company acted intentionally, recklessly, wantonly, vexatiously, oppressively and/or maliciously and were guilty of a wanton and reckless disregard of the contractual, common law and statutory rights of all of the Plaintiffs.

175. Plaintiffs are entitled to punitive damages as the only way of deterring Defendants Harrie, Nilles and/or Nodak Insurance Company from continuing to employ these wrongful, oppressive, deceitful, fraudulent, unreasonable and vexatious tactics against innocent

34

party/litigants, including, but not limited to, Plaintiffs, and the Courts of South Dakota and the public at large.

WHEREFORE, Plaintiffs request for judgment individually, and jointly and severally, against each of the Defendants as follows:

1.  For the actual expenses incurred in the full and complete compensation for all tort and statutory damages sustained by Plaintiffs in the subject incident and as a result of the Defendants' fraud, legal negligence, deceit, civil conspiracy, bad faith, breach of contract, negligence, reckless conduct, and any and all subsequent and nondisclosure conduct, and for the actual expenses incurred incidental to the said damages, past, present and future, and to the procuring of said expenses, reimbursements, losses and damages to the date of trial, together with interest thereon;

2.  For such monetary compensation as shall fully compensate for all of the losses, including, but not limited to, pain and suffering, mental anguish, worry, anxiety, frustration, humiliation, embarrassment, loss of income, travel expenses, undue delay, negligent and intentional infliction of emotional distress, loss of trust, loss of peace of mind, attorneys fees, litigation costs and consequential loss sustained by Plaintiffs to the date of trial with interest thereon and which is likely to continue into the future, in a sum to be determined by the jury in this case;

3.  For an additional sum as and for punitive or exemplary damages in an amount to be set by the jury herein, based upon the best financial information available as to each Defendant according to SDCL §21-3-2.

4.  For Plaintiffs' attorney fees, costs, and expenses of these proceedings, and because of Defendants' vexatious, unreasonable, intentional and abusive conduct;

5.    For prejudgment interest on any award to which Plaintiffs are held entitled by the

jury; and

6.    For such other and further relief as the Court deems just and equitable.

DATED this _____ day of October, 2018.

ABOUREZK, ZEPHIER, & LAFLEUR


By: /s/ Robin L. Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Seamus Culhane
    Turbak Law Office, P.C.
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517


**TRIAL BY JURY IS HEREBY REQUESTED**

36

STATE OF SOUTH DAKOTA )
)§
COUNTY OF ROBERTS )

IN CIRCUIT COURT

FIFTH JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the )
Estate of WINFIELD THOMPSON )
deceased, and DALE LAROCHE, )
Individually, And As Special Administrator )
for the Estate of RICHARD CHELL, )
deceased, )
)
Plaintiffs, )
)
v. )
)
NICHOLAS HELGESON, )
)
Defendant. )

Civil No.: 12-105

**FILED**

MAR 2 9 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
5TH CIRCUIT CLERK OF COURT
By_____

**ORDER GRANTING PLAINTIFF'S
MOTION TO QUASH DEFENDANT'S
MOTION FOR PRO HAC VICE OF
WILLIAM HARRIE**

The above-entitled action having come before this Court on Defendant's Motion for Pro

Hac Vice and Plaintiffs' Motion to Quash Pro Hac Vice, and the Court having read and

considered the submittals of the parties and the arguments of counsel; and good cause appearing

thereon, it is hereby

ORDERED that the Defendant's attorney William Harrie did not comply

with SDCL §16-18-2 and therefore the Defendant's Motion for Pro Hac Vice is DENIED; and it

is hereby further

ORDERED that the attached Findings of Fact and Conclusions of Law will be hereby

incorporated in full herein in support of said Order.

Dated this 29th day of March 2016.

BY THE COURT:

_Jon S. Flemmer_

Honorable Jon S. Flemmer





PLAINTIFF'S
EXHIBIT
A

Circuit Court Judge

ATTEST:

By: _____

Deputy

(SEAL)

2

STATE OF SOUTH DAKOTA    )
                              )§
COUNTY OF ROBERTS        )

IN CIRCUIT COURT

FIFTH JUDICIAL CIRCUIT

Civil No.: 12-105

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the   )
Estate of WINFIELD THOMPSON     )
deceased, and DALE LAROCHE,      )
Individually, And As Special Administrator )
for the Estate of RICHARD CHELL,    )
deceased,                            )
                                 )
                    Plaintiffs,  )
                                 )
v.                                )
                                 )
NICHOLAS HELGESON,        )
                                 )
                    Defendant.  )

**FILED**

MAR 29 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
5TH CIRCUIT CLERK OF COURT
By_____

FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON
PLAINTIFF'S RENEWED MOTION
FOR DEFAULT JUDGMENT AGAINST
DEFENDANT HELGESON, AND
MOTION TO QUASH

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S RENEWED MOTION FOR DAMAGES AGAINST DEFENDANT HELGESON, AND MOTION TO QUASH

The above-captioned action, through Plaintiffs' Renewed Motion for Default Judgement and for Damages, having come before the Court duly for hearing on Monday, February 29, 2016; and the Plaintiff appearing through her attorney of record, Robin L. Zephier of Abourezk & Zephier, P.C. appearing by phone, and the Defendant having appeared by counsel Greg Peterson, and Plaintiff LaRoche appearing by phone, after written notice of said hearing was sufficiently provided to Defendant and LaRoche; and the Court having received and considered the written submissions of the Plaintiff Thompson and the Defendant, and the argument of counsel; and the Court having determined the arguments and authorities provided by the Plaintiff Thompson, and the Renewed Motion for Default Judgment having been GRANTED; and good cause appearing for entry of

Findings of Fact and Conclusions of Law, and an Order on the same; therefore, the following shall constitute the Court's Findings and Conclusions accordingly:

## FINDINGS OF FACT

1. Any Finding of Fact that should more appropriately be a Conclusion of Law, or vice versa, shall be treated as such for all purposes herein.

2. The oral pronouncements by the Court that are properly considered as Findings of Fact, made during the hearing of February 29, 2016, shall be, and hereby are, ratified and reasserted herein by this reference as if set forth in their entirety, and shall be considered as the primary and controlling Findings of Fact for all purposes herein.

3. These Findings of Fact are intended to aid, in summary fashion, explanation of the determination made by the Court and announced in open court at the conclusion of the February 29, 2016 hearing, and not in substitution thereof.

4. Plaintiff Teresa Thompson is one of the natural surviving daughters of the decedent, Winfield Thompson.

5. Plaintiff Teresa Thompson is the administrator of the estate of Winfield Thompson.

6. Plaintiff is entitled to receive damages for and on behalf of the Estate, as well as in her own right, and that of Decedent's Winfield Thompson's heirs.

7. The acts of Defendant Nicholas Helgeson directly and proximately caused Winfield Thompson's death on November 6, 2009.

8. Decedent suffered fatal internal injuries which caused his death.

9. Decedent survived for 6 hours after the injury, until his ultimate death on November 6, 2009.

2

10. Plaintiff Teresa Thompson is the rightful person to receive a damages award for and on behalf of the Estate, and in her own right personally, and in the name of the other heirs.

11. The Court has presided over this matter, as well as the declaratory judgment matter that preceded this case, and also the criminal trial of Mr. Helgeson.

12. The Court did previously rule on an initial Plaintiffs' Motion for Default Judgment filed by Plaintiff Teresa Thompson dated June 17, 2014, where the Court denied said motion because an Answer signed by Mr. Harrie had been filed.

13. The formal Answer had been initially due based upon correspondence between counsel prior to the Plaintiff's Motion for Default Judgement being filed.

14. The Court at a hearing held on July 3, 2014, did deny said Plaintiffs' Motion for Default Judgment and did allow the leeway for the Answer to stand, which was filed on or about June 18, 2014.

15. The previous formal Answer filed by defense counsel, Mr. Harrie, dated June 18, 2014, listed Mr. Mark Hanson, a member of Mr. Harrie's Fargo, North Dakota law firm, and Mr. Harrie, but the Answer was only signed by Mr. Harrie, and not by Mr. Hanson.

16. That Mr. Harrie did appear as defense counsel at a discovery deposition of his client, Mr. Helgeson, taken by video conference from Fargo, North Dakota, on June 30, 2015.

17. That Plaintiff Teresa Thompson did file a Plaintiff's First Motion to Compel dated December 30, 2015, to attempt to re-depose Mr. Helgeson as a result of Mr. Harrie's conduct and advisements to his client during said deposition.

18. That Plaintiffs' counsel did learn in January, 2016, that Defense attorney Mr. Harrie, was not licensed to practice law in the state of South Dakota, and that Mr. Harrie had never sought admission to practice in South Dakota on this case by Pro Hac Vice, at all from June 2014 through January, 2016.

3

19.   That based upon the information learned by Plaintiffs' counsel, a Renewed Motion for Default Judgment against Defendant Helgeson, and a Motion to Quash all prior pleadings signed by Mr. Harrie, were filed and served upon Mr. Harrie on or about January 26, 2015.

20.   Defendant's attorney Mr. William Harrie of Fargo, North Dakota, then sought Pro Hac Vice admission to practice in this South Dakota Court by Affidavit and Motion filed by Greg Peterson of Aberdeen, South Dakota, dated January 28, 2016.

21.   That Plaintiff Teresa Thompson did file an objection to Harrie's Pro Hac Vice Admission request, dated January 28, 2016.

22.   That the Court, on February 26, 2016, did rule upon Mr. Harrie's January 28, 2016 Motion for Pro Hac Vice, and determined that the Motion for Pro Hac Vice filed by Mr. Peterson on behalf of Mr. Harrie, was denied.

23.   The Court found that Mr. Harrie did not comply with the requirements of SDCL §16-18-2 before he commenced practicing law in South Dakota, which requirements are mandatory, and not subject to substantial compliance.

24.   The Court specifically found that Mr. Harrie unlawfully practiced law in South Dakota from June 2014 to January 26, 2016, appearing for at least one deposition and two formal hearings before the Court (one on July 31, 2014, and the second on December 3, 2015).

25.   During the time from June 2014 to January 26, 2016, Mr. Harrie never attempted to remedy his non-compliance with SDCL §16-18-2. Rather, Mr. Harrie continued to practice in South Dakota without notifying the Court.

26.   The Court specifically found that, Mr. Harrie's conduct counsels against him satisfying subsection six of SDCL 16-18-2. It provides:

4

A statement that the applicant is familiar with the rules of the State Bar

of South Dakota governing the conduct of members of the State Bar of

South Dakota, and will at all times abide by and comply with the same

so long as such trial or hearing is pending, and he or she has not

withdrawn as counsel therein[.]  SDCL 16-18-2(6).

27.  In essence, Mr. Harrie engaged in conduct involving dishonesty, fraud, deceit or

misrepresentation when he began practicing law without a license in front of this Court

and by failing to notify the Court for one year and seven months.

28.  This conduct by Mr. Harrie does constitute a violation of Rule 8.4(c) of the South

Dakota Rules of Professional Conduct.

29.  Consequently, the Court, upon examination of Mr. Harrie, is not satisfied that he can

"observe the ethical standards required of attorneys in this state[.]" SDCL 16-18-2.

30.  This conclusion is further solidified by the lack of civility and professionalism

exhibited by Mr.

Harrie at the Deposition of Nicholas Helgeson conducted on June 30, 2015.

## CONCLUSIONS OF LAW

The Court hereby enters the following Conclusions of Law:

1. Any Conclusion of Law that should more appropriately be a Finding of Fact, or

vice versa, shall be treated as such for all purposes herein.

2. The oral pronouncements by the Court that are properly considered as Conclusions

of Law, made during the hearing of February 29, 2016 shall be, and hereby are,

ratified and reasserted herein by this reference as if set forth in their entirety, and shall

5

be considered as the primary and controlling Conclusions of Law for all purposes herein.

3. These Conclusions of Law are intended to aid, in summary fashion, explanation of the determination made by the Court and announced in open court at the conclusion of the February 29, 2016 hearing, and not in substitution thereof.

4. Defendant Helgeson was legally responsible and liable for Decedent Winfield Thompson's death and the resulting related and legally caused damages yet to be established at the damages hearing.

5. Plaintiff Teresa Thompson is the rightful person to receive a damages award for and on behalf of the Estate of Winfield Thompson, and in her own, and the heirs' right.

6. That between June 2014 and January 26, 2016, Mr. William Harrie of the Nilles Law Firm, in Fargo, North Dakota, did commit the unauthorized practice of law in the State of South Dakota in violation of SDCL §16-18-1 and 16-18-2.

7. That between June 2014 and January 26, 2016, Mr. Harrie never once reasonably, willingly or formally disclosed this unauthorized practice of law to Plaintiffs' counsel Mr. Zephier, or this Court.

8. Mr. Harrie's conduct in this case indicates that he cannot satisfy the requirements of SDCL 16-18-2 (6), which provides that the "applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]".

6

9. By doing what he has done in this case, Mr. Harrie engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he began practicing law without a license in front of this Court and by failing to notify the Court for one year and seven months.

10. Mr. Harrie's conduct in this case does constitute a violation of Rule 8.4(c) of the South Dakota Rules of Professional Conduct.

11. The Court, upon examination of Mr. Harrie's conduct and his affidavit for pro hac vice admission, is not satisfied that he can "observe the ethical standards required of attorneys in this state[.]"

12. The Court's conclusion in this matter in denying Mr. Harrie's admission to practice law in this state under the pro hac vice statutory requirements, is further solidified by the lack of civility and professionalism exhibited by Mr. Harrie at the Deposition of Nicholas Helgeson conducted on June 30, 2015.

13. The Court determines that the Plaintiffs were and are prejudiced by Mr. Harrie's conduct and his unauthorized practice of law in this State, and in this case.

14. The Court determines that the Court's time has been wasted in that Mr. Harrie made several appearances before this Court and, although the Court did not directly ask Mr. Harrie if he was licensed to practice law in South Dakota, Mr. Harrie did not indicate to the Court that he was not licensed to do so, and appeared on his own at that time, without licensed counsel.

15. While it appears that a member of the law firm that Mr. Harrie is a part of, Mr. Hansen, is licensed to practice law in South Dakota, the name of Mr. Hansen was on

7

the formal Answer, but the signature on the June 18, 2014 formal Answer of the
Defendant Helgeson, was Mr. Harrie's signature, and Mr. Harrie was not authorized
to practice law in South Dakota at that time.

16. The appropriate way for an attorney who is not licensed in South Dakota to
become able to proceed in appearing in South Dakota as set forth in the pro hac vice
statutes, SDCL 16-18-2, is to follow that procedure, but that procedure was not
followed until Mr. Peterson became involved in the case recently and the request for
pro hac vice admission was made on January 28, 2016.

17. The Court is familiar with the prior proceedings and matters that this Court has
been involved in regarding the declaratory action and the criminal proceeding.

18. The Court recognizes that the pro hac vice statute would require an attorney like
Mr. Harrie in that situation, to appear with a South Dakota resident attorney present in
Court for all court hearings, as well as actually having the admission pro hac vice
completed before any legal pleadings were signed or filed.

19. While Mr. Hansen could certainly have signed pleadings and made appearances
as a licensed member of the South Dakota bar, he did not take those actions in this
case to date.

20. The Court concludes that the formal Answer prepared and filed by Mr. Harrie in
June 2014 is quashed at this time, as Mr. Harrie was not authorized to practice law in
South Dakota at the time that he took action on behalf of the Defendant by signing
and filing formal pleadings in the Court, and appearing and arguing before the Court
without a license in South Dakota or without admission pro hac vice.

8

21. While Default Judgment may be a harsh remedy, the Court must examine whether or not there was excusable neglect and whether there is a meritorious defense.

22. While there has been a defense set forth in the formal Answer of June 18, 2014, the neglect in this case by Mr. Harrie, is in the failure to become admitted prior to proceeding with the formal proceedings in this South Dakota court. This is not excusable.

23. To allow the formal June 18, 2014 Answer to stand, in the Court's determination and discretion, would simply reward the conduct and allow the action to proceed, when, in fact, no legitimate Answer was ever filed.

24. The pleadings signed and/or filed by Mr. Harrie acting as defense counsel for Defendant Helgeson, because of Harrie's unauthorized practice of law in South Dakota, are null and void, including the formal Answer dated June 18, 2014.

25. The Court concludes that the appropriate action is to quash the Answer and all other pleadings signed by Mr. Harrie and to therefore, grant the Renewed Motion for Default Judgment in asmuch as Mr. Harrie's actions were a nullity, and no Answer or responsive pleading has been filed at all in this case.

26. A Damages hearing needs to be held in order to determine the full extent, nature and amount of Plaintiffs' damages.

27. Based upon the foregoing Findings of Fact and Conclusions of Law, an Order consistent therewith should be entered accordingly.

Dated this _29th_ day of _March_, 2016.

BY THE COURT:

9



_____
Honorable Jon S. Flemmer
Circuit Court Judge

ATTEST:

By: _____
Deputy

(SEAL)

10

| /STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| COUNTY OF ROBERTS | )§ )| FIFTH JUDICIAL CIRCUIT |

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the )
Estate of WINFIELD THOMPSON, )
deceased, )
                       )

                 Plaintiffs, )

v. )

The Estate NICHOLAS HELGESON, )
deceased, and MELISSA PROCHNOW )
(mother of Nicholas Helgeson), and JAMIE )
HELGESON (father of Nicholas Helgeson), )
as Representatives of the Estate of Nicholas )
Helgeson, )
                       )

                 Defendant. )

Civil No.: 12-105

**AMENDED JUDGMENT**

     The above-entitled matter, having come on regularly for trial by jury on November 1st and

2nd, 2017, before the Honorable Jon S. Flemmer, Circuit Court Judge, and the jury; and the

Plaintiffs, Teresa Thompson, Individually, and as Special Administrator for the Estate of

Winfield Thompson Sr., deceased, and the Estate of Thompson, appearing personally and by

their attorneys, Robin L. Zephier of Abourezk, Zephier & LaFleur, and Seamus Culhane of

Turbak Law Office, and the Defendant, the Estate of Nicholas Helgeson and Melissa Prochnow

as Representatives of the Estate of Nicholas Helgeson, appearing personally and by its attorneys,

Mark Arndt of May & Johnson, P.C., evidence having been offered and received by the Court;

and the matter having been submitted to the jury on November 2nd, 2017, and the jury having

returned its verdict in favor of Plaintiffs, Teresa Thompson, Individually, and the heirs of

Winfield Thompson, Sr., and the Estate of Thompson, and the verdict being duly received and

filed herein and made a record of this court, and a hearing being held upon Plaintiffs' Application



for Costs re: Prevailing Party and Plaintiffs' Motion for Award of Fees, Costs & Expenses

Pursuant to Rule 36 and 37 and Fees on February 26, 2018;

NOW, THEREFORE, on the verdict of the jury, it is hereby

ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and the Estate of

Thompson, have judgment on their complaint against the Estate of Nicholas Helgeson in the

amount of $127,219.60; and it is

FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and

the Estate of Thompson have judgment against the Estate of Nicholas Helgeson, for prejudgment

interest in the amount of $24,131.86, and it is

FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and

the Estate of Thompson have judgment against the Estate of Nicholas Helgeson, for attorney fees

for SDCL § 15-6-36 & 37, Requests for Admissions relief in the amount of $5,857.50 ($5,500.00

fees and $357.50 tax), and it is

FURTHER ORDERED that Plaintiffs, Teresa Thompson, and the Estate of Thompson

shall also have judgment against Defendant, the Estate of Nicholas Helgeson, for their costs and

disbursements herein in the amount of $3,475.16, such costs and disbursements to be taxed by

the Clerk of this Court in the amount inserted herein in such sum as shall by law be allowed,

which shall leave the total amount of the post verdict Amended Judgment of $160,684.12.

Dated this_____ day of February, 2018.

BY THE COURT: Signed: 3/14/2018 1:12:25 PM

_____
Jon S. Flemmer
Circuit Court Judge

Attest:
Guy, Brenda
Clerk/Deputy

2

ATTEST:
CLERK OF COURTS

By_____
      Deputy
(S E A L)

3

SEP. 13. 2012  4:50PM    ABOUREZK LAW                         NO. 6826   P. 3

STATE OF SOUTH DAKOTA       )       IN CIRCUIT COURT
                            )§
COUNTY OF ROBERTS           )       FIFTH JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )    Civil No.
And As Special Administrator for the )
Estate of WINFIELD THOMPSON        )              **FILED**
deceased, and DALE LAROCHE,        )
Individually, And As Special Administrator )      **OCT 0 5 2012**
for the Estate of RICHARD CHELL,   )
deceased,                          )       SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
                                   )            5TH CIRCUIT CLERK OF COURT
                                   )       By_____
                    Plaintiffs,    )
                                   )
v.                                 )       **ADMISSION OF SERVICE**
                                   )
NICHOLAS HELGESON,                 )
                                   )
                    Defendant.     )

      Personal service of the enclosed and attached *Summons and Complaint*, has been made

upon the Kurtis Greenly for service upon Nicholas Helgeson, and is hereby admitted by receipt of

true copies thereof on this _26TH_ day of September, 2012.

                                         Kurtis Greenley
                                         Attorney for Nicholas Helgeson

      SUBSCRIBED AND SWORN to before me this _26th_ day of September, 2012.

                                         Notary Public

My commission expires:

[S E A L]

KATHRYN M QUINN
Notary Public
Minnesota
My Commission Expires January 31, 2015


PLAINTIFF'S
EXHIBIT

STATE OF SOUTH DAKOTA                          IN CIRCUIT COURT

COUNTY   OF   ROBERTS                         FIFTH JUDICIAL CIRCUIT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NODAK MUTUAL INSURANCE          \*    Civ. _____
COMPANY,
                                \*
    Plaintiff,
                                \*
vs.                                          COMPLAINT
                                \*
NICHOLAS HELGESON; DALE
LAROCHE, as Personal Representative of    \*
the ESTATE OF RICHARD CHELL; and
TERESA THOMPSON, as Special               \*
Administrator of the ESTATE OF
WINFIELD THOMPSON,                         \*

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff, for its claim for relief against the Defendants, alleges as follows:

1.    This is an action for a declaratory judgment to determine coverage under an auto insurance policy.

2.    Plaintiff is a corporation authorized to do business in North Dakota with its principal place of business in the State of North Dakota and incorporated under the laws of the State of North Dakota.

3.    Defendant Nicholas Helgeson is an individual and resident of the State of North Dakota.

4.    At the time of the accident, Richard Chell was a resident of the State of South Dakota.

5.    At the time of the accident, Winfield Thompson was a resident of the State of South Dakota.

6.    Defendant Nicholas Helgeson is an insured driver under automobile insurance policy, PAND 000419882.

1



PLAINTIFF'S
EXHIBIT

7.      The policy contains an exclusion for individuals using a vehicle without a reasonable belief that said individual is entitled to do so. See Exclusion A. 8 in policy attached as Exhibit 1.

8.      On November 6, 2009, Defendant Nicholas Helgeson was driving a 1994 Jeep Grand Cherokee owned by Patrick Nelson.

9.      Defendant Helgeson was headed south on 466th Avenue near its intersection with South Dakota Highway 127 in Roberts County, South Dakota.

10.     Winfield Thompson was a passenger in a vehicle driven by Richard Chell. Thompson and Chell were headed east on South Dakota Highway 127 near its intersection with 466th Avenue in Roberts County, South Dakota.

11.     The vehicles being driven by Defendant Helgeson and Mr. Chell collided resulting in the deaths of Mr. Chell and Mr. Thompson.

12.     Several weeks prior to the accident, Defendant Helgeson and Patrick Nelson had a conversation regarding Helgeson's use of the vehicle at which time Mr. Nelson informed Defendant Helgeson that he was not allowed to use the vehicle unless he provided insurance for it.

13.     Defendant Helgeson never obtained a policy to insure the 1994 Jeep Grand Cherokee.

14.     At the time of the accident, Defendant Helgeson did not have permission and was not authorized to operate the vehicle owned by Mr. Nelson.

15.     Plaintiff is not obligated to pay any claims or demands by any of the Defendants or to defend Nicholas Helgeson against any such claims or demands because Nicholas Helgeson was operating the vehicle without the permission or consent of the owner of the vehicle.

16.     All of the Defendants are interested in the outcome of this controversy.

17.     This Court has authority under SDCL 21-24 to bring the parties before it and to adjudicate the matters at issue and enter its judgment declaring and adjudicating the rights of all parties.

WHEREFORE, Plaintiff prays:

1.      That this Court enter an Order finding and declaring that Plaintiff is not obligated to pay any claims or demands arising out of the subject accident and that the Plaintiff has no duty to pay or defend any claims anyone may have against Nicholas Helgeson.

2.      That this Court award Plaintiff its costs and disbursements of this action.

2

3.     That this Court grant Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

Dated this _3_ day of December, 2010.

SIEGEL, BARNETT & SCHUTZ, L.L.P.

_Julie Dvorak_

Reed Rasmussen
Julie Dvorak
Attorneys for Plaintiff
415 S. Main Street, 400 Capitol Building
PO Box 490
Aberdeen, SD 57402-0490
Telephone No. (605) 225-5420
Facsimile No. (605) 226-1911
rrasmussen@sbslaw.net
jdvorak@sbslaw.net

3

# PERSONAL AUTO DECLARATIONS

INSURED COPY



**Nodak Mutual Insurance Company**
www.nodakmutual.com

1101 1st Avenue North P.O. Box 2502
Fargo, North Dakota 58108-2502
1-877-814-5011

Policy Number: PAND0004-0382-
Reface Number: 0000031752

**POLICY CHANGE**
Change Effective: 4/06/2009
Policy Period From: 4/02/2009
To: 4/02/2010
12:01 A.M. Standard Time at the Address of the Named Insured

Named Insured:

RICHARD PROCHNOW &/OR MELISSA PROCHNOW
9920 170TH AVE SE
HANKINSON ND 58041

Payment Plan: 4-PAY
**TOTAL ANNUAL POLICY PREMIUM:** $3,318.00

Insured Phone#

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% | VEHICLE |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|---------|
| 003 | 2000 DODG INTREPID SEDAN | 2B3HD46R0YH276563 | 13 | 10000 | 5C | WL | 002 | S | PP | 1.21 | DELETED |

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|
| 004 | 2004 CHEV TAHOE LS/L UTL | 1GNEK13Z54J254680 | 14 | 10000 | 3F | FP | 002 | U | SU | 1.02 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|
| 005 | 2005 CHEV SILVERADO PKP4X44D | 2GCEK13T751284637 | 17 | 7501 | 1G | FA | 002 | U | PK | .86 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|
| 006 | 1996 CHEV MTECARLZ34 COUPE 2D | 2G1WX12X3T9260787 | 11 | 7501 | 5C | WL | 002 | S | PP | 1.21 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|
| 007 | 2002 PONT SUNFIRE SEDAN | 1G2JB524B27170505 | 15 | 10000 | 4F | FP | 002 | U | PP | .97 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|-----|-----------------|-------------------|-----|-------|-------|-----|-----|-----|------|------|
| 008 | 2008 DODG AVENGER SEDAN 4D | 1B3LC56K58N216064 | 14 | 10000 | 4F | FP | 002 | U | PP | .97 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT
*TI-LINE HO/FR DISCOUNT

---

## COVERAGES AND LIMITS OF LIABILITY
**Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.**

**VEHICLE 004 COVERAGES** 2004 CHEV TAHOE LS/L UTL       Rated Driver: MELISSA PROCHNOW

| | LIMITS | PREMIUM |
|---|--------|---------|
| **LIABILITY:** | | |
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $84.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $98.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $48.00 |
| **COVERAGES FOR DAMAGE TO YOUR AUTO:** | | |
| OTHER THAN COLLISION | Actual Cash Value less $1,000 Deductible | $231.00 |
| COLLISION | Actual Cash Value less $1,000 Deductible | $173.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $18.00 |
| | Total Annual Premium Vehicle 004 | $671.00 |

**VEHICLE 005 COVERAGES** 2005 CHEV SILVERADO PKP4X44D       Rated Driver: RICHARD PROCHNOW

| | LIMITS | PREMIUM |
|---|--------|---------|
| **LIABILITY:** | | |
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $52.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $62.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $9.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $4.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $30.00 |
| **COVERAGES FOR DAMAGE TO YOUR AUTO:** | | |



EXHIBIT
1

DATE PRINTED: 4/15/09

Page 1

*Nodak Mutual Insurance Company*                                              INSURED COPY

**RICHARD PROCHNOW &/OR MELISSA PROCHNOW**          POLICY NUMBER:  PAND000419882
EFF. DATE:   4/02/2009      EXP. DATE:   4/02/2010          CLIENT NUMBER:  000000034327

(Continued)

| | | |
|---|---|---:|
| OTHER THAN COLLISION | Actual Cash Value less $1,000 Deductible | $183.00 |
| COLLISION | Actual Cash Value less $1,000 Deductible | $133.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $15.00 |

|  | Total Annual Premium Vehicle  005 | $488.00 |
|---|---|---:|

**VEHICLE  006   COVERAGES** 1996 CHEV MTECARLZ34 COUPE 2D        Rated Driver:  NICHOLAS HELGESON

| **LIABILITY:** | **LIMITS** | **PREMIUM** |
|---|---|---:|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $312.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $365.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $48.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $23.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $181.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $22.00 |

|  | Total Annual Premium Vehicle  006 | $951.00 |
|---|---|---:|

**VEHICLE  007   COVERAGES** 2002 PONT SUNFIRE SEDAN        Rated Driver:  MELISSA PROCHNOW

| **LIABILITY:** | **LIMITS** | **PREMIUM** |
|---|---|---:|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $79.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $93.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $47.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $17.00 |

|  | Total Annual Premium Vehicle  007 | $255.00 |
|---|---|---:|

**VEHICLE  008   COVERAGES** 2008 DODG AVENGER SEDAN 4D        Rated Driver:  MELISSA PROCHNOW

| **LIABILITY:** | **LIMITS** | **PREMIUM** |
|---|---|---:|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $79.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $93.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $47.00 |
| **COVERAGES FOR DAMAGE TO YOUR AUTO:** | | |
| OTHER THAN COLLISION | Actual Cash Value less $250 Deductible | $411.00 |
| COLLISION | Actual Cash Value less $500 Deductible | $287.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $17.00 |

|  | Total Annual Premium Vehicle  008 | $953.00 |
|---|---|---:|

---

LOSS PAYEE/ADDITIONAL INTEREST INFORMATION:

---

DATE PRINTED:    4/15/09                                   Page  2.

**Nodak Mutual Insurance Company**                                    INSURED COPY

RICHARD PROCHNOW &/OR MELISSA PROCHNOW          POLICY NUMBER:  PAND000419882
EFF. DATE:    4/02/2009        EXP. DATE:   4/02/2010          CLIENT NUMBER:  000000034327

(Continued)

| VEH 004 | Loss Payee | DACOTAH BANK<br>PO BOX 209<br>SISSETON, SD 57262-0209 |
|---------|------------|----------------------------------------------|
| VEH 005 | Loss Payee | CITI FINANCIAL AUTO<br>PO BOX 3449<br>COPPELL, TX 75019 |
| VEH 008 | Loss Payee | LINCOLN STATE BANK<br>302 SOUTH MAIN, PO BOX 250<br>HANKINSON, ND 58041 |

## MESSAGES:

Unit 003: Deleted - 2000 DODG INTREPID
Unit 006: Changed NICHOLAS HELGESON to Rated Driver
     Changed Use to WL - WORK LESS THAN 30 MILES/WEEK
     Changed Rate Level to 3 - STANDARD
Unit 008: Added - 2008 DODG AVENGER

s Applicable:
A 00 01 98    PP ND 01 88 98    PP ND 04 29 98    PP ND 05 83 05    PP ND 05 84 04

DATE PRINTED:    4/15/09                                NNJC-PAGE0 0704          Page  3

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

  1. The "named insured" shown in the Declarations; and

  2. The spouse, if a resident of the same household.

  If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

  1. The end of 90 days following the spouse's change of residency;

  2. The effective date of another policy listing the spouse as a named insured; or

  3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

  1. Under a written agreement to that person; and

  2. For a continuous period of at least 6 months.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

  1. Private passenger auto; or

  2. Pickup or van.

  It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

  1. Any vehicle shown in the Declarations.

  2. A "newly acquired auto".

  3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  a. Breakdown;

  b. Repair;

  c. Servicing;

  d. Loss; or

  e. Destruction.

  This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

  1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

  a. A private passenger auto; or

  b. A pickup or van, for which no other insurance policy provides coverage, that:

    (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

    (2) Is not used for the delivery or transportation of goods and materials unless such use is:

      (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

      (b) For farming or ranching.

  2. Coverage for a "newly acquired auto" is provided as described below only if you pay us any added premium due. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

  a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

L. "Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have the right to investigate, negotiate and settle any claim with or without your consent. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

a. Rented to;

b. Used by; or

PP PA 00 01 98      Includes copyrighted material of Insurance Services Office, Inc., with its permission.      Page 2 of 12

Filed: 1/3/2019 5:09 PM CST   Brookings County, South Dakota   05CIV19-000006

c. In the care of;

that "insured".

This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;

   b. Any "family member"; or

   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

10. For any "bodily injury" or "property damage":

   a. For which the United States might be liable for the "insured's" use of any vehicle; or

   b. Arising out of the ownership, maintenance, use or operation of farm machinery.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or

   b. Is designed mainly for use off public roads.

   This Exclusion (B.1.) does not apply:

   a. While such vehicle is being used by an "insured" in a medical emergency;

   b. To any "trailer"; or

   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. Owned by a "family member"; or

   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

C. We do not provide Liability Coverage for any punitive or exemplary damages.

D. We do not provide Liability Coverage for "bodily injury" arising out of the passage of a communicable disease from any "insured" to another person.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

E. We do not provide Liability coverage for "bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an "insured" or an "insured's" employee.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B – MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and
2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

   a. While "occupying"; or
   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or
   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van that you own; or

   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part A or Part C of this policy; or

   2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C – UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

   1. Sustained by an "insured"; and

   2. Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

   Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

   1. You or any "family member".

   2. Any other person "occupying" "your covered auto".

   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

   1. To which no bodily injury liability bond or policy applies at the time of the accident.

   2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

   3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

      a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying"; or

c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Denies coverage; or

b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A. or Part B. of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

PP PA 00 01 98         Includes copyrighted material of Insurance Services Office, Inc., with its permission.         Page 7 of 12

**TRANSPORTATION EXPENSES**

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. If the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and

   b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**CLOTHES AND LUGGAGE**

In addition, we will pay, without application of a deductible, up to a maximum of $200 per occurrence for clothes and luggage owned by you or any "family member". These items have to be in or on an auto covered by this part. "Your covered auto" has to be covered under this policy for:

1. Other Than Collision Coverage and the loss caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the loss is due to theft, the entire auto must have been stolen; or

2. Collision Coverage and the loss caused by "collision".

$200 is the most we will pay in any one occurrence even though more than one person has a loss. This coverage is excess over any other coverage.

**EXCLUSIONS**

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:

   a. Radios and stereos;

   b. Tape decks; or

   c. Compact disc players.

   This Exclusion (4.) does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

   a. The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

   b. The equipment is:

      (1) Removable from a housing unit which is permanently installed in the auto;

      (2) Designed to be solely operated by use of the power from the auto's electrical system; and

      (3) In or upon "your covered auto" or any "non-owned auto" at the time of loss.

5. Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:

a. Citizens band radios;

b. Telephones;

c. Two-way mobile radios;

d. Scanning monitor receivers;

e. Television monitor receivers;

f. Video cassette recorders;

g. Audio cassette recorders; or

h. Personal computers.

This Exclusion (5.) does not apply to:

a. Any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

b. A permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

6. Loss to tapes, records, discs or other media used with equipment described in Exclusions 4. and 5.

7. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion (7.) does not apply to the interests of Loss Payees in "your covered auto".

8. Loss to:

a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrigeration facilities;

(2) Awnings or cabanas; or

(3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion (8.) does not apply to a:

a. "Trailer", and its facilities or equipment, which you do not own; or

b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

(1) Acquire during the policy period; and

(2) Ask us to insure within 30 days after you become the owner.

9. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs; or

d. Custom murals, paintings or other decals or graphics.

This Exclusion (11.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. Selling;

b. Repairing;

c. Servicing;

d. Storing; or

e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

13. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or

b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

15. Loss to "your covered auto" or any "non-owned auto" due to diminution of value".

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $500.

2. Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

a. To physical exams by physicians we select. We will pay for these exams.

b. To examination under oath and subscribe the same.

4. Authorize us to obtain:

a. Medical reports; and

b. Other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F – GENERAL PROVISIONS

PP PA 00 01 98        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 10 of 12

Filed: 1/3/2019 5:09 PM CST   Brookings County, South Dakota        05CIV19-000006

## BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

## CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 10 days notice:

      (1) If cancellation is for nonpayment of premium; or

      (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or that of:

      (1) Any driver who lives with you; or

(2) Any driver who customarily uses "your covered auto";

has been suspended or revoked. This must have occurred:

(1) During the policy period; or

(2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. If the policy was obtained through material misrepresentation.

## B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

## C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

STATE OF SOUTH DAKOTA                                    IN CIRCUIT COURT

COUNTY OF ROBERTS                                    FIFTH JUDICIAL CIRCUIT

**************************************************************************

NODAK MUTUAL INSURANCE         *        Civ. #11-55
COMPANY,                       *
                               *
              Plaintiff,       *
                               *
     v.                        *
                               *
NICHOLAS HELGESON; DALE        *
LAROCHE, as PERSONAL           *
REPRESENTATIVE OF THE ESTATE   *        MEMORANDUM DECISION
OF RICHARD CHELL; TERESA       *
THOMPSON, as SPECIAL ADMIN-    *
ISTRATOR OF THE ESTATE OF      *
WINFIELD THOMPSON and JAMIE    *
A. HELGESON, as Guardian Ad    *
Litem for MATTHEW HELGESON,    *
                               *
              Defendants.      *
                               *

**************************************************************************

The above-entitled matter is currently before the Court following a Court Trial held in
Roberts County on September 19, 2013. This is an action for a declaratory judgment to
determine coverage under an auto insurance policy. At the time of trial, Plaintiff was
represented by Reed Rasmussen; Defendant Nicholas Helgeson was represented by Kurtis
Greenley; Dale LaRoche, as Personal Representative of the Estate of Richard Chell and
Teresa Thompson, as Personal Representative of the Estate of Winfield Thompson were
represented by Robin Zephier. All attorneys appeared personally at the time set for trial. No
answer was ever filed by Jamie A. Helgeson as guardian for Matthew Helgeson, nor was any
appearance made at the time of trial.

The Court heard testimony from Carrie Norby, Nicholas Helgeson and Melissa
Prochnow. The Court received into evidence Plaintiff's Exhibits 1 through 4, inclusive,
Exhibits 7 through 21, inclusive, and Exhibits 23 and 24. The Court also received into
evidence Defendant Helgeson's Exhibits AA, BB, CC and DD. Additionally, the Court
received into evidence Exhibits A and B from Defendants Chell and Thompson Estates.



Plaintiff's Exhibit 23 is a Deposition of Gabe Skarphol; Plaintiff's Exhibit 24 is a Deposition of Patrick Nelson; and Defendant Chell and Thompson Estate Exhibit A is a Deposition of Steve Thomas. By agreement of the parties, these exhibits were received into evidence. Prior to trial, each party designated the portion of the specific deposition that would be offered at the time of trial. Opposing parties then had an opportunity to object to those portions of the depositions being offered. The Court received designations and objections from the various parties by letter and e-mail. A review of the file at this time does not indicate that the parties ever filed those communications with the Clerk. Therefore, in connection with the issuance of this Decision, the Court has printed and filed those designations and objections that were previously received to complete the record.

Also pursuant to an agreement of the parties, following completion of testimony before the Court, the parties took the deposition of Anthony Levang on September 20, 2013 and agreed to present that deposition to the Court for its consideration in reaching a decision in this case. The Court has received the Deposition of Anthony Levang and filed it with the Clerk.

At the conclusion of the testimony, the parties requested time following the Levang deposition to submit post-trial memoranda. The Court has now received and reviewed Plaintiff's Post Trial Brief dated November 5, 2013; Post Trial Memorandum Of Nicholas Helgeson dated November 5, 2013; Defendants LaRoche And Thompson Estates' Trial Brief dated November 5, 2013; Plaintiff's Reply Brief dated November 12, 2013; Defendant Helgeson's Reply Memorandum dated November 12, 2013 and Defendants LaRoche And Thompson Estates' Reply Brief dated November 12, 2013.

The Court has also now had an opportunity to rule upon the objections made by the parties to the various portions of the depositions that were offered. The Court has handwritten its rulings on the objections on the original documents filed with the Clerk. A copy of the objections and rulings has been attached to this Decision for the information of the parties.

This action arises as a result of a motor vehicle accident in Roberts County, South Dakota, on November 6, 2009. At that time, Nicholas Helgeson was the driver of a 1994 Jeep Grand Cherokee, owned by Patrick Nelson of Fargo, North Dakota, which was involved in an accident resulting in the deaths of Richard Chell and Winfield Thompson. It is undisputed that the policy of insurance obtained by Patrick Nelson to cover his vehicle had lapsed at the time of the accident. However, Nicholas was eligible for coverage under a personal auto policy issued by Nodak Mutual Insurance Company to Richard Prochnow and Melissa Prochnow, his step-father and mother, with a policy period from April 2, 2009 through April 2, 2010.

2

This policy, which was admitted at trial as Plaintiff's Exhibit 1, specifically listed Nicholas as a rated driver on a 1996 Chevrolet Monte Carlo. At the time of the accident, Nicholas was driving the 1994 Jeep because his 1996 Chevrolet Monte Carlo was undergoing repairs in a shop in Rosholt, South Dakota. The policy included under the "Definitions" section, Paragraph J. 4. on Page 1 of 12 that "covered auto" means any auto you do not own while used as a temporary substitute for any other vehicle which is out of normal use because of repair. However, Plaintiff relies upon an exclusion found at Paragraph A.8. on Page 3 of 12 indicating that liability coverage is not provided for any insured using a vehicle without a reasonable belief that that insured is entitled to do so; Plaintiff specifically alleges that Nicholas was operating the 1994 Jeep without a reasonable belief that he was entitled to do so.

The sole issue in this case is whether, at the time of the accident, Nicholas Helgeson had a reasonable belief he was entitled to be operating Patrick Nelson's vehicle. "Whether an insured has a reasonable belief that he is entitled to drive another's vehicle is a question of fact. When an insurance company seeks to avoid liability under a policy because of an excluded risk, it has the burden of proving the facts that constitute the exclusion." State Auto. & Cas. Underwriters v. Ishmael, 202 N.W.2d 384, 386 (1972), Under State Farm Automobile Insurance Company v. Bottger, 2011 S.D. 2, the Trial Court must determine in this case whether Nicholas believed he was entitled to drive the 1994 Jeep at the time of the accident; and, if so, then the Court must decide whether that belief was reasonable.

Nicholas testified at the time of trial that he talked over the phone with Patrick Nelson and asked permission to use the 1994 Jeep before driving it in late October, 2009. Nicholas had driven the vehicle on several occasions prior to that time while assisting Patrick in carrying out the duties of Patrick's DJ business and had also used the vehicle for personal reasons on two prior occasions. Nicholas testified that he was granted permission by Patrick over the phone to use the Jeep while his Monte Carlo was being repaired and that Gabe Skarphol was present when this conversation was conducted with the speaker phone function of Nicholas's phone being activated. Nicholas had indicated that he would be using the Jeep to get back and forth to work at his parents' farm. At the time of this conversation, Nicholas was at Gabe's residence in Fargo. The farm was located near Hankinson, North Dakota. Nicholas also testified that no restrictions were placed upon his use of the Jeep.

Patrick Nelson's testimony was presented by way of deposition and in that deposition, Patrick testified that he did not give permission to Nicholas to use the Jeep because there was an issue as to insurance. Patrick had allowed the insurance on the vehicle to lapse because he was not using the vehicle and it was parked in the parking lot at Gabe's residence. Therefore, he would not allow Nicholas to use the Jeep unless there was insurance coverage on it.

3

While Gabe may have been present during the phone conversation between Patrick and Nicholas, he did not have any specific recollection of that phone conversation. Gabe also testified through deposition and stated in that deposition that although he was the so-called "keeper of the keys" for the 1994 Jeep, he was not made aware that there was no insurance in place on the vehicle.

In determining whether or not Nicholas subjectively believed he had permission to operate the vehicle, this Court must determine the credibility of witnesses. Primarily this determination occurs between the testimony of Nicholas, who testified in the courtroom at the time of trial and the testimony of Patrick provided through his Deposition. The Court had an opportunity to listen to and observe Nicholas while testifying. Nicholas readily admitted that he had previously provided misleading information to law enforcement at the time of the accident about the ownership of the 1994 Jeep and had been incorrect in other statements made to the insurance adjuster and Plaintiff's attorney. However, Nicholas readily admitted these mistakes and explained his actions at the time those prior statements were made.

Patrick's Deposition contains numerous responses to the effect of "not as I recall." In fact, he seems to have very little recollection about anything concerning the case other than that he is sure he did not give permission to Nicholas to operate the vehicle before it was involved in the accident. In reading the portions of the Deposition admitted into evidence, it does not appear that Patrick even agrees that Nicholas, Gabe and others were ever of any assistance to him in carrying out his duties in his DJ business. Based upon all the evidence presented through testimony and depositions, this Court does not find the testimony of Patrick Nelson to be credible.

The Court believes that the preponderance of the evidence in this case establishes that Nicholas had permission from Patrick to use the 1994 Jeep while his Monte Carlo was in the shop for repairs. If Patrick's concern about insurance had been so important, it would seem Patrick would have mentioned that issue to the individual who held the keys to the vehicle. Plaintiff has failed to establish by the greater weight of the evidence that Nicholas knew he was not entitled to drive the vehicle.

Having determined that Nicholas believed he was entitled to drive the 1994 Jeep, thereby satisfying the first prong of the test set forth in Bottger, the Court must then examine whether that belief was a reasonable belief at the time and place of the accident. Relying upon General Accident, Fire and Life Assurance Corporation, LPD. V. Perry, 541 A. 2d 1340 (MD. App. 1988), Plaintiff suggests there are five factors for the Court to consider. The first of these factors is whether Nicholas had express permission to use the vehicle. This again requires the Court to assess the credibility of Nicholas and Patrick. As already determined,

4

the Court finds the testimony of Nicholas to be more credible than that of Patrick and has therefore determined that Nicholas had express permission to use the vehicle.

The second factor is whether Nicholas' use of the vehicle exceeded the permission granted. While Plaintiff argues that Patrick placed restrictions on the area in which the vehicle could be used, review of the evidence shows no such restrictions, even accepting the testimony provided by Patrick at his deposition. While Plaintiff attempts to argue that Nicholas gave the impression that he would only be going a distance of approximately 200 yards to get back and forth from his parents' residence to the farm, he and the Jeep were actually in Fargo at the time he requested to use the vehicle. It also appears from the record that the reason Nicholas took the vehicle to South Dakota was not to work for someone other than his parents but to assist a relative in capturing animals that had strayed from the proper enclosure. Since the vehicle had been driven from Fargo to Hankinson to get to his parents' farm, a distance of an additional 10 miles does not seem to be unreasonable. Nicholas was using the vehicle in the course of his work on the farm. That use did not exceed the permission granted.

The third factor to review is whether Nicholas was legally entitled to drive under the laws of South Dakota. At the time of the accident Nicholas was a licensed driver and there is no evidence that he was not legally entitled to operate the vehicle under the laws of either North Dakota or South Dakota.

The fourth factor for review is whether Nicholas had any ownership or possessory right to the vehicle. Nicholas told the highway patrolman he was in the process of purchasing the Jeep. This was not true, although there may have been discussions at some point in the past about him purchasing the Jeep. At the time of the accident, the only possessory interest Nicholas had in the vehicle was the right to use the vehicle.

The final factor is whether or not there was some form of relationship between Nicholas and Patrick that would cause Nicholas to believe he was entitled to drive the Jeep. In addition to being granted express permission to drive the vehicle, Nicholas and Patrick had been friends and acquaintances and Nicholas had driven the vehicle in the past both to carry out work in assisting Patrick as well as on at least two occasions for his own private errands. There was clearly a relationship between Nicholas and Patrick that would cause Nicholas to believe he was entitled to drive the Jeep.

Based on a review of the above factors, it appears to the Court that Nicholas had a reasonable belief that he was entitled to be operating the Jeep at the time and place of the accident. Therefore, Plaintiff has failed to prove Nicholas used the 1994 Jeep without a reasonable belief that he was entitled to do so.

5

Plaintiff having failed to meet its burden to prove the exclusion set forth under Paragraph A.8 on Page 3 of 12 on Exhibit 1 applies in this case, a Declaratory Judgment should therefore be entered determining that Nicholas Helgeson is entitled to coverage under the policy introduced at trial as Exhibit 1 for the accident occurring on November 6, 2009 in Roberts County, South Dakota. Plaintiff is ordered to fully defend without reservation of rights the claim against Nicholas Helgeson arising from said accident and is further obligated to pay any claims or demands to which Nicholas Helgeson may legally become liable.

Counsel for Defendant Helgeson is hereby directed to draft an appropriate Judgment and Order incorporating the Court's Decision by reference. Unless waived by all other parties, counsel for defendant Helgeson is also directed to prepare Findings of Fact and Conclusions of Law also incorporating the Court's Decision by reference.

Dated this 12th day of March, 2014.

BY THE COURT:

_____
Circuit Judge

ATTEST:

_____
Clerk of Courts

6

# ABOUREZK LAW FIRM

Chr̃      Abourezk
*Robin L. Zephier
Jon J. LaFleur

*Also licensed in Colorado

P.O. BOX 9460
RAPID CITY, SD 57709-9460
(2020 W. Omaha Street)
TEL: (605) 342-0097
FAX: (605) 342-5170

Mike Abourezk
**Alicia D. Garcia

**Also licensed in California

April 14, 2014

William Harrie
Nilles Law Firm
1800 Radisson Tower
201 North Fifth Street
PO Box 2626
Fargo, ND 58101-2626

RE:   Estate of Thompson and Chell  v. Nicholas Helgeson
      Civil File No.: 12-105

Dear William:

I am writing to you as the attorney hired to represent Mr. Helgeson on the direct third party liability action against him filed by our clients, the Estates.  Was there ever a formal Answer filed by Defendant in this action?  If so, could you please fax or email me a copy? Thank you.

Enclosed, please find the Memorandum Decision and a proposed stipulation regarding the declaratory action entitled Nodak vs. Helgeson, et al..  After a trial was held on September 19, 2013, the Judge agreed with the Defendants in that case that Defendant Helgeson believed he had permission to drive said vehicle and Helgeson is entitled to coverage under his Nodak policy.  It has been agreed that Nodak will not appeal.  See the attached Stipulation Regarding Post Trial Matters.  Therefore, at this time we are requesting that Nodak pay the per person per accident policy limits of $100,000 for the Estate of Winfield Thompson and $100,000 for the Estate of Richard Chell.  Both of these fine and loved gentlemen lost their lives as a result of the tragic motor vehicle accident.  In light of the conclusion of the declaratory action, we make this proposal and require that a formal response be received from you on or before Monday, April 28, 2014 at 5:00 p.m. mountain time.  If this proposal is not accepted by that time, we will not be making any more policy limits proposals in the future.  Thank you very much, William.  Take care.

Sincerely,

PLAINTIFF'S
EXHIBIT
F
tabbies

Robin L. Zephier
Attorney for Plaintiffs

RLZ/bj
cc:    Clients
       Kurt Greenley

# ABOUREZK LAW FIRM

har.   Abourezk
Robin L. Zephier
on J. LaFleur

Also licensed in Colorado

P.O. BOX 9460
RAPID CITY, SD 57709-9460
(2020 W. Omaha Street)
TEL.: (605) 342-0097
FAX: (605) 342-5170

Mike Abourezk
**Alicia D. Garcia

**Also licensed in California

May 12, 2014

William Harrie
Nilles Law Firm
1800 Radisson Tower
201 North Fifth Street
PO Box 2626
Fargo, ND 58101-2626

RE:   Estate of Thompson and Chell  v. Nicholas Helgeson
       Civil File No.: 12-105

Dear William:

I am writing to you to ask you to please file your formal Answer on the above-referenced matter within 30 days of the date of this letter.  I am forced to write this letter to you in light of the fact that I have not received any type of response from you to my earlier communication dating back to early April, 2014.

If you should have any questions, please feel free to contact me.  Thank you very much, William.  Take care.

Sincerely,

Robin L. Zephier
Attorney for Plaintiffs

RLZ/bj
cc:   Clients
       Kurt Greenley

PLAINTIFF'S
EXHIBIT
G

STATE OF SOUTH DAKOTA      )           IN CIRCUIT COURT
                                    )SS
COUNTY OF BROOKINGS        )        THIRD JUDICIAL CIRCUIT

|  |  |
|---|---|
| | )  Civ. No.05CIV19-000006 |
| | ) |
| TERESA ANN THOMPSON, Individually, | ) |
| and as Special Administer/Personal | ) |
| Representative of the Estate of WINFIELD | ) |
| THOMPSON, SR., Deceased, and the | ) |
| ESTATE of WINFIELD THOMPSON, | ) |
| MELISSA PROCHNOW AND JAMIE | ) |
| HELGESON, as Special | ) |
| Administrator(s)/Personal Representative(s) of | ) |
| the Estate of Nicholas Helgeson, and the | ) |
| ESTATE OF NICHOLAS HELGESON, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )        **SUMMONS** |
| | ) |
| WILLIAM HARRIE and  THE NILLES LAW | ) |
| FIRM, aka NILLES, SELBO &  HARRIE, | ) |
| LTD., and NODAK INSURANCE | ) |
| COMPANY, (fna NODAK MUTUAL | ) |
| INSURANCE COMPANY), and NODAK | ) |
| MUTUAL GROUP, INC., a Mutual Holding | ) |
| Company and N.I. HOLDINGS, INC. (An | ) |
| Intermediate Stockholding Company), | ) |
| | |
| Defendants. | |

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NODAK MUTUAL GROUP, INC.**, BY AND THROUGH THEIR

REGISTERED AGENT MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

     You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

1

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint.

DATED this 3rd day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

2

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
|---|---|---|
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No. 05CIV19-000006

TERESA ANN THOMPSON, Individually,
and as Special Administer/Personal
Representative of the Estate of WINFIELD
THOMPSON, SR., Deceased, and the
ESTATE of WINFIELD THOMPSON,
MELISSA PROCHNOW AND JAMIE
HELGESON, as Special
Administrator(s)/Personal Representative(s) of
the Estate of Nicholas Helgeson, and the
ESTATE OF NICHOLAS HELGESON,

        Plaintiffs,

        v.

WILLIAM HARRIE and  THE NILLES LAW
FIRM, aka NILLES, SELBO &  HARRIE,
LTD., and NODAK INSURANCE
COMPANY, (fna NODAK MUTUAL
INSURANCE COMPANY), and NODAK
MUTUAL GROUP, INC., a Mutual Holding
Company and N.I. HOLDINGS, INC. (An
Intermediate Stockholding Company),

        Defendants.

**SUMMONS**

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **N.I. Holdings, Inc.**, BY AND THROUGH THEIR REGISTERED AGENT,

MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

        You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

1

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint.

DATED this 3rd day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No.05CIV19-000006

```
                                        )
                                        )
TERESA ANN THOMPSON, Individually,      )
and as Special Administer/Personal      )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the        )
ESTATE of WINFIELD THOMPSON,            )
MELISSA PROCHNOW AND JAMIE              )
HELGESON, as Special                    )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON,            )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )        SUMMONS
                                        )
WILLIAM HARRIE and  THE NILLES LAW      )
FIRM, aka NILLES, SELBO &  HARRIE,      )
LTD., and NODAK INSURANCE               )
COMPANY, (fna NODAK MUTUAL              )
INSURANCE COMPANY), and NODAK           )
MUTUAL GROUP, INC., a Mutual Holding    )
Company and N.I. HOLDINGS, INC. (An     )
Intermediate Stockholding Company),     )

        Defendants.
```

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NODAK MUTUAL GROUP, INC.**, BY AND THROUGH THEIR

REGISTERED AGENT MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

      You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

1

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

    You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint.

    DATED this 3rd day of January, 2019.

                              ABOUREZK, ZEPHIER & LAFLEUR


                    By:/s/ Robin L Zephier
                        Robin L. Zephier
                        Attorney for Plaintiffs
                        PO Box 9460
                        2020 West Omaha Street
                        Rapid City, South Dakota 57709
                        (605) 342-0097

                        Turbak Law Office, P.C.
                        Seamus Culhane
                        26 W. Broadway, Suite 100
                        Watertown, SD 57201-3670
                        (877) 380-8517

                        Attorneys for Plaintiffs

STATE OF SOUTH DAKOTA   )     IN CIRCUIT COURT
           )SS
COUNTY OF BROOKINGS   )    THIRD JUDICIAL CIRCUIT

              )     Civ. No.05CIV19-000006
              )
TERESA ANN THOMPSON, Individually, )
and as Special Administer/Personal  )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the  )
ESTATE of WINFIELD THOMPSON,  )
MELISSA PROCHNOW AND JAMIE  )
HELGESON, as Special      )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON,  )
              )
    Plaintiffs,      )
              )
   v.          )     **SUMMONS**
              )
WILLIAM HARRIE and  THE NILLES LAW )
FIRM, aka NILLES, SELBO &  HARRIE, )
LTD., and NODAK INSURANCE   )
COMPANY, (fna NODAK MUTUAL  )
INSURANCE COMPANY), and NODAK )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An )
Intermediate Stockholding Company),  )

    Defendants.

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NILLES SELBO & HARRIE**, BY AND THROUGH THEIR REGISTERED

AGENT, SHANNON MCGREGAR, 1800 RADISON TOWER, 201 N. 5TH STREET, FARGO,

ND:

   You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

1

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint.

DATED this 3rd day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No. 05CIV19-000006

|  |  |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **SUMMONS** |
| WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company), | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NILLES LAW FIRM,** BY AND THROUGH THEIR REGISTERED AGENT,

SHANNON MCGREGAR, 1800 RADISON TOWER, 201 N. 5TH STREET, FARGO, ND:

You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

1

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Complaint.

DATED this 3rd day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
　　Robin L. Zephier
　　Attorney for Plaintiffs
　　PO Box 9460
　　2020 West Omaha Street
　　Rapid City, South Dakota 57709
　　(605) 342-0097

　　Turbak Law Office, P.C.
　　Seamus Culhane
　　26 W. Broadway, Suite 100
　　Watertown, SD 57201-3670
　　(877) 380-8517

　　Attorneys for Plaintiffs

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No. 05CIV19-000006

|  |  |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company), | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

**SUMMONS**

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **WILLIAM HARRIE,** BY AND THROUGH HIS REGISTERED AGENT,

SHANNON MCGREGAR, 1800 RADISON TOWER, 201 N. 5TH STREET, FARGO, ND:

You are hereby summoned and required to answer the Complaint of the above named

Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid City,

South Dakota, 57709, a copy of said Complaint is hereto annexed and herewith served upon you,

within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

1

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

DATED this 3rd day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No. 05CIV 19-00006

TERESA ANN THOMPSON, Individually, )
and as Special Administer/Personal )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the )
ESTATE of WINFIELD THOMPSON, )
MELISSA PROCHNOW AND JAMIE )
HELGESON, as Special )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON, )

        Plaintiffs, )

        v. )        **AMENDED COMPLAINT**

WILLIAM HARRIE and  THE NILLES LAW )
FIRM, aka NILLES, SELBO &  HARRIE, )
LTD., and NODAK INSURANCE )
COMPANY, (fna NODAK MUTUAL )
INSURANCE COMPANY), and NODAK )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An )
Intermediate Stockholding Company), )

        Defendants.

        COMES NOW, the Plaintiffs, Teresa Thompson, individually, and as Special

Administrator/Personal Representative of the Estate of Winfield Thompson, Sr., deceased, and

the Estate of Winfield Thompson, Sr., Melissa Prochnow and Jamie Helgeson, as special

administrators/personal representatives of the Estate of Nicholas Helgeson and the Estate of

Nicholas Helgeson, by and through their counsel, Robin L. Zephier and Seamus Culhane, make

and file the Plaintiffs' causes of action against the above-named Defendants, attorney William

Harrie, the Nilles Law Firm aka Nilles, Selbo and Harrie, Ltd., and the Defendant Nodak

Insurance Company, (fna Nodak Mutual Insurance Company and a mutual holding company,

Nodak Mutual Group, Inc., which are wholly owned subsidiaries of an interemediate

stockholding company known as N.I. Holding, Inc.), based upon the following facts and

allegations, and Plaintiffs specifically also incorporate the Circuit Court's Order dated March 29,

2016 and the accompanying Findings of Fact and Conclusions of Law dated March 29, 2016 in

Civ. No. 12-105 (Attached as **Exhibit "A"**), and the Amended Judgment dated March 14, 2018

(**Exhibit "B"**). Therefore, this Complaint is based upon the following statements. Plaintiffs

state and allege as follows:

<div align="center">PARTIES</div>

1.      Plaintiff Teresa Thompson is the special administrator/personal representative of

the Estate of Winfield Thompson, Sr.. Plaintiff Teresa Thompson, is a resident of Sisseton,

Roberts County, South Dakota.

2.      Winfield Thompson, Sr., deceased, the natural father of Plaintiff Teresa

Thompson, was a resident of Sisseton, Roberts County, State of South Dakota.

3.      Plaintiffs Melissa Prochnow and Jamie Helgeson, are the personal

representatives/special administrators of the Estate of Nicholas Helgeson, deceased, and are

residents of Hankinson, North Dakota.

4.      The Estate of Nicholas Helgeson, was setup in the State of North Dakota.

Decedent Nicholas Helgeson is the natural son of Melissa Prochnow and Jamie Helgeson.

5.      On January 3, 2019, Plaintiff Teresa Thompson, on behalf of the Estate of

Winfield Thompson, Sr., entered into and executed an assignment of claim(s) with Melissa

Prochnow and Jamie Helgeson, individually, and on behalf of the Estate of Nicholas Helgeson

<div align="center">2</div>

(deceased), assigning all of their and the Estate of Nicholas Helgeson's claims, causes of action and rights to proceed as against all of the named Defendants herein, to Plaintiff Teresa Thompson, and to the Estate of Winfield Thompson, Sr..

6.     Upon Plaintiffs' best knowledge and reasonable belief, Defendant William Harrie is and was at all times relevant to this action, an attorney with the Nilles Law Firm in Fargo, North Dakota, and that Harrie is and was licensed to practice law in the states of North Dakota and Minnesota. According to Plaintiffs' best knowledge and belief, the Nilles Law Firm regularly does insurance defense and personal injury defense work for civil defendants and for insurance companies such as Nodak. Nilles' registered agent is Nilles, Selbo & Harrie of Fargo, North Dakota.

7.     The Defendant Nodak Insurance Company, (hereinafter, "Nodak"), to the Plaintiffs' best information, knowledge, and reasonable belief, was at all times relevant to this action, a duly registered insurance company, registered with the Division of Insurance for the State of North Dakota and transacts insurance business and sells insurance policies in all counties in the state of South Dakota, and within the entire State of North Dakota. Nodak Insurance Company is now a wholly owned subsidiary of N.I. Holdings, Inc., and a part of Nodak Mutual Group, Inc. (a mutual holding company). All Nodak companies including N.I. Holdings, are located in Fargo, North Dakota.

## JURISDICTION

8.     The acts complained of against said Defendants occurred in the State of South Dakota, and involved the physical presence and the telephonic communications in and with parties located within the State of South Dakota. The amount in controversy herein exceeds the

3

jurisdictional amount for purposes of subject matter and personal jurisdiction in this Court through South Dakota's long arm jurisdiction statute, SDCL §15-7-2.

## FACTUAL BACKGROUND

9.     That on or about November 6, 2009, Nicholas Helgeson, who was a Nodak Insurance Company named insured, operated a Jeep motor vehicle owned by Patrick Nelson, near New Effington, Roberts County, South Dakota, in a negligent manner.  Helgeson's vehicle collided with a vehicle driven by Richard Chell.  Winfield Thompson, Sr., ("Thompson") was a passenger in the Chell vehicle.  Helgeson's negligence was the sole proximate cause of the motor vehicle accident resulting in bodily injuries and death to the Decedent Winfield Thompson, Sr..

10.     Helgeson, was an insured under an automobile insurance policy through the Defendant Nodak Insurance Company, (fna Nodak Mutual Insurance Company), and had said policy in effect at the time of said subject accident in 2009.

11.     Helgeson owed Thompson a duty to exercise reasonable care in the operation of the motor vehicle that Helgeson was operating at the time of the subject collision. Helgeson breached that duty in that he failed to operate the vehicle in a safe and reasonable manner and thereby proximately and directly caused physical injuries and the subsequent death of Decedent Winfield Thompson., Sr...

12.     As a direct and proximate result of the negligence of Helgeson, Thompson suffered serious injuries to his body, and died approximately four (4) hours later while being medically treated for the accident related injuries.

13.     As a direct and proximate result of Helgeson's breach of his legal duty, Thompson suffered past medical care, the reasonable value of which was in an amount in excess of ($20,000) and other compensatory and special and general damages including, but not limited

4

to, wrongful death, bodily injury, physical and emotional injuries, pain and suffering, loss of enjoyment of life, disfigurement, funeral expense and other consequential damages. Plaintiff Teresa Thompson, individually, and with the heirs and beneficiaries of the wrongful death of Winfield Thompson, Sr., and the Estate of Winfield Thompson, Sr., also suffered damages as a result of their father's death.

14. The Decedent Winfield Thompson, Sr., was not in any way, contributorily negligent in any manner or form, in causing said accident, or any of the Plaintiffs' damages.

15. Plaintiffs were entitled to receive damages for and on behalf of the Estate of Winfield Thompson, Sr., as well as in their own right, and that of Decedent Winfield Thompson, Sr.'s heirs.

16. Nodak instituted a civil declaratory action on December 3, 2010, the insurance coverage issue entitled *Nodak Mutual Insurance Company vs. Nicholas Helgeson, Dale Laroche, as Personal Representative of the Estate of Richard Chell; and Teresa Thompson, as Special Administrator of the Estate of Winfield Thompson*, Civil File No.: 11-55, which was filed in Fifth Circuit Court, Roberts County, South Dakota, with Circuit Court Judge Jon Flemmer, presiding. (See **Exhibit D,** attached).

17. That Defendant Nodak in the Declaratory Action in Civ. No.11-55, sued its own insured Nicholas Helgeson and the claimants Theresa Thompson and Thompson Estate, in Circuit Court. Nodak was represented in the declaratory action by attorney Reed Rassmussen, a South Dakota licensed attorney from Aberdeen, South Dakota. Despite the fact that Nicholas Helgeson told Nodak that he had obtained direct permission to borrow and use the Jeep vehicle owned by Patrick Nelson of Fargo, N.D., Nodak chose to disbelieve their own insured Nicholas Helgeson. Instead, Nodak chose to put its own insured Nicholas Helgeson through a statement

5

under oath which was taken on December 17, 2009.  Helgeson swore he had permission to use the jeep.

18.     Soon after the Declaratory Action was initiated and discovery began, Nodak learned or should have learned that it was clear that Nicholas Helgeson reasonably believed he had permission to use the Jeep.  In any event, in the face of unrefuted sworn facts, Nodak chose to continue to fight its own insured Nicholas Helgeson, to deny coverage, including indemnity, and refused to defend Helgeson.  Nodak made a $12,000.00 settlement offer in 2013, but the Thompsons' claims far exceeded the $100,000.00 policy limit.  Nodak forced the declaratory case to go to trial.  The court trial was eventually held in Sisseton, South Dakota on September 19, 2013.

19.     In the midst of the Declaratory Action in Circuit Court Civ. No. 11-55, on or about August 31, 2012, Plaintiff Teresa Thompson and the Thompson Estate sued Helgeson for the personal injury and wrongful death of her father Winfield Thompson, Sr., in Roberts County, South Dakota, Fifth Judicial Court, Civil No. 12-105.

20.     On the 26th day of September 2012, the tortfeasor Nicholas Helgeson was served the Summons and Complaint in Civ. No. 12-105 by and through an Admission of Service signed by his then, private civil defense counsel, Kurtis Greenley of Minneapolis, Minnesota.  (See **Exhibit C**, attached).

21.     Nicholas Helgeson had been paying attorney Greenley out of his own private funds, and with the help of his parents Melissa Prochnow and Jamie Helgeson.

22.     That on September 26, 2012, Plaintiff's counsel gave Defendant Helgeson and his defense attorney Greenley, an indefinite amount of time to formally Answer the Summons and Complaint in light of the fact that the civil declaratory action on the insurance coverage issue was still being litigated in a separate civil action, Civ. No. 11-55.

6

23.      That on October 12, 2012, Defendant attorney William P. Harrie and his law firm, the Nilles Law Firm of Fargo, North Dakota, were hired by Nodak Mutual Insurance Company, the auto liability insurance carrier (named insured was Nicholas Helgeson, and Melissa Prochnow, Helgeson's natural mother) to provide a civil defense for Nicholas Helgeson in the third party direct liability action against Helgeson for the personal injury/wrongful death action, Civil No. 12-105.  Attorney Harrie filed and served a formal Notice of Appearance on that case dated October 12, 2012, thereby appearing to serve as defense counsel on the direct action. There was no other mention or reference to any other Defense attorney in said Notice, except for William Harrie.

24.      A Court Trial for the Declaratory Action in Civ. 11-55 took place on September 19, 2013 in Sisseton, Roberts County, South Dakota where Helgeson was represented by private legal counsel Greenley.  Helgeson and Prochnow testified at the trial.

25.      The Circuit Court, Judge Jon Flemmer, in the Declaratory Action, *Nodak Mutual Insurance Company vs. Nicholas Helgeson, Dale Laroche, as Personal Representative of the Estate of Richard Chell; and Teresa Thompson, as Special Administrator of the Estate of Winfield Thompson*, Civil File No.: 11-55, issued its Memorandum Decision dated March 12, 2014, which declared that Nodak must provide coverage and a defense for Nicholas Helgeson individually, immediately and thereafter, and to pay any judgments that should be obtained against him.  (See **Exhibit E**, attached).

26.      On April 14, 2014, Plaintiffs' counsel sent a letter to Defendant's counsel, Defendant Harrie, (which was the only attorney who had formally entered any sort of formal appearance on behalf of Defendant Helgeson in Civ. No. 12-105), requesting whether or not if Defendant Helgeson had filed or served his formal Answer in the above-referenced action, and expressly providing time limited settlement demands for both estates (Thompson and Chell).

7

The settlement demand offer for the Thompson Estate was for the liability policy limits of $100,000, and the time limit demand required an acceptance of said policy limits demand no later than April 28, 2014 by 5:00 p.m. MST. Therefore, Helgeson and Harrie had until April 28, 2014 in which to accept the $100,000 liability per person per accident policy limits settlement demand to completely resolve the Thompson case claims in Civ. No. 12-105. A copy of the Circuit Court's March 12, 2014 Memorandum Decision was served upon Harrie with the April 14, 2014 letter (**Exhibit F**).

27.     The Defendant Helgeson, it was learned later by Plaintiffs, had not yet even been contacted by Harrie or Nilles prior to the expiration date of the April 14, 2014 time limit policy limits settlement demand.

28.     Although Harrie and Nilles owed a fiduciary duty to inform their client Nicholas Helgeson of any settlement offers/demands, and especially a demand within Nicholas Helgeson's liability policy limits of $100,000, neither Harrie, Nilles, nor Nodak, contacted, advised or discussed said time limit/policy limit settlement demand at all, with Helgeson, prior to the expiration of that demand which expired on April 28, 2014.

29.     There was no formal nor informal response at all from Harrie, Nilles, Nodak or from Nicholas Helgeson, to the $100,000 policy limits demand on or before the deadline of April 28, 2014, so said policy limits demand was withdrawn by the Thompsons.

30.     On May 12, 2014 Plaintiffs' counsel sent a letter requesting that Helgeson's attorney William Harrie formally file a formal Answer to the Complaint on behalf of Nicholas Helgeson. (See **Exhibit G**, attached). That letter specifically said:

> I am writing to you to ask you to please file your formal Answer on the above-referenced matter within 30 days of the date of this letter. I am forced to write this letter to you in light of the fact that I have not received any type of response from you to my earlier communication dating back to early April, 2014.

8

31.     There was no response whatsoever from either Harrie, Nilles, Nodak or

Nicholas Helgeson to Thompsons' May 12, 2014 letter to Harrie which had demanded a formal

Answer to the Complaint within thirty (30) days.  The formal Answer was due on June 11, 2014

(30 days).  Therefore, once Harrie, acting on behalf of Nicholas Helgeson and having been hired

and paid by Nodak, failed to respond to any of the letters from Plaintiffs' counsel (policy limit

demand and/or the request for a formal Answer), Plaintiffs Thompsons filed their first Motion

for Default Judgment against Defendant Nicholas Helgeson on or about June 17, 2014.  Once

Harrie and Nilles received the formal Motion for Default Judgment from Thompsons, Harrie

then responded by filing and serving a formal Answer to the Complaint on behalf of Defendant

Nicholas Helgeson on June 18, 2014, one (1) day after Thompson's First Motion for Default

Judgment was served.

32.     On or about June 18, 2014, the Plaintiff Teresa Thompson and the Thompson

Estate received the formal written Answer and Demand for Jury Trial, signed by William Harrie

as "Attorney for Defendant" (Defendant Nicholas Helgeson).

33.     According to Plaintiffs' best knowledge and belief, the Defendants Harrie and the

Nilles Law Firm, as the legal counsel/legal agent, did, and had previously, acted as hired legal

counsel and as legal agents for and on behalf of Defendant Nodak Insurance Company on many

previous occasions, and in many cases, including the action in Civ. No. 12-105.

34.     At all times pertinent herein, the Defendants, William Harrie and/or Nilles

Law Firm, were acting by and through their agents and/or employees and legal representatives

and personnel, including Nodak representatives, which all acted for and on behalf of Nicholas

Helgeson and/or Nodak Insurance Company in all relevant acts complained of in the underlying

proceedings.

9

35.     The Declaratory Action in Civ. No. 11-55, was seeking to have the Circuit Court declare that Nodak had no duty to defend Helgeson or any duty to cover him or the Thompson/Chell claims, nor to indemnify Nicholas Helgeson, its own insured. Nicholas Helgeson had to hire his own private legal counsel, Kurt Greenley, of Minnesota, at his own expense, to defend him and his interests in the Declaratory Action in Circuit Court, Civ. No. 11-55. The expense of that defense would end up exceeding the value of $50,000.

36.     The previous formal Answer filed by defense counsel, Defendant Harrie, dated June 18, 2014, listed Attorney Mark Hanson, (a member of Defendant Harrie's Fargo, North Dakota law firm, Defendant Nilles Law Firm), and Defendant Harrie, but the Answer was only actually signed by Defendant Harrie, and not by Mr. Hanson.

37.     On or about July 31, 2014, the Court held a hearing on Plaintiff Thompsons' First Motion for Default Judgment. Both Plaintiffs' counsel, Robin L. Zephier, and Nicholas Helgeson's counsel, William Harrie, appeared by telephone via the permission of the Court. At the hearing, Judge Flemmer indicated that the Court could grant the Default since it was clear neither Defendant nor Harrie responded at all. However, the Court stated that Plaintiffs, at the time, appeared not to have suffered any clear prejudice as a result of the Defendant's default on this occasion in June 2014. So the Court denied Plaintiffs' motion for default judgment and allowed the formal Answer of Defendant dated June 18, 2014, to stand.

38.     That Plaintiffs served a set of written discovery upon Helgeson by and through attorney William Harrie, dated October 16, 2014. At first, an unsigned version of the interrogatory answers were served upon Plaintiff Thompson on or about November 17, 2014. The responses to the Requests for Production of Documents and the Requests for Admissions, were signed by attorney William Harrie.

39.     Plaintiffs' counsel attempted to secure Harrie's cooperation in setting up the

10

discovery deposition of Helgeson with no assistance nor cooperation of Harrie or Nodak. Finally in June 2015, Plaintiffs' counsel had to hire a North Dakota private investigator to find Nicholas Helgeson to serve him with a subpoena to attend a video conference deposition to be held on June 30, 2015 in Fargo, N.D..  Harrie refused to make Helgeson available without this subpeona despite Helgeseon being his client, and despite Helgeson being a party to the action. Helgeson lived in the Fargo-Moorehad area at the time.

40. At the June 30, 2015 video conference deposition, Harrie objected over forty times, and on many occasions, advised Helgeson not to answer simple relevant questions.  The deposition lasted two (2) hours but was mostly made up of Harrie's objections, commentary, and statements made to and about opposing counsel.

41.     Plaintiff Teresa Thompson then filed a Plaintiffs' First Motion to Compel dated October 30, 2015, to attempt to re-depose Helgeson as a result of Defendant Harrie's abusive conduct and advisements to his client during the June 30, 2015 Helgeson deposition. Harrie appeared at the December 3, 2015 hearing on said motion by telephone.  The Circuit Court granted Thompsons' motion to redepose Helgeson.

42.     Two (2) formal hearings had therefore taken place, one (1) on July 31, 2014, on Plaintiff's Motion for Default Judgment, and a subsequent formal hearing on December 3, 2015, on Plaintiff's Motion to Compel the Discovery Deposition of Defendant, both of which Defense attorney William Harrie attended and appeared by telephone.  No other attorney made any appearance at those hearings, nor signed any of the formal pleadings.

43.     Plaintiffs' counsel discovered on or about  January 21, 2016, or soon

11

thereafter, that Defense attorney Defendant Harrie, was not licensed to practice law in the state of South Dakota, and confirmed that Defendant Harrie had never sought admission to practice in South Dakota on the case by Pro Hac Vice, at all, from October 12, 2012 through January, 2016.

44.    It became known by Plaintiffs' counsel that Harrie was not licensed to practice law in the State of South Dakota, and did not seek to file a formal Pro Hac Vice notice or Affidavit on his own behalf.  Harrie had signed all previous pleadings in his own name.  In January 2016, another separate attorney from Harrie's firm in North Dakota, Mark Western, physically appeared at the Roberts County Courthouse, in Sisseton, South Dakota to take the depositions of all of the Decedent's heirs on January 20, 2016.  Mr. Western also was not licensed to practice in South Dakota, but he did not sign formal pleadings or appear at a trial or formal hearing, such as Harrie had done.  Harrie did nothing to disclose or reveal his alleged unauthorized practice of law in this case under these circumstances, to Plaintiff's counsel, to the Circuit Court, or to his own client Nicholas Helgeson. Defendant Harrie represented Nicholas Helgeson for nearly four (4) years and did nothing to disclose or reveal his alleged unauthorized practice of law in the State of South Dakota in this case, to anyone, including the Trial Court, and his own client Helgeson, nor did he file for Pro Hac Vice to be admitted to practice in South Dakota at any time prior to the events in early February 2016.

45.    Based upon the information learned by Plaintiffs' counsel, a Plaintiffs' Renewed Motion for Default Judgment against Helgeson, and a Motion to Quash all prior pleadings signed by Defendant Harrie, were filed and served upon Helgeson and Defendant Harrie on or about January 26, 2015.

46.    Harrie then sought Pro Hac Vice admission to practice in the South Dakota Court

12

by Affidavit and Motion filed by Attorney Greg Peterson of Aberdeen, South Dakota, dated

January 28, 2016.  Nodak hired Pterson to assist Harrie in seeking Pro Hac Vice.

47.    Plaintiff Teresa Thompson filed an objection to Harrie's Pro Hac Vice

Admission request, dated January 28, 2016.

48.    The Circuit Court, on February 26, 2016, did rule upon Defendant Harrie's

January 28, 2016 Motion for Pro Hac Vice, and determined that the Motion for Pro Hac Vice

filed by Mr. Peterson on behalf of Defendant Harrie, was denied.

49.    The Circuit Court found that Defendant Harrie did not comply with the

requirements of SDCL §16-18-2 before he commenced practicing law in South Dakota, which

requirements are mandatory, and not subject to substantial compliance.

50.    The Circuit Court specifically found that Defendant Harrie unlawfully practiced

law in South Dakota from June 2014 to January 26, 2016, appearing for at least one deposition

and two formal hearings before the Trial Court (one on July 31, 2014, and the second on

December 3, 2015).

51.    During the time from June 2014 to January 26, 2016, Defendant Harrie never

attempted to remedy his non-compliance with SDCL §16-18-2.  Rather, Defendant Harrie

continued to practice in South Dakota without notifying the Court, or the Plaintiffs, including his

own client Helgeson.

52.    The Circuit Court specifically found that, Defendant Harrie's conduct counseled

against him satisfying subsection six (6) of SDCL 16-18-2. It provides:

> A statement that the applicant is familiar with the rules of the State Bar of South
> Dakota governing the conduct of members of the State Bar of South Dakota, and
> will at all times abide by and comply with the same so long as such trial or
> hearing is pending, and he or she has not withdrawn as counsel therein[.]  SDCL
> 16-18-2(6).

53.     The Circuit Court found that between June 2014 and January 26, 2016, Defendant Harrie of the Nilles Law Firm of Fargo, North Dakota, did commit the unauthorized practice of law in the State of South Dakota in violation of SDCL §16-18-1 and 16-18-2.

54.     Between June 2014 and January 26, 2016, Defendant Harrie never once reasonably, willingly or formally disclosed this unauthorized practice of law to Plaintiffs' counsel Mr. Zephier, or to the Trial Court, nor to his own client Nicholas Helgeson.

55.     Defendant Harrie's conduct in the case of Civ. No. 12-105 indicated that he could not satisfy the requirements of SDCL 16-18-2 (6), which provides that the "applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]".

56.     The Circuit Court found that doing what he did in Civ. No. 12-105, Defendant Harrie engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he began practicing law without a license in front of the Circuit Court and by failing to notify the Court for one year and seven months.

57.     Defendant Harrie's conduct in the case did constitute a violation of Rule 8.4 (c) of the South Dakota Rules of Professional Conduct. Rule 8.4 (c) states that it is professional misconduct for a lawyer to: "(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation".

58.     The Circuit Court, upon examination of Defendant Harrie's conduct and his affidavit for pro hac vice admission, was not satisfied that Harrie could "observe the ethical standards required of attorneys in this state[.]"

59.     The Circuit Court's conclusion in the matter in denying Defendant Harrie's

admission to practice law in South Dakota under the pro hac vice statutory requirements, was

further solidified by the lack of civility and professionalism exhibited by Defendant Harrie at the

Deposition of Nicholas Helgeson conducted on June 30, 2015.

      60.     The Circuit Court determined that the Plaintiffs Teresa Thompson and the Estate

of Winfield Thompson, were and are prejudiced by Defendant Harrie's conduct and his

unauthorized practice of law in this State, and in the case.

      61.     The Circuit Court determined that the Court's time had been wasted in that

Defendant Harrie made several appearances before the Trial Court and, although the Court did

not directly ask Defendant Harrie if he was licensed to practice law in South Dakota, Defendant

Harrie did not indicate to the Court that he was not licensed to do so, and appeared on his own at

that time, without licensed counsel.

      62.     While it appeared that a member of the law firm that Defendant Harrie is a part

of, Mr. Hansen, was licensed to practice law in South Dakota, the name of Mr. Hansen was on

the formal Answer, but the signature on the June 18, 2014 formal Answer of Helgeson, was only

Harrie's signature, and Harrie was not authorized to practice law in South Dakota at that time.

Harrie also appeared before the Court on his own on each occasion without notifying the Court

or party opponents of his unlicensed status.  Harrie did not advise his client Nicholas Helgeson

nor Melissa Prochnow or Jamie Helgeson that he was practicing law without a South Dakota law

license, at any time.

      63.     The appropriate way for an attorney who is not licensed in South Dakota to

become able to proceed in appearing in South Dakota as set forth in the pro hac vice statutes,

SDCL 16-18-2, is to follow that procedure, but that procedure was not even attempted to be

followed until Mr. Peterson became involved in the case, and the request for pro hac vice admission was made on January 28, 2016.

64.     The Circuit Court, Judge Jon Flemmer, was familiar with the prior proceedings and matters that the Trial Court had been involved in regarding the underlying declaratory action and the criminal proceeding involving Helgeson.

65.     The Circuit Court recognized that the pro hac vice statute would require an attorney like Defendant Harrie in that situation, to appear with a South Dakota resident attorney present in the Trial Court for all court hearings, as well as actually having the admission pro hac vice completed before any legal pleadings were signed or filed.

66.     The Circuit Court concluded that the formal Answer prepared and filed by Defendant Harrie in June 2014, was quashed, as Defendant Harrie was not authorized to practice law in South Dakota at the time that he took action on behalf of Helgeson by signing and filing formal pleadings in the Court, and appearing and arguing before the Trial Court without a license in South Dakota or without admission by pro hac vice.

67.     While Default Judgment may be a harsh remedy, the Circuit Court indicated that it must examine whether or not there was excusable neglect and whether there was a meritorious defense.

68.     While there had been a defense set forth in the formal Answer of June 18, 2014, the neglect and conduct in the case by Defendant Harrie, was in the failure to become admitted prior to proceeding with the formal proceedings in this South Dakota court. The Circuit Court found that that conduct was not excusable.

69.     To allow the formal June 18, 2014 Answer to stand, in the Circuit Court's

16

determination and discretion, would simply reward the conduct and allow the action to proceed, when, in fact, no legitimate Answer was ever filed.

70.     The pleadings signed and/or filed by Defendant Harrie acting as defense counsel for Helgeson, because of Harrie's unauthorized practice of law in South Dakota, were ruled to be null and void, including the formal Answer dated June 18, 2014.

71.     The Circuit Court concluded that the appropriate action was to quash the Answer and all other pleadings signed by Defendant Harrie and to therefore, grant the Plaintiffs' Renewed Motion for Default Judgment in asmuch as Defendant Harrie's actions were a nullity, and no Answer or responsive pleading has been filed at all in this case.

72.     On March 29, 2016, the Honorable Jon S. Flemmer signed an Order Granting Plaintiffs' Renewed Motion for Default Judgment, and signed the Findings of Fact and Conclusions of Law (**Exhibit A**).

73.     Harrie's conduct in practicing law in South Dakota without a license caused undue delay and significant added monetary expense to all Plaintiffs because of its illegality.

74.     Defense counsel Mark Arndt of Sioux Falls took over Helgeson's civil defense on the third party liability direct action in Civ. No. 12-105 on March 4, 2016.  Arndt moved to set aside the default judgment.  The Court denied said motion on March 29, 2016.

75.     The January 20, 2016 depositions of the Thompson heirs were deemed invalid by the Circuit Court as a result of Harrie's unauthorized practice of law which had, up until that point, remained unknown, concealed, suppressed, misrepresented, and/or purposefully hidden from Plaintiffs and the Court, and also from his client Nicholas Helgeson.

76.     Arndt moved for a jury trial on damages rather than a court trial, which would have been much less time consuming and less expensive.

17

77.     A Damages trial was set to be held on November 1, 2017, in order to determine the full extent, nature and amount of Plaintiffs' damages.

78.     Thompson and the Thompson Estate were awarded a jury verdict for wrongful death and personal injury in the amount of $127,000.00, which, after post-verdict costs and fees, added up to an Amended Judgment in the amount of $160,684.12.

79.     The Judgment amount was presented to Nodak's defense counsel Arndt, who only offered to pay the Nodak $100,000.00 per person per accident liability policy limit, and Nodak did pay that amount on April 5, 2018 to partially satisfy the $160,684.12 Amended Judgment.

80.     The remainder of the $160,684.12 Judgment, in the amount of $60,684.12, was presented to Prochnow and Jamie Helgeson as representatives of Helgeson's Estate, and Prochnow, Jamie Helgeson and the Helgeson Estate, have now signed an Assignment of Claims and Covenant Not to Collect, in favor of the Thompsons.

## COUNT ONE: LEGAL NEGLIGENCE/LEGAL MALPRACTICE AGAINST
## DEFENDANT HARRIE AND NILLES

Plaintiffs hereby incorporate paragraphs one through one through eighty (1-80) of this Complaint as if specifically set forth herein.

81.     Defendant William Harrie is a licensed attorney practicing law in North Dakota.

82.     At all times relevant to this Complaint, William Harrie practiced law with the law firm known as Nilles Law Firm.

83.     At all times relevant to this Complaint, the law firm known as Nilles Law Firm was a Professional Partnership, with an office in Fargo, North Dakota.

84.     From at least October 12, 2012 through February 1, 2016, Nicholas Helgeson was a client of William Harrie and Nilles Law Firm.

18

85.   On or before October 12, 2012, William Harrie and Nilles Law Firm undertook the legal representation of Nicholas Helgeson on a personal injury/wrongful death claim Teresa Thompson and the Thompson Estate, had filed arising from a motor vehicle accident which occurred on November 6, 2009.

86.   The circumstances under which Winfield Thompson, Sr., was injured and died from, gave rise to a legal claim for personal injuries and wrongful death by Teresa Thompson and the Thompson Estate against Nicholas Helgeson.

87.   On or about August 31, 2012, Robin L. Zephier and Abourezk & Zephier Law Firm issued a Complaint that asserted Teresa Thompson and the Thompson Estate's personal injury/wrongful death claims against Nicholas Helgeson, the driver of an automobile involved in the accident on November 6, 2009.

88.   The document attached to this Complaint as **Exhibit H** is an accurate copy of the Complaint that Robin L. Zephier and Abourezk & Zephier Law Firm served on or about September 26, 2012 on behalf of Teresa Thompson and the Thompson Estate.

89.   At all times relevant to this Complaint, William Harrie and Nilles Law Firm provided legal representation to Nicholas Helgeson with respect to the November 6, 2009 motor vehicle accident case.

90.   At all times relevant to this Complaint, William Harrie was acting on behalf of the partnership known as Nilles Law Firm and within the scope of his authority to do so.  Harrie and the Nilles Law Firm were hired and paid by Defendant Nodak.

91.   Defendants Harrie and Nilles Law Firm owed Nicholas Helgeson (deceased) the duty to possess the knowledge and skill ordinarily possessed by attorneys in good standing engaged in handling personal injury/wrongful death claims in South Dakota, the duty to use the

19

care and skill ordinarily exercised under similar circumstances by attorneys in good standing handling personal injury/wrongful death claims in South Dakota, and the duty to be diligent in an effort to accomplish the purposes for which they were employed.

92.     Defendants Harrie and Nilles, and by collateral responsibility, Nodak, each

violated their duties to Nicholas Helgeson (deceased); their failures include, *but are not necessarily limited to*:

a.  failing to possess the knowledge and skill ordinarily possessed by attorneys in good standing engaged in handling personal injury/wrongful death claims in South Dakota;

b.  failing to use the care and skill ordinarily exercised under similar circumstances by attorneys in good standing handling personal injury/wrongful death claims in South Dakota;

c.  failing to obtain any proper legal authority and/or authorization to legally practice law in the State of South Dakota in a timely and appropriate manner;

d.  failing to advise their client Nicholas Helgeson that handling his claim may require knowledge, skill, and expertise beyond that possessed by the Defendants;

e.  failing to initiate a pro hac vice motion in which to legally and properly represent Nicholas Helgeson in the South Dakota action;

f.  subordinating Nicholas Helgson's interest to the conflicting interest of another of their clients, namely Nodak;

g.  failing to refer their client to an attorney possessing any special knowledge, skill, and expertise required to handle the Thompsons' personal injury/wrongful death claim against Helgeson;

h.  failing to be diligent in an effort to accomplish the purposes for which they were employed;

i.  failing to adequately defend their client's interests in the case/claims made against him;

j.  failing to keep their client Nicholas Helgeson reasonably apprised of the status of his case and case settlement offers; and

k.  failing to make reasonable efforts to settle their client's claim/case;

l.  failing to communicate the Plaintiff Thompsons' April 14, 2014 $100,000 auto liability policy limits settlement demand to their client Nicholas Helgeson before said time limit policy limit demand expired on April 28, 2014;

m.  Failing to advise their client Nicholas Helgeson to accept the April 14, 2014 policy limits settlement demand prior to or by the time limits demand expiration date of

20

April 28, 2014;

93.   Defendant Nodak and Defendant Nilles Law Firm knew or should have known of

the fact that in this case, Civ. No. 12-105, Harrie was practicing law in a South Dakota case

without a proper South Dakota law license or without proper pro hac vice admission. For them

not to know, is negligence per se.

94.   Defendants Nodak, Nilles, and Harrie, all did, or should have reasonably known,

that such information such as Harrie's lack of legal authorization to practice law in South Dakota

in this case, was an obvious fact that absolutely needed to be revealed and disclosed to the Court

and their opponents in the litigation, Plaintiffs, and to Defendant's own client/insured Nicholas

Helgeson.   Defendants therefore knew or should have known that such concealment,

suppression, misrepresentation and nondisclosure of such a material fact would and will cause

damage to the party opponents, the Plaintiffs and to their client/insured Nicholas Helgeson.  But

Defendants went ahead negligently, recklessly, and/or purposefully, anyway, despite that

knowledge or those likely consequences, and in light of what the Defendants each knew not to

be the truth.

95.   All Plaintiffs (Nicholas Helgeson, Mellisa Prochow, Jamie Helgeson, Nicholas

Helgeson Estate, Teresa Thompson, Thompson Estate) sustained damages as a direct and

proximate cause of Defendant Nodak Insurance Company's and Defendant Harrie's, and Nilles'

breach of their duty to properly represent Helgeson and as a result of Harrie's and Nilles' legal

negligence, which ended up costing all of the Plaintiffs time and expense in the form of attorneys

fees,   costs   of   litigation,   and   damages   associated   with   anxiety,   mental   suffering,

negligent/intentional   infliction   of   emotional   distress,   frustration,   humiliation,   worry,

21

embarrassment, pain and suffering, loss of peace of mind, loss of trust in the court system, lost income, travel expenses, and other consequential losses.

96.    As a direct and proximate result of Defendants' negligent failure to fulfill their duties to Nicholas Helgeson, Helgeson sustained damages that include, but are not necessarily limited to: Defense legal fees and costs in Civ. No. 12-105, and Civ. No. 11-55, including interest, increased legal fees and costs, pain and suffering, loss of enjoyment of life, anxiety, frustration, loss of income, loss of trust, loss of peace of mind, loss of comfort, loss of security, negligent infliction of emotional distress, worry, intentional infliction of emotional distress, loss of sleep, loss of hope, and other consequential loss.

97.    Harrie and Nilles, and Nodak, all intentionally and/or negligently and/or recklessly concealed and/or suppressed Harrie's and Nilles' unauthorized practice of law to the Court and to all of the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson), since October 2012, when Harrie first signed an appearance in Fifth Circuit Court in Civ. No. 12-105, and through 2016.

98.    Harrie, Nilles and Nodak, intentionally misrepresented Harrie's status as a properly authorized or licensed attorney in South Dakota, since Harrie's first appearance in Civ. No. 12-105 in October 2012, and through 2016.

99.    Harrie, Nilles and Nodak, intentionally deceived the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) (and the Courts) by Harrie's unauthorized practice of law in South Dakota since his first appearance in Civ. No. 12-105, in October 2012 and through 2016.

22

100.   The individual and combined intentional and/or negligent conduct of the

Defendants Harrie, Nilles and/or Nodak, on a joint and several basis, in defrauding, concealing,

suppressing, misrepresenting, and deceiving the Plaintiffs (Nicholas Helgeson, Melissa

Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield

Thompson) (and the Courts and the public) by Harrie's negligence and unauthorized practice of

law in South Dakota in Civ. No. 12-105, from October 2012 through 2016, directly and/or

indirectly induced the Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the

Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson) (and the Courts) to

continue spending time, money, expense, emotional energy, and physical and emotional effort

on pursuing justice in Civ. No. 12-105, negligently not knowing of Harrie's concealed and

undisclosed unauthorized practice of law, all to Plaintiffs' (Nicholas Helgeson, Melissa

Prochnow, Jamie Helgeson, Nicholas Helgeson Estate, Teresa Thompson, Thompson Estate)

detriment and damage. This conduct was both negligent, reckless and/or intentional.  Plaintiffs'

individual and collective reliance upon said belief that Defendants were acting within the law as

to Harrie's unlicensed status, induced all Plaintiffs into a position of detriment as a result of the

Defendants' unlawful conduct.

101. By committing fraud, deceit, dishonesty and misrepresentation in these matters,

the Defendants Harrie and Nilles, proximately and directly caused damage to the Plaintiffs

(Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa

Thompson and Estate of Winfield Thompson, Sr.) in the form of attorneys fees, costs of

litigation, (including interest), intentional/negligent infliction of emotional distress, anxiety, pain

and suffering, worry, frustration, humiliation, embarrassment, loss of peace of mind, loss of trust

23

in the court system, lost income, travel expenses, loss of opportunity, mental anguish, loss of security, loss of comfort, loss of enjoyment of life, and other consequential losses.

102. The negligent and fraudulent/deceitful conduct of Harrie and/or Nilles committed in South Dakota by and through Harrie's appearance though telecommunications, at hearings and/or depositions and by signing pleadings, form the basis of the fraudulent inducement which occurred, and created a proximate cause and/or direct cause resulting in damage to all Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson and the Helgeson Estate, Teresa Thompson and Estate of Winfield Thompson), the Court(s), and to the public at large. The damages was reasonably surmised to flow naturally from Defendants' conduct of this nature, and directly and indirectly caused all Plaintiffs (Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson, Nicholas Helgeson Estate, Teresa Thompson and Thompson Estate) to reasonably rely to their detriment, upon Defendants' assertions and representations that Harrie was authorized to act for and on behalf of Nicholas Helgeson in the State of South Dakota. Plaintiffs' reliance on such, caused their individual and collective detriment.   The direct damage to then client, Nicholas Helgeson, resulted in the legal negligence, et. al, claims against Winfield Thompson and Nilles Law Firm and Nodak, being legally assigned to Teresa Thompson and Estate of Winfield Thompson, by Melissa Prochnow, Jamie Helgeson and the Estate of Nicholas Helgeson, who also retain some of their own separate injury/damage in their own right.

103. Harrie's negligent conduct in practicing law without a license in South Dakota in Civ. No. 12-105, and by negligently and/or intentionally not disclosing his unlicensed status to the Court, and to the Plaintiffs, caused damage to all of the Plaintiffs (Nicholas Helgeson, Mellisa Prochow, Jamie Helgeson, Nicholas Helgeson Estate, Teresa Thompson, Thompson Estate) in the form of undue delay, pain and suffering, anxiety, mental anguish, intentional

24

infliction of emotional distress, negligent infliction of emotional distress, worry, frustration, embarrassment, loss of peace of mind, humiliation, lost income, loss of trust in the Courts, pain and suffering, travel expenses, loss of opportunity, loss of security, loss of conform, attorneys fees in excess of $200,000, including interest thereon, litigant expenses in excess of $50,000, including interest thereon, and other consequential losses.

## COUNT TWO: NODAK'S BREACH OF CONTRACT AND BAD FAITH REFUSAL TO SETTLE WITHIN POLICY LIMITS

Plaintiffs hereby incorporate paragraphs one through One through One Hundred and Three (1-103) of this Complaint as if fully set forth herein.

104. Defendant Nodak is an insurance corporation, with its corporate headquarters being in the State of North Dakota.

105. In order to pursue Theresa Thompson's and the Thompson Estate's personal injury/survival/wrongful death claims, Teresa Thompson and Thompson Estate filed a lawsuit against Nicholas Helgeson in the State of South Dakota, Fifth Judicial Circuit, Roberts County, Civil File No. 12-105.

106. The alleged misconduct of Defendant Nodak complained of herein occurred in South Dakota, resulting in and arising from an underlying claim and state circuit court action venued in Roberts County Circuit Court, CIV12-105 (the direct action) and Civ. No. 11-55 (the declaratory action).

107. That this Court has both subject matter and personal jurisdiction over the parties

25

in that Defendant Nodak Insurance Company sold, marketed, and transacted private business in selling its insurance policy and policies of insurance to their insured Nicholas Helgeson and/or Melissa Prochnow and the Estate of Helgeson (assignees to Thompson), who had purchased said policies to protect their autos, finances, and peace of mind, and the Nodak insureds themselves, from potential losses and accidents, such as this one which occurred in Roberts County, South Dakota. Plaintiffs' claims exceed the jurisdictional amount requirement and this Court has both subject matter and personal jurisdiction over the matter in that the subject accident occurred near New Effington, Roberts County, South Dakota.

108. Said underlying civil action in Civ. No. 12-105 described in ¶105 above, resulted in entry of a Judgment on November 29, 2017 for the Thompson Plaintiffs against those Helegeson defendants in the Judgment upon Jury Verdict in the amount of $160,684.12, including post-verdict fees and costs.

109. Defendant Nodak, through a local insurance agent, sold to Helgeson and Prochnow, a certain liability insurance policy or policies, and delivered to Helgeson/Prochnow a number of different Declaration Pages concerning such policy or policies specified as to certain automobiles owned and used by Helgeson/Prochnow in North Dakota and South Dakota.

110. In the lawsuit in Civ. No. 12-105, Plaintiffs Thompsons made claim against Helgeson for said injuries and damages.

111. As a result of such claims by Plaintiffs, Helgeson, directly or through an authorized agent, tendered the claim to Nodak Insurance in 2009 for coverage and/or defense, upon the belief that the claim made was within the liability coverage conditions of said Policy, or that at least it was Defendant's duty to provide him with a defense, even if under a reservation of rights.

26

112. Nicholas Helgeson and Melissa Prochnow, at all time material therein, were insured under the Nodak Policy.

113. Nicholas Helgeson and Melissa Prochnow were insured by Nodak on or about November 6, 2009. On this date, Nicholas Helgeson caused a motor vehicle accident in Roberts County, South Dakota, which ended up causing severe bodily injury and the ultimate death of Winfield Thompson, Sr., and Richard Chell.

114. The Nodak Policy provides coverage for liability motor vehicle liability benefits in the event Nicholas Helgeson would injure/damage someone else in a covered accident.

115. That among other things, Nodak was required to properly review, investigate, and in good faith, evaluate the third party liability claims made against Nicholas Helgeson.

116. By Nodak's conduct, it breached the contract of insurance reflected in the Policy.

117. Nodak drafted the insurance policy.

118. Nodak knew that Nicholas Helgeson had a contractual right to be defended and indemnified in the Thompson claims against Helgeson, under the terms and conditions of the policy.

119. Nodak knew that Nicholas Helgeson had a duty to investigate, handle and properly evaluate the claims made by Teresa Thompson and the Thompson Estate against the Policy.

120. Nodak failed in fulfilling its duties and obligations which it owed to its insured under the terms and conditions of the Policy.

121. Nodak acted in bad faith toward Nicholas Helgeson, Melissa Prochnow, and the

27

Helgeson Estate, in refusing to follow proper claims handling procedures and in performing the duties owed to Nicholas Helgeson and Melissa Prochnow, as a result of the Thompsons' claims.

122. Nodak acted in bad faith toward Nicholas Helgeson and Melissa Prochnow in refusing to indemnify them for the full value of the policy limits coverage and/or jury verdict/judgment, and as a result of forcing Helgeson to defend and go to trial as a result of the third party liability claim, in order to protect Helgeson's rights.

123. As a result of Nodak's bad faith conduct toward Nicholas Helgeson, Melissa Prochnow,and the Helgeson Estate, all Plaintiffs were damaged.

124. Defendant Nodak Insurance Company has acted in bad faith in its failure to reasonably and promptly provide payment of the $100,000 liability policy limit time limit settlement demand made by Teresa Thompson and the Thompson Estate which expired on April 28, 2014 by unreasonably withholding said payment, when it was obvious and undeniable that Teresa Thompson and the Winfield Thompson Estate had suffered bodily injury and wrongful death as a result of the accident, in an amount likely in excess of Helgeson's policy limits.

125. Defendant Nodak Insurance Company has acted in bad faith, and not in good faith, in its failure to reasonably investigate said accident, its severity, and the serious and severe nature of Winfield Thompson, Sr.'s and the Thompson Estate's injuries and damages, as a result of the accident involving its own insured, which accident was caused by Nicholas Helgeson's negligence, and in denying and/or delaying a reasonable payment of Helegeson's liability bodily injury policy benefits to Teresa Thompson, the Thompson Estate, once adequate reasonable proof of the same has been provided to Defendant Nodak's claims personnel, and to Nodak's attorneys.

28

126. The Defendant Nodak, at the point of marketing, sale and initiation of the automobile insurance policy product to innocent and unsuspecting citizens such as to Nicholas Helgeson and Melissa Prochnow, and those other named insureds similarly situated, by and through its agents, does not reasonably, fully, or sufficiently disclose to its named insureds, that third party liability claim(s) for benefits will be subject to this form of claim handling and scrutiny, prior to liability claim benefits being handled, diminished, withheld, denied or paid. In fact, unsuspecting named insureds are most times totally unaware of these types of claims handling tactics, until it is too late, and they find themselves feeling the physical, emotional and financial stress of having their own insuror deny, withhold or diminish third party claim payments, defense costs and/or indemnity, in this unreasonable fashion, and at a time when the policyholder/insured needs the carrier's obligation to come through the most. This is the position Plaintiff Decedent Nicholas Helgeson, Melissa Prochnow, and the Nicholas Helgeson Estate found themselves in as a result of Defendant Nodak's conduct.

127. As a result of Nodak's refusal to honor its contract, Nicholas Helgeson and the Nicholas Helgeson Estate were damaged. Nicholas Helgeson, Melissa Prochnow, and the Nicholas Helgeson Estate, also suffered emotional and physical distress complicated and exacerbated by the additional stress of having to go to trial and the rigors of litigation due to the conduct of Nodak in refusing to indemnify and pay the claimants/Plaintiffs for their damages pretrial, and to accept the April 14, 2014 policy limits time limit settlement demand of the Thompson Estate for the amount of $100,000, which should have clearly been accepted by Nodak (and/or Harrie/Nilles) before it expired on April 28, 2014.

128. By reason of the foregoing, the Defendant is liable to the Plaintiffs by and for

29

Nicholas Helgeson, Melissa Prochnow, and the Helgeson Estate, for an amount to be determined by a jury and, in addition thereto, for the intentional, malicious and unreasonable refusal to pay reasonable damages to a third party claimant, for failing to defend Helgeson in Civ. No. 11-55, and for punitive and exemplary damages in the sum to be set by a jury herein.

129. Defendant Nodak's failure or refusal to timely and properly provide a defense in the underlying action, in Civ. No. 11-55, and to effectively provide unauthorized legal counsel and/or to abandon the obligation to provide competent legal counsel in Civ. No. 12-105, and/or to make and/or pay a settlement sum which could have resolved the case prior to the trial dates, and the Judgment Upon Jury Verdict, constitutes a tortious loss of settlement opportunity, resulting in Helgeson/Helgeson Estate/Prochnow having to make such an assignment with Thompsons for which Defendant is liable to pay in its entirety, plus interest.

130. In addition to such compensatory damages indicated above, Defendant's misconduct gives rise to liability for such punitive and exemplary damages in such amount as the jury shall determine.

## COUNT THREE: NODAK'S BREACH OF CONTRACT AND BAD FAITH IN DUTY TO DEFEND HELGESON

Plaintiffs hereby incorporate paragraphs one through one hundred and thirty (1-130) of this Complaint as if fully set forth herein.

131. Every insurance contract in South Dakota includes the duty of good faith and fair dealing.

132. Nodak did not honor its duty of good faith and fair dealings with respect to Nicholas Helgeson, Melissa Prochnow and the Helgeson Estate.

30

133. Nodak elevated its own financial interest over that of its own insureds, in contravention and resistance of its good faith and fair dealings, owed to its insured.

134. Nodak failed to perform its required duties and obligations which it owed to their insured, Nicholas Helgeson, Melissa Prochnow and the Helgeson Estate.

135. Nodak breached the duty of good faith and fair dealing it owed to Nicholas Helgeson, Melissa Prochnow and the Helgeson Estate.

136. As a result of Nodak's breach of its duty of good faith and fair dealing, Nicholas Helgeson, Melissa Prochnow and the Helgeson Estate, were damaged.

137. Nodak owed a fiduciary duty to its insureds Nicholas Helgeson and Melissa Prochnow.

138. Nodak preferred its own interest over that of its insured, by refusing to properly follow the proper claims and procedures in handling the claim of their insured.

139. Nodak breached its fiduciary duty to Nicholas Helgeson and Melissa Prochnow.

140. As a result of Nodak's breach of its fiduciary duty, Nicholas Helgeson, Melissa Prochnow, and the Helgeson Estate were damaged.

141. For purposes of insurance coverage under the subject Policy, as well as the invocation of various respective duties and obligations owed by and between Defendant and Helgeson, and vice versa, Defendant Nodak received timely and sufficient notice of the subject event, as well as the claims of these Plaintiffs concerning or arising from it.

31

142. Defendants initially failed and/or refused to provide to Helgeson a defense, even under reservation of rights, and/or any liability coverage, and instead Defendant Nodak sued its own insured and the Thompson Plaintiffs in Fifth Circuit Court, Civ. No. 11-55 for declaratory relief, rather than believe their insured Helgeson's reasonable belief that he had permission to use the Jeep vehicle involved in the November 6, 2009 accident.

143. As a result of such failure and/or refusal, Helgeson was left without liability insurance coverage, and had to retain private defense counsel at his own expense in the declaratory action in Civ. No. 11-55.

144. Subsequent to the subject event, and in an effort to procure pre-suit monetary authorization to resolve the event-related claims, the Thompson Plaintiffs, directly or through their counsel, communicated with Helgeson and his private defense counsel.

145. As part of said communications as referenced in ¶144 above, these Plaintiffs and Helgeson did not resolve the liability claim issues.

146. The subject Policy contained language stating in essence that Defendant Nodak would provide a defense for its insured, at Defendant's expense, if a claim made does fall, or arguably falls, within the applicable liability coverage, even if the claim is groundless or without merit, or false or frivolous in nature and/or substance.

147. The applicable law also established the duties upon Defendants as are described in ¶146, above.

148. Under applicable law, a liability insurer's duty to provide a defense is broader than its duty to provide coverage.

32

149. To protect an insured, if a liability insurer believes a claim may not be within coverage, it can at least partially fulfill its duty to provide a defense for its insured by doing so under a "reservation of rights," which would benefit the insured more than having no defense counsel at all provided.

150. Defendant Nodak was repeatedly asked and/or invited to provide a defense for Helgeson, even if under a reservation of rights, but Defendant steadfastly refused to do so. Instead, Nodak sued Helgeson in Civ. No. 11-55 (Declaratory Action).

151. Defendants' misconduct, in breach of contract and as a tort, or either of them, also caused, or contributed to causing, a failure to reasonably settle the underlying action, in both Civ. No. 11-55 (declaratory action) and in Civ No. 12-105 (direct liability action), or a loss of reasonable settlement opportunity to do so, in April 2014, which failure also was a proximate cause of damages to Helgeson and the Helgeson Estate, Prochnow, and ultimately to these Plaintiffs.

152.   Plaintiffs, through their counsel, offered to Defendant Nodak to resolve the third party liability claims against Helgeson prior to the Court Trial on September 19, 2013, concerning the declaratory action, but Nodak made only a very small offer to settle for $12,000 in 2012, when the liability limits were $100,000.00.

153. Defendants' failure or refusal to provide a defense for Helgeon, and/or failure to provide coverage for the occurrence of the subject event, and/or to effect reasonable settlement of the underlying action, was persistent and ongoing, and thus constituted a continuing breach of contract and/or a continuing tort.

33

154. The Court Trial of the underlying action did occur on September 19, 2013, and Defendant Nodak fully participated, litigating the declaratory action in full against its own insured.

155. Defendant Nodak had sufficient time to retain defense counsel to defend the underlying court action, and up to the date of the court trial, Defendant could have cured its breach of duty by retaining such defense counsel, even if under a reservation of rights.

156. As a direct and proximate result of such persistent and ongoing failure or refusal by Defendants, and to protect himself from a greater personal financial loss, or risk of the same from a jury's verdict, Helgeson entered into an appropriate cooperation with these Thompson Plaintiffs for a compatible defense in the declaratory action court trial, in an attempt to avoid personal financial loss and obtaining certain other beneficial terms and conditions.

157. The Court Trial resulted in a Memorandum Decision dated March 12, 2014, indicating that Nodak must provide liability coverage to Helgeson in Civ. No. 12-105 (direct action v. Thompson), that Defendant Nodak must defend Helgeson in any and all matters in Civ. No. 12-105 from March 12, 2014 forward, and that Defendant Nodak must pay any judgment obtained or damages obtained against Helgeson in Civ. No. 12-105 (see **Exhibit E**).

158. Defendant Nodak was given timely notice of the Memorandum Decision, dated March 14, 2014 and was called upon to pay the policy limits from the subject Policy.

159. That Nodak hired Defendant Harrie and Defendant Nilles Law Firm to "defend" Helgeson in Civ. No. 12-105 in (third party liability "direct" action) October 2012.

160. That Nodak and/or Harrie/Nilles were provided with a written $100,000 per

34

person per accident third party liability policy limit time limit settlement demand to settle any
and all of the Thompson claims for $100,000 by or on the date of April 28, 2014. Nodak and/or
Harrie/Nilles did not accept said policy limits/time limit demand at all prior to or on April 28,
2014.

161. That a jury trial was held in Circuit Court in Roberts County, South Dakota on the
third party liability claims of Thompson for personal injury and wrongful death, and a jury
returned a verdict in the amount of $127,000 on November 3, 2017, which verdict resulted in a
Judgment upon Jury Verdict in the amount of $160,684.12.

162. Defendant Nodak failed or refused to pay the entire Judgment upon Jury Verdict
sum from the liability limits of the subject Policy, but did finally pay a partial amount of
$100,000 on or about April 5, 2018. The remainder of $60,684.12 amount of said Judgment was
then forwarded for payment to Helgeson's Estate and Prochnow.

163. Helgeson's Estate, Prochnow and Jamie Helgeson refused and/or were financially
unable to pay the remainder of said Judgment upon Jury Verdict. Nodak offered no further
financial assistance to its insureds in that regard.

164. By valid Assignment, a copy of which is attached, Plaintiffs above were given all of
Helgeson's, Estate of Helgeson's, Prochnow's, and Jamie Helgeson's rights to bring an action
against Defendant Nodak (and against Harrie and Nilles) for violating their contract rights and
such other recognized rights, such as to have a defense and/or for coverage of the underlying
claims provided for Helgeson by Defendant Nodak.

165. Defendant Nodak's failure or refusal to provide defense counsel in a timely and
proper fashion for Helgeson, constitutes a breach of its contractual duty of good faith and fair

35

dealing; and/or contractual duty of indemnification; and/or constitutes a tortious vexatious and unreasonable failure or refusal to pay; and/or constitutes tortious "bad faith"; and/or such other and further grounds of misconduct as is set forth hereunder.

166. By virtue of the assignment, Plaintiffs have validly taken all of Helgeson's, Estate of Helgeson's, Prochnow's and Jamie Helgeson's rights to assert any and all claims they may have, or have against Defendant Nodak.

167. Except where the provision is clear and unambiguous to deny coverage to the insured, every provision within a policy of insurance including the subject Policy, is to be liberally construed to afford to the insured coverage rather than to defeat coverage.

168. In *Hawkeye-Security Ins. Co. v. Clifford*, 366 N.W.2d 489 (S.D. 1985), and similar case law progeny, the South Dakota Supreme Court has held that in light of South Dakota's rules of civil procedure, if it is clear or arguably appears from the face of the pleadings in the action against the insured that the alleged claim, if true, falls within policy coverage, the insurer must provide a defense to its insured, even if the pleadings are ambiguous, or reveal other claims not covered in the policy, and notwithstanding that extraneous facts indicate the claim is false, groundless, or even fraudulent.

169. As regarding the duty to provide a defense, the burden of showing no duty to defend rests on the insurer. See also, *Demaray v. DeSmet Farm Mutual Ins. Co.*, 2011 S.D. 39, 801 N.W.2d 284; *State Farm Fire & Cas. Co. v. Harbert*, 2007 S.D. 107, 741 N.W.2d 228; *State Farm Mut. Auto Ins. Co. v. Wertz*, 540 N.W.2d 636 (S.D. 1995).

170. As regarding the duty of the liability insurer to provide its insured with a defense, once imposed, the same continues until a Court of appropriate jurisdiction finds that the liability

36

insurer is relieved of liability under a proper application of a non-coverage provision of the policy.

171. By failing or refusing to provide Helgeson with a defense, as alleged above, Defendant Nodak committed a breach of the subject liability insurance contract.

172. Defendant's failure or refusal to timely and properly provide a defense in the underlying action was a violation of its duty to treat its insured with good faith and fair dealing, such as to constitute "bad faith" under applicable South Dakota law (see, e.g., *Champion v. U.S. Fid. & Guar. Co.,* 399 N.W.2d 320 (S.D. 1987)).

173. As a direct and proximate result of such "bad faith" misconduct, Defendant Nodak is liable for such breach in the amount of all of the attorney's fees, (in excess of $50,000.00), costs and tax incurred by Helgeson (and/or Prochnow and the Estate) with each such personal counsel, as well as prejudgment interest thereon.

174. As a direct and proximate result of said breach, Defendant Nodak is liable in the amount of the Judgment Upon Jury Verdict (less the partial satisfaction), as well as prejudgment interest thereon.

175. In addition to such damages indicated above, Defendant's misconduct gives rise to liability for such punitive and exemplary damages as the jury shall determine.

## COUNT FOUR: VEXATIOUS AND UNREASONABLE REFUSAL OR FAILURE TO PAY BENEFITS AND TO DEFEND

Plaintiff re-asserts and incorporates herein paragraphs one through one hundred and seventy five (1-175) above as if set forth in their entirety.

37

176. Defendant's failure or refusal to timely and properly provide defense counsel in the underlying action was vexatious and unreasonable under SDCL § 58-12-3.

177. As a direct and proximate result of said vexatious and unreasonable misconduct, Defendant Nodak is liable for such breach in the amount of the attorney's fees, costs and tax incurred by Helgeson with each such personal counsel, as well as prejudgment interest thereon.

178. As a direct and proximate result of said breach, Defendant Nodak is liable for such breach in the amount of the Judgment upon Jury Verdict, (less the partial satisfaction) as well as prejudgment interest thereon.

### COUNT FIVE: PUNITIVE DAMAGES

Plaintiffs hereby incorporate paragraphs one through one hundred seventy eight (1-178) of this Complaint as if fully set forth herein.

179. In doing all the things herein alleged, each Defendant Harrie, Nilles and/or Nodak acted individually, and/or jointly and severally, intentionally, recklessly, vexatiously, oppressively and/or maliciously and are each guilty of a wanton and reckless disregard of the contractual, common law and statutory rights of Nicholas Helgeson, Melissa Prochnow, Jamie Helgeson, the Nicholas Helgeson Estate, Teresa Thompson and the Thompson Estate.

180. Plaintiffs are entitled to punitive damages as the only way of deterring Defendants Harrie, Nilles and/or Nodak Insurance Company from continuing to employ these wrongful, willful, intentional, oppressive, unreasonable, and vexatious tactics against its own clients, policyholders and/or its first party insureds.

### PRAYER FOR RELIEF

38

WHEREFORE, Plaintiffs request for judgment individually, and jointly and severally, against each of the Defendants as follows:

1.    For the actual expenses incurred in the full and complete compensation for all tort and statutory damages sustained by all of the Plaintiffs in the subject incident and as a result of the Defendants' legal negligence, bad faith, breach of contract, breach of fiduciary duty, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, reckless conduct, and any and all subsequent and nondisclosure conduct, and for the actual expenses incurred incidental to the said damages, past, present and future, and to the procuring of said expenses, reimbursements, losses and damages to the date of trial, together with interest thereon;

2.    For such monetary compensation as shall fully compensate for all of the losses, including, but not limited to, pain and suffering, loss of enjoyment of life, mental anguish, worry, anxiety, frustration, humiliation, embarrassment, loss of income, travel expenses, undue delay, negligent and intentional infliction of emotional distress, loss of trust, loss of peace of mind, loss of security, loss of comfort, attorneys fees plus interest, litigation costs plus interest, and other consequential loss sustained by Plaintiffs to the date of trial with interest thereon and which is likely to continue into the future, in a sum to be determined by the jury in this case;

3.    For an additional sum as and for punitive or exemplary damages in an amount to be set by the jury herein, based upon the best financial information available as to each Defendant according to SDCL §21-3-2.

4.    For Plaintiffs' attorney fees, costs, and expenses of these proceedings, and because of Defendants' vexatious, unreasonable, oppressive, intentional and abusive conduct;

39

5.    For prejudgment interest on any award to which Plaintiffs are held entitled by the

jury; and

6.    For such other and further relief as the Court deems just and equitable.

DATED this 9th day of January, 2019.

                          ABOUREZK, ZEPHIER, & LAFLEUR


                          By: /s/ Robin L. Zephier
                          Robin L. Zephier
                          PO Box 9460
                          2020 West Omaha Street
                          Rapid City, South Dakota 57709
                          (605) 342-0097


                          Turbak Law Office, P.C.
                          Seamus Culhane
                          26 W. Broadway, Suite 100
                          Watertown, SD 57201-3670
                          (877) 380-8517


                          Attorneys for Plaintiffs



                    **TRIAL BY JURY IS HEREBY REQUESTED**




                                    40

| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| COUNTY OF ROBERTS | )§<br>) | FIFTH JUDICIAL CIRCUIT |

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the )
Estate of WINFIELD THOMPSON )
deceased, and DALE LAROCHE, )
Individually, And As Special Administrator )
for the Estate of RICHARD CHELL, )
deceased, )
)
       Plaintiffs, )
)
v. )
)
NICHOLAS HELGESON, )
)
       Defendant. )

Civil No.: 12-105

**FILED**

MAR 2 9 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
5TH CIRCUIT CLERK OF COURT
By _____

**ORDER GRANTING PLAINTIFF'S
MOTION TO QUASH DEFENDANT'S
MOTION FOR PRO HAC VICE OF
WILLIAM HARRIE**

   The above-entitled action having come before this Court on Defendant's Motion for Pro

Hac Vice and Plaintiffs' Motion to Quash Pro Hac Vice, and the Court having read and

considered the submittals of the parties and the arguments of counsel; and good cause appearing

thereon, it is hereby

   ORDERED that the Defendant's attorney William Harrie did not comply

with SDCL §16-18-2 and therefore the Defendant's Motion for Pro Hac Vice is DENIED; and it

is hereby further

   ORDERED that the attached Findings of Fact and Conclusions of Law will be hereby

incorporated in full herein, in support of said Order.

   Dated this 29th day of March 2016.

BY THE COURT:

_____
Honorable Jon S. Flemmer



PLAINTIFF'S
EXHIBIT

A

Circuit Court Judge

ATTEST:

By: _____
        Deputy

(SEAL)

2

STATE OF SOUTH DAKOTA )       )
                          )§
COUNTY OF ROBERTS       )

IN CIRCUIT COURT

FIFTH JUDICIAL CIRCUIT

Civil No.: 12-105

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the )
Estate of WINFIELD THOMPSON )
deceased, and DALE LAROCHE, )
Individually, And As Special Administrator )
for the Estate of RICHARD CHELL, )
deceased, )
                               )
              Plaintiffs, )
                               )
v.                                  )
                               )
NICHOLAS HELGESON, )
                               )
             Defendant. )

**FILED**

MAR 2 9 2016

SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
5TH CIRCUIT CLERK OF COURT

By_____

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON
PLAINTIFF'S RENEWED MOTION
FOR DEFAULT JUDGMENT AGAINST
DEFENDANT HELGESON, AND
MOTION TO QUASH**

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S RENEWED MOTION FOR DAMAGES AGAINST DEFENDANT HELGESON, AND MOTION TO QUASH

The above-captioned action, through Plaintiffs' Renewed Motion for Default Judgement and for Damages, having come before the Court duly for hearing on Monday, February 29, 2016; and the Plaintiff appearing through her attorney of record, Robin L. Zephier of Abourezk & Zephier, P.C. appearing by phone, and the Defendant having appeared by counsel Greg Peterson, and Plaintiff LaRoche appearing by phone, after written notice of said hearing was sufficiently provided to Defendant and LaRoche; and the Court having received and considered the written submissions of the Plaintiff Thompson and the Defendant, and the argument of counsel; and the Court having determined the arguments and authorities provided by the Plaintiff Thompson, and the Renewed Motion for Default Judgment having been GRANTED; and good cause appearing for entry of

Findings of Fact and Conclusions of Law, and an Order on the same; therefore, the following shall constitute the Court's Findings and Conclusions accordingly:

## FINDINGS OF FACT

1. Any Finding of Fact that should more appropriately be a Conclusion of Law, or vice versa, shall be treated as such for all purposes herein.

2. The oral pronouncements by the Court that are properly considered as Findings of Fact, made during the hearing of February 29, 2016, shall be, and hereby are, ratified and reasserted herein by this reference as if set forth in their entirety, and shall be considered as the primary and controlling Findings of Fact for all purposes herein.

3. These Findings of Fact are intended to aid, in summary fashion, explanation of the determination made by the Court and announced in open court at the conclusion of the February 29, 2016 hearing, and not in substitution thereof.

4. Plaintiff Teresa Thompson is one of the natural surviving daughters of the decedent, Winfield Thompson.

5. Plaintiff Teresa Thompson is the administrator of the estate of Winfield Thompson.

6. Plaintiff is entitled to receive damages for and on behalf of the Estate, as well as in her own right, and that of Decedent's Winfield Thompson's heirs.

7. The acts of Defendant Nicholas Helgeson directly and proximately caused Winfield Thompson's death on November 6, 2009.

8. Decedent suffered fatal internal injuries which caused his death.

9. Decedent survived for 6 hours after the injury, until his ultimate death on November 6, 2009.

2

10. Plaintiff Teresa Thompson is the rightful person to receive a damages award for and on behalf of the Estate, and in her own right personally, and in the name of the other heirs.

11. The Court has presided over this matter, as well as the declaratory judgment matter that preceded this case, and also the criminal trial of Mr. Helgeson.

12. The Court did previously rule on an initial Plaintiffs' Motion for Default Judgment filed by Plaintiff Teresa Thompson dated June 17, 2014, where the Court denied said motion because an Answer signed by Mr. Harrie had been filed.

13. The formal Answer had been initially due based upon correspondence between counsel prior to the Plaintiff's Motion for Default Judgement being filed.

14. The Court at a hearing held on July 3, 2014, did deny said Plaintiffs' Motion for Default Judgment and did allow the leeway for the Answer to stand, which was filed on or about June 18, 2014.

15. The previous formal Answer filed by defense counsel, Mr. Harrie, dated June 18, 2014, listed Mr. Mark Hanson, a member of Mr. Harrie's Fargo, North Dakota law firm, and Mr. Harrie, but the Answer was only signed by Mr. Harrie, and not by Mr. Hanson.

16. That Mr. Harrie did appear as defense counsel at a discovery deposition of his client, Mr. Helgeson, taken by video conference from Fargo, North Dakota, on June 30, 2015.

17. That Plaintiff Teresa Thompson did file a Plaintiff's First Motion to Compel dated December 30, 2015, to attempt to re-depose Mr. Helgeson as a result of Mr. Harrie's conduct and advisements to his client during said deposition.

18. That Plaintiffs' counsel did learn in January, 2016, that Defense attorney Mr. Harrie, was not licensed to practice law in the state of South Dakota, and that Mr. Harrie had never sought admission to practice in South Dakota on this case by Pro Hac Vice, at all from June 2014 through January, 2016.

3

19.  That based upon the information learned by Plaintiffs' counsel, a Renewed Motion for Default Judgment against Defendant Helgeson, and a Motion to Quash all prior pleadings signed by Mr. Harrie, were filed and served upon Mr. Harrie on or about January 26, 2015.

20.  Defendant's attorney Mr. William Harrie of Fargo, North Dakota, then sought Pro Hac Vice admission to practice in this South Dakota Court by Affidavit and Motion filed by Greg Peterson of Aberdeen, South Dakota, dated January 28, 2016.

21.  That Plaintiff Teresa Thompson did file an objection to Harrie's Pro Hac Vice Admission request, dated January 28, 2016.

22.  That the Court, on February 26, 2016, did rule upon Mr. Harrie's January 28, 2016 Motion for Pro Hac Vice, and determined that the Motion for Pro Hac Vice filed by Mr. Peterson on behalf of Mr. Harrie, was denied.

23.  The Court found that Mr. Harrie did not comply with the requirements of SDCL §16-18-2 before he commenced practicing law in South Dakota, which requirements are mandatory, and not subject to substantial compliance.

24.  The Court specifically found that Mr. Harrie unlawfully practiced law in South Dakota from June 2014 to January 26, 2016, appearing for at least one deposition and two formal hearings before the Court (one on July 31, 2014, and the second on December 3, 2015).

25.  During the time from June 2014 to January 26, 2016, Mr. Harrie never attempted to remedy his non-compliance with SDCL §16-18-2.  Rather, Mr. Harrie continued to practice in South Dakota without notifying the Court.

26.  The Court specifically found that, Mr. Harrie's conduct counsels against him satisfying subsection six of SDCL 16-18-2. It provides:

4

A statement that the applicant is familiar with the rules of the State Bar

of South Dakota governing the conduct of members of the State Bar of

South Dakota, and will at all times abide by and comply with the same

so long as such trial or hearing is pending, and he or she has not

withdrawn as counsel therein[.]  SDCL 16-18-2(6).

27.  In essence, Mr. Harrie engaged in conduct involving dishonesty, fraud, deceit or

misrepresentation when he began practicing law without a license in front of this Court

and by failing to notify the Court for one year and seven months.

28.  This conduct by Mr. Harrie does constitute a violation of Rule 8.4(c) of the South

Dakota Rules of Professional Conduct.

29.  Consequently, the Court, upon examination of Mr. Harrie, is not satisfied that he can

"observe the ethical standards required of attorneys in this state[.]" SDCL 16-18-2.

30.  This conclusion is further solidified by the lack of civility and professionalism

exhibited by Mr.

Harrie at the Deposition of Nicholas Helgeson conducted on June 30, 2015.

## CONCLUSIONS OF LAW

The Court hereby enters the following Conclusions of Law:

1. Any Conclusion of Law that should more appropriately be a Finding of Fact, or

vice versa, shall be treated as such for all purposes herein.

2. The oral pronouncements by the Court that are properly considered as Conclusions

of Law, made during the hearing of February 29, 2016 shall be, and hereby are,

ratified and reasserted herein by this reference as if set forth in their entirety, and shall

5

be considered as the primary and controlling Conclusions of Law for all purposes herein.

3. These Conclusions of Law are intended to aid, in summary fashion, explanation of the determination made by the Court and announced in open court at the conclusion of the February 29, 2016 hearing, and not in substitution thereof.

4. Defendant Helgeson was legally responsible and liable for Decedent Winfield Thompson's death and the resulting related and legally caused damages yet to be established at the damages hearing.

5. Plaintiff Teresa Thompson is the rightful person to receive a damages award for and on behalf of the Estate of Winfield Thompson, and in her own, and the heirs' right.

6. That between June 2014 and January 26, 2016, Mr. William Harrie of the Nilles Law Firm, in Fargo, North Dakota, did commit the unauthorized practice of law in the State of South Dakota in violation of SDCL §16-18-1 and 16-18-2.

7. That between June 2014 and January 26, 2016, Mr. Harrie never once reasonably, willingly or formally disclosed this unauthorized practice of law to Plaintiffs' counsel Mr. Zephier, or this Court.

8. Mr. Harrie's conduct in this case indicates that he cannot satisfy the requirements of SDCL 16-18-2 (6), which provides that the "applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]".

6

9. By doing what he has done in this case, Mr. Harrie engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he began practicing law without a license in front of this Court and by failing to notify the Court for one year and seven months.

10. Mr. Harrie's conduct in this case does constitute a violation of Rule 8.4(c) of the South Dakota Rules of Professional Conduct.

11. The Court, upon examination of Mr. Harrie's conduct and his affidavit for pro hac vice admission, is not satisfied that he can "observe the ethical standards required of attorneys in this state[.]"

12. The Court's conclusion in this matter in denying Mr. Harrie's admission to practice law in this state under the pro hac vice statutory requirements, is further solidified by the lack of civility and professionalism exhibited by Mr. Harrie at the Deposition of Nicholas Helgeson conducted on June 30, 2015.

13. The Court determines that the Plaintiffs were and are prejudiced by Mr. Harrie's conduct and his unauthorized practice of law in this State, and in this case.

14. The Court determines that the Court's time has been wasted in that Mr. Harrie made several appearances before this Court and, although the Court did not directly ask Mr. Harrie if he was licensed to practice law in South Dakota, Mr. Harrie did not indicate to the Court that he was not licensed to do so, and appeared on his own at that time, without licensed counsel.

15. While it appears that a member of the law firm that Mr. Harrie is a part of, Mr. Hansen, is licensed to practice law in South Dakota, the name of Mr. Hansen was on

7

the formal Answer, but the signature on the June 18, 2014 formal Answer of the Defendant Helgeson, was Mr. Harrie's signature, and Mr. Harrie was not authorized to practice law in South Dakota at that time.

16. The appropriate way for an attorney who is not licensed in South Dakota to become able to proceed in appearing in South Dakota as set forth in the pro hac vice statutes, SDCL 16-18-2, is to follow that procedure, but that procedure was not followed until Mr. Peterson became involved in the case recently and the request for pro hac vice admission was made on January 28, 2016.

17. The Court is familiar with the prior proceedings and matters that this Court has been involved in regarding the declaratory action and the criminal proceeding.

18. The Court recognizes that the pro hac vice statute would require an attorney like Mr. Harrie in that situation, to appear with a South Dakota resident attorney present in Court for all court hearings, as well as actually having the admission pro hac vice completed before any legal pleadings were signed or filed.

19. While Mr. Hansen could certainly have signed pleadings and made appearances as a licensed member of the South Dakota bar, he did not take those actions in this case to date.

20. The Court concludes that the formal Answer prepared and filed by Mr. Harrie in June 2014 is quashed at this time, as Mr. Harrie was not authorized to practice law in South Dakota at the time that he took action on behalf of the Defendant by signing and filing formal pleadings in the Court, and appearing and arguing before the Court without a license in South Dakota or without admission pro hac vice.

8

21. While Default Judgment may be a harsh remedy, the Court must examine whether or not there was excusable neglect and whether there is a meritorious defense.

22. While there has been a defense set forth in the formal Answer of June 18, 2014, the neglect in this case by Mr. Harrie, is in the failure to become admitted prior to proceeding with the formal proceedings in this South Dakota court. This is not excusable.

23. To allow the formal June 18, 2014 Answer to stand, in the Court's determination and discretion, would simply reward the conduct and allow the action to proceed, when, in fact, no legitimate Answer was ever filed.

24. The pleadings signed and/or filed by Mr. Harrie acting as defense counsel for Defendant Helgeson, because of Harrie's unauthorized practice of law in South Dakota, are null and void, including the formal Answer dated June 18, 2014.

25. The Court concludes that the appropriate action is to quash the Answer and all other pleadings signed by Mr. Harrie and to therefore, grant the Renewed Motion for Default Judgment in asmuch as Mr. Harrie's actions were a nullity, and no Answer or responsive pleading has been filed at all in this case.

26. A Damages hearing needs to be held in order to determine the full extent, nature and amount of Plaintiffs' damages.

27. Based upon the foregoing Findings of Fact and Conclusions of Law, an Order consistent therewith should be entered accordingly.

Dated this 29th day of March, 2016.

BY THE COURT:

9

Honorable Jon S. Flemmer
Circuit Court Judge

ATTEST:

By: ______________________
Deputy

(SEAL)

/STATE OF SOUTH DAKOTA    )                          IN CIRCUIT COURT
                          )§
COUNTY OF ROBERTS         )                          FIFTH JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )                 Civil No.: 12-105
And As Special Administrator for the    )
Estate of WINFIELD THOMPSON,            )
deceased,                               )
                                        )
                      Plaintiffs,       )
                                        )
v.                                      )            **AMENDED JUDGMENT**
                                        )
The Estate NICHOLAS HELGESON,           )
deceased, and MELISSA PROCHNOW          )
(mother of Nicholas Helgeson), and JAMIE )
HELGESON (father of Nicholas Helgeson), )
as Representatives of the Estate of Nicholas )
Helgeson,                               )
                                        )
                      Defendant.        )

    The above-entitled matter, having come on regularly for trial by jury on November 1st and

2nd, 2017, before the Honorable Jon S. Flemmer, Circuit Court Judge, and the jury; and the

Plaintiffs, Teresa Thompson, Individually, and as Special Administrator for the Estate of

Winfield Thompson Sr., deceased, and the Estate of Thompson, appearing personally and by

their attorneys, Robin L. Zephier of Abourezk, Zephier & LaFleur, and Seamus Culhane of

Turbak Law Office, and the Defendant, the Estate of Nicholas Helgeson and Melissa Prochnow

as Representatives of the Estate of Nicholas Helgeson, appearing personally and by its attorneys,

Mark Arndt of May & Johnson, P.C., evidence having been offered and received by the Court;

and the matter having been submitted to the jury on November 2nd, 2017, and the jury having

returned its verdict in favor of Plaintiffs, Teresa Thompson, Individually, and the heirs of

Winfield Thompson, Sr., and the Estate of Thompson, and the verdict being duly received and

filed herein and made a record of this court, and a hearing being held upon Plaintiffs' Application



for Costs re: Prevailing Party and Plaintiffs' Motion for Award of Fees, Costs & Expenses
Pursuant to Rule 36 and 37 and Fees on February 26, 2018;

NOW, THEREFORE, on the verdict of the jury, it is hereby

ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and the Estate of
Thompson, have judgment on their complaint against the Estate of Nicholas Helgeson in the
amount of $127,219.60; and it is

FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and
the Estate of Thompson have judgment against the Estate of Nicholas Helgeson, for prejudgment
interest in the amount of $24,131.86, and it is

FURTHER ORDERED, ADJUDGED, AND DECREED that Plaintiffs, Thompson and
the Estate of Thompson have judgment against the Estate of Nicholas Helgeson, for attorney fees
for SDCL § 15-6-36 & 37, Requests for Admissions relief in the amount of $5,857.50 ($5,500.00
fees and $357.50 tax), and it is

FURTHER ORDERED that Plaintiffs, Teresa Thompson, and the Estate of Thompson
shall also have judgment against Defendant, the Estate of Nicholas Helgeson, for their costs and
disbursements herein in the amount of $3,475.16, such costs and disbursements to be taxed by
the Clerk of this Court in the amount inserted herein in such sum as shall by law be allowed,
which shall leave the total amount of the post verdict Amended Judgment of $160,684.12.

Dated this_____ day of February, 2018.

BY THE COURT: Signed: 3/14/2018 1:12:25 PM

_____
Jon S. Flemmer
Circuit Court Judge

Attest:
Guy, Brenda
Clerk/Deputy

2

ATTEST:
CLERK OF COURTS

By_____
        Deputy
(S E A L)

3

SEP. 13. 2012  4:50PM    ABOUREZK LAW                    NO. 6826   P. 3

STATE OF SOUTH DAKOTA        )            IN CIRCUIT COURT
                             )§
COUNTY OF ROBERTS            )            FIFTH JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )      Civil No.
And As Special Administrator for the )
Estate of WINFIELD THOMPSON       )                 **FILED**
deceased, and DALE LAROCHE,       )
Individually, And As Special Administrator )          OCT 0 5 2012
for the Estate of RICHARD CHELL,  )         SOUTH DAKOTA UNIFIED JUDICIAL SYSTEM
deceased,                         )              5TH CIRCUIT CLERK OF COURT
                                  )         By_____
                    Plaintiffs,   )
                                  )
v.                                )         **ADMISSION OF SERVICE**
                                  )
NICHOLAS HELGESON,                )
                                  )
                    Defendant.    )

Personal service of the enclosed and attached *Summons and Complaint,* has been made

upon the Kurtis Greenly for service upon Nicholas Helgeson, and is hereby admitted by receipt of

true copies thereof on this _26TR_ day of September, 2012.

                                    Kurtis Greenley
                                    Attorney for Nicholas Helgeson

SUBSCRIBED AND SWORN to before me this _26th_ day of September, 2012.

                                    Notary Public

My commission expires:

[S E A L]              KATHRYN M QUINN
                        Notary Public
                        Minnesota
                        My Commission Expires January 31, 2015


PLAINTIFF'S EXHIBIT

STATE OF SOUTH DAKOTA

IN CIRCUIT COURT

COUNTY    OF    ROBERTS

FIFTH JUDICIAL CIRCUIT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| NODAK MUTUAL INSURANCE COMPANY, | \* | Civ. _____ |
| | \* | |
| Plaintiff, | \* | |
| vs. | \* | COMPLAINT |
| | \* | |
| NICHOLAS HELGESON; DALE LAROCHE, as Personal Representative of the ESTATE OF RICHARD CHELL; and TERESA THOMPSON, as Special Administrator of the ESTATE OF WINFIELD THOMPSON, | \* | |
| | \* | |
| | \* | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff, for its claim for relief against the Defendants, alleges as follows:

1.      This is an action for a declaratory judgment to determine coverage under an auto insurance policy.

2.      Plaintiff is a corporation authorized to do business in North Dakota with its principal place of business in the State of North Dakota and incorporated under the laws of the State of North Dakota.

3.      Defendant Nicholas Helgeson is an individual and resident of the State of North Dakota.

4.      At the time of the accident, Richard Chell was a resident of the State of South Dakota.

5.      At the time of the accident, Winfield Thompson was a resident of the State of South Dakota.

6.      Defendant Nicholas Helgeson is an insured driver under automobile insurance policy, PAND 000419882.

1



PLAINTIFF'S EXHIBIT

7.    The policy contains an exclusion for individuals using a vehicle without a reasonable belief that said individual is entitled to do so.  See Exclusion A. 8 in policy attached as Exhibit 1.

8.    On November 6, 2009, Defendant Nicholas Helgeson was driving a 1994 Jeep Grand Cherokee owned by Patrick Nelson.

9.    Defendant Helgeson was headed south on 466th Avenue near its intersection with South Dakota Highway 127 in Roberts County, South Dakota.

10.    Winfield Thompson was a passenger in a vehicle driven by Richard Chell. Thompson and Chell were headed east on South Dakota Highway 127 near its intersection with 466th Avenue in Roberts County, South Dakota.

11.    The vehicles being driven by Defendant Helgeson and Mr. Chell collided resulting in the deaths of Mr. Chell and Mr. Thompson.

12.    Several weeks prior to the accident, Defendant Helgeson and Patrick Nelson had a conversation regarding Helgeson's use of the vehicle at which time Mr. Nelson informed Defendant Helgeson that he was not allowed to use the vehicle unless he provided insurance for it.

13.    Defendant Helgeson never obtained a policy to insure the 1994 Jeep Grand Cherokee.

14.    At the time of the accident, Defendant Helgeson did not have permission and was not authorized to operate the vehicle owned by Mr. Nelson.

15.    Plaintiff is not obligated to pay any claims or demands by any of the Defendants or to defend Nicholas Helgeson against any such claims or demands because Nicholas Helgeson was operating the vehicle without the permission or consent of the owner of the vehicle.

16.    All of the Defendants are interested in the outcome of this controversy.

17.    This Court has authority under SDCL 21-24 to bring the parties before it and to adjudicate the matters at issue and enter its judgment declaring and adjudicating the rights of all parties.

WHEREFORE, Plaintiff prays:

1.    That this Court enter an Order finding and declaring that Plaintiff is not obligated to pay any claims or demands arising out of the subject accident and that the Plaintiff has no duty to pay or defend any claims anyone may have against Nicholas Helgeson.

2.    That this Court award Plaintiff its costs and disbursements of this action.

2

3.     That this Court grant Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

Dated this _3_ day of December, 2010.

SIEGEL, BARNETT & SCHUTZ, L.L.P.

Reed Rasmussen
Julie Dvorak
Attorneys for Plaintiff
415 S. Main Street, 400 Capitol Building
PO Box 490
Aberdeen, SD  57402-0490
Telephone No. (605) 225-5420
Facsimile No. (605) 226-1911
rrasmussen@sbslaw.net
jdvorak@sbslaw.net

3



# PERSONAL AUTO DECLARATIONS

INSURED COPY

**Nodak Mutual Insurance Company**
www.nodakmutual.com

1101 1st Avenue North  P.O. Box 2502
Fargo, North Dakota 58108-2502
1-877-814-5011

Policy Number: PAND0004-9802
Renewal Number: 0000000000

**POLICY CHANGE**
Change Effective:     4/06/2009
Policy Period From:   4/02/2009
To:                   4/02/2010
12:01 A.M. Standard Time at the Address of the Named Insured

Named Insured:

RICHARD PROCHNOW &/OR MELISSA PROCHNOW
9920 170TH AVE SE
HANKINSON  ND 58041

Insured Phone#

Payment Plan:  4-PAY
**TOTAL ANNUAL POLICY PREMIUM:**     **$3,318.00**

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% | VEHICLE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 003 | 2000 DODG INTREPID SEDAN | 2B3HD46R0YH276563 | 13 | 10000 | 5C | WL | 002 | S | PP | 1.21 | DELETED |

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|---|---|---|---|---|---|---|---|---|---|---|
| 004 | 2004 CHEV TAHOE LS/L UTL | 1GNEK13Z54J254680 | 14 | 10000 | 3F | FP | 002 | U | SU | 1.02 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|---|---|---|---|---|---|---|---|---|---|---|
| 005 | 2005 CHEV SILVERADO PKP4X44D | 2GCEK13T751284637 | 17 | 7501 | 1G | FA | 002 | U | PK | .86 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|---|---|---|---|---|---|---|---|---|---|---|
| 006 | 1986 CHEV MTECARLZ34 COUPE 2D | 2G1WX12X3T9260787 | 11 | 7501 | 5C | WL | 002 | S | PP | 1.21 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|---|---|---|---|---|---|---|---|---|---|---|
| 007 | 2002 PONT SUNFIRE SEDAN | 1G2JB524B27170505 | 15 | 10000 | 4F | FP | 002 | U | PP | .97 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT

| Veh | Year/Make/Model | Vehicle ID Number | Sym | Miles | Class | Use | Ter | Lvl | Type | Exp% |
|---|---|---|---|---|---|---|---|---|---|---|
| 008 | 2008 DODG AVENGER SEDAN 4D | 1B3LC56K58N216064 | 14 | 10000 | 4F | FP | 002 | U | PP | .97 |

*PASSIVE RESTRAINT DISCOUNT *MULTI-CAR DISCOUNT
*MULTI-LINE HO/FR DISCOUNT

---

## COVERAGES AND LIMITS OF LIABILITY
**Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.**

**VEHICLE 004  COVERAGES** 2004 CHEV TAHOE LS/L UTL        Rated Driver:  MELISSA PROCHNOW

| | LIMITS | PREMIUM |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $84.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $98.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $48.00 |
| **COVERAGES FOR DAMAGE TO YOUR AUTO:** | | |
| OTHER THAN COLLISION | Actual Cash Value less $1,000 Deductible | $231.00 |
| COLLISION | Actual Cash Value less $1,000 Deductible | $173.00 |
| **ENDORSEMENTS:** | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $18.00 |

Total Annual Premium Vehicle  004        $671.00

**VEHICLE 005  COVERAGES** 2005 CHEV SILVERADO PKP4X44D        Rated Driver:  RICHARD PROCHNOW

| | LIMITS | PREMIUM |
|---|---|---|
| **LIABILITY:** | | |
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $52.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $62.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $9.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $4.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $30.00 |
| **COVERAGES FOR DAMAGE TO YOUR AUTO:** | | |



EXHIBIT
1

DATE PRINTED:    4/15/09

Page  1

*Nodak Mutual Insurance* Company                                    INSURED COPY

RICHARD PROCHNOW &/OR MELISSA PROCHNOW          POLICY NUMBER:  PAND000419882
EFF. DATE:    4/02/2009      EXP. DATE:    4/02/2010          CLIENT NUMBER:  000000034327

(Continued)

| | | |
|---|---|---|
| OTHER THAN COLLISION | Actual Cash Value less $1,000 Deductible | $183.00 |
| COLLISION | Actual Cash Value less $1,000 Deductible | $133.00 |
| ENDORSEMENTS: | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $15.00 |

Total Annual Premium Vehicle 005          $488.00

**VEHICLE 006  COVERAGES** 1996 CHEV MTECARLZ34 COUPE 2D      Rated Driver:  NICHOLAS HELGESON

| LIABILITY: | LIMITS | PREMIUM |
|---|---|---|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $312.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $365.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $48.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $23.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $181.00 |
| ENDORSEMENTS: | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $22.00 |

Total Annual Premium Vehicle 006          $951.00

**VEHICLE 007  COVERAGES** 2002 PONT SUNFIRE SEDAN      Rated Driver:  MELISSA PROCHNOW

| LIABILITY: | LIMITS | PREMIUM |
|---|---|---|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $79.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $93.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $47.00 |
| ENDORSEMENTS: | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $17.00 |

Total Annual Premium Vehicle 007          $255.00

**VEHICLE 008  COVERAGES** 2008 DODG AVENGER SEDAN 4D      Rated Driver:  MELISSA PROCHNOW

| LIABILITY: | LIMITS | PREMIUM |
|---|---|---|
| BODILY INJURY LIABILITY | $100,000 Each Person/$300,000 Each Accident | $79.00 |
| PROPERTY DAMAGE LIABILITY | $100,000 Each Accident | $93.00 |
| UNINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $13.00 |
| UNDERINSURED MOTORIST | $100,000 Each Person/$300,000 Each Accident | $6.00 |
| PERSONAL INJURY PROTECTION | $30,000 Each Person | $47.00 |
| COVERAGES FOR DAMAGE TO YOUR AUTO: | | |
| OTHER THAN COLLISION | Actual Cash Value less $250 Deductible | $411.00 |
| COLLISION | Actual Cash Value less $500 Deductible | $287.00 |
| ENDORSEMENTS: | | |
| ADDED PERSONAL INJ PROTECTION | $50,000 Each Person | $17.00 |

Total Annual Premium Vehicle 008          $953.00

LOSS PAYEE/ADDITIONAL INTEREST INFORMATION:

DATE PRINTED:    4/15/09                                              Page  2.

*Nodak Mutual Insurance Company*                                      INSURED COPY

RICHARD PROCHNOW &/OR MELISSA PROCHNOW            POLICY NUMBER:  PAND000419882
EFF. DATE:   4/02/2009      EXP. DATE:  4/02/2010   CLIENT NUMBER:  000000034327

(Continued)

| | | |
|---|---|---|
| VEH 004 Loss Payee | DACOTAH BANK<br>PO BOX 209<br>SISSETON, SD 57262-0209 | |
| VEH 005 Loss Payee | CITI FINANCIAL AUTO<br>PO BOX 3449<br>COPPELL, TX 75019 | |
| VEH 008 Loss Payee | LINCOLN STATE BANK<br>302 SOUTH MAIN, PO BOX 250<br>HANKINSON, ND 58041 | |

**MESSAGES:**

Unit 003: Deleted - 2000 DODG INTREPID
Unit 006: Changed NICHOLAS HELGESON to Rated Driver
    Changed Use to WL - WORK LESS THAN 30 MILES/WEEK
    Changed Rate Level to 3 - STANDARD
Unit 008: Added - 2008 DODG AVENGER

Forms Applicable:
PA 00 01 98   PP ND 01 88 98   PP ND 04 29 98   PP ND 05 83 95   PP ND 05 84 04

DATE PRINTED:   4/15/09                                              Page  3

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse, if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

B. "We", "us" and "our" refer to the Company providing this insurance.

C. For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

D. "Bodily injury" means bodily harm, sickness or disease, including death that results.

E. "Business" includes trade, profession or occupation.

F. "Family member" means a person related to you by blood, marriage or adoption, including a ward or foster child, who is a resident of your household.

G. "Occupying" means in, upon, getting in, on, out or off.

H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.

I. "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

K. "Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

a. A private passenger auto; or

b. A pickup or van, for which no other insurance policy provides coverage, that:

(1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

(2) Is not used for the delivery or transportation of goods and materials unless such use is:

(a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

(b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below only if you pay us any added premium due. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

L. "Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

---

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have the right to investigate, negotiate and settle any claim with or without your consent. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

### EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:

a. Rented to;

b. Used by; or

---

c. In the care of;

that "insured":

This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. Selling;

   b. Repairing;

   c. Servicing;

   d. Storing; or

   e. Parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. You;

   b. Any "family member"; or

   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.

   This Exclusion (A.7.) does not apply to the maintenance or use of a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":

   a. Is an insured under a nuclear energy liability policy; or

   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. Nuclear Energy Liability Insurance Association;

   b. Mutual Atomic Energy Liability Underwriters; or

   c. Nuclear Insurance Association of Canada.

10. For any "bodily injury" or "property damage":

    a. For which the United States might be liable for the "insured's" use of any vehicle; or

    b. Arising out of the ownership, maintenance, use or operation of farm machinery.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:

   a. Has fewer than four wheels; or

   b. Is designed mainly for use off public roads.

   This Exclusion (B.1.) does not apply:

   a. While such vehicle is being used by an "insured" in a medical emergency;

   b. To any "trailer"; or

   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

   a. Owned by a "family member"; or

   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

C. We do not provide Liability Coverage for any punitive or exemplary damages.

D. We do not provide Liability Coverage for "bodily injury" arising out of the passage of a communicable disease from any "insured" to another person.

PP PA 00 01 98        Includes copyrighted material of Insurance Services Office, Inc.,        Page 3 of 12
with its permission.

Filed: 1/9/2019 3:20 PM CST   Brookings County, South Dakota        05CIV19-000006

E. We do not provide Liability coverage for "bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an "insured" or an "insured's" employee.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B -- MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

   a. While "occupying"; or

   b. As a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

PP PA 00 01 98        Includes copyrighted material of Insurance Services Office, Inc.,        Page 4 of 12
with its permission.

Filed: 1/9/2019 3:20 PM CST   Brookings County, South Dakota      05CIV19-000006

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van that you own; or

   c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

   c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

   a. Competing in; or

   b. Practicing or preparing for;

   any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part A or Part C of this policy; or

   2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C — UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

   1. Sustained by an "insured"; and

   2. Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

   Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

   1. You or any "family member".

   2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

   1. To which no bodily injury liability bond or policy applies at the time of the accident.

   2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

   3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

      a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying"; or

c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Denies coverage; or

b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A. or Part B. of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

PP PA 00 01 98        Includes copyrighted material of Insurance Services Office, Inc., with its permission.        Page 6 of 12

Filed: 1/9/2019 3:20 PM CST   Brookings County, South Dakota     05CIV19-000006

a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D – COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief or vandalism;

8. Riot or civil commotion;

9. Contact with bird or animal; or

10. Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

a. Breakdown;

b. Repair;

c. Servicing;

d. Loss; or

e. Destruction.

## TRANSPORTATION EXPENSES

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

   b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   However, the most we will pay for any expenses for loss of use is $20 per day.

B. If the loss is caused by:

1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

   a. Beginning 48 hours after the theft; and

   b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## CLOTHES AND LUGGAGE

In addition, we will pay, without application of a deductible, up to a maximum of $200 per occurrence for clothes and luggage owned by you or any "family member". These items have to be in or on an auto covered by this part. Your covered auto" has to be covered under this policy for:

1. Other Than Collision Coverage and the loss caused by fire, lightning, flood, falling objects, explosion, earthquake or theft. If the loss is due to theft, the entire auto must have been stolen; or

2. Collision Coverage and the loss caused by "collision".

$200 is the most we will pay in any one occurrence even though more than one person has a loss. This coverage is excess over any other coverage.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:

   a. Radios and stereos;

   b. Tape decks; or

   c. Compact disc players.

   This Exclusion (4.) does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:

   a. The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or

   b. The equipment is:

      (1) Removable from a housing unit which is permanently installed in the auto;

      (2) Designed to be solely operated by use of the power from the auto's electrical system; and

      (3) In or upon "your covered auto" or any "non-owned auto" at the time of loss.

5. Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:

a. Citizens band radios;

b. Telephones;

c. Two-way mobile radios;

d. Scanning monitor receivers;

e. Television monitor receivers;

f. Video cassette recorders;

g. Audio cassette recorders; or

h. Personal computers.

This Exclusion (5.) does not apply to:

a. Any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

b. A permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

6. Loss to tapes, records, discs or other media used with equipment described in Exclusions 4. and 5.

7. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion (7.) does not apply to the interests of Loss Payees in "your covered auto".

8. Loss to:

a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrigeration facilities;

(2) Awnings or cabanas; or

(3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion (8.) does not apply to a:

a. "Trailer", and its facilities, or equipment, which you do not own; or

b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

(1) Acquire during the policy period; and

(2) Ask us to insure within 30 days after you become the owner.

9. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs; or

d. Custom murals, paintings or other decals or graphics.

This Exclusion (11.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. Selling;

b. Repairing;

c. Servicing;

d. Storing; or

e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

13. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or

b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

15. Loss to "your covered auto" or any "non-owned auto" due to diminution of value".

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $500.

2. Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E -- DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.
4. Authorize us to obtain:
   a. Medical reports; and

b. Other pertinent records.
5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:
1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:
1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F -- GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

## CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1. The number, type or use classification of insured vehicles;

   2. Operators using insured vehicles;

   3. The place of principal garaging of insured vehicles;

   4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   1. A subsequent edition of your policy; or

   2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

   1. We agree in writing that the "insured" has an obligation to pay; or

   2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

   1. During the policy period as shown in the Declarations; and

   2. Within the policy territory.

B. The policy territory is:

   1. The United States of America, its territories or possessions;

   2. Puerto Rico; or

   3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation**

   This policy may be cancelled during the policy period as follows:

   1. The named insured shown in the Declarations may cancel by:

      a. Returning this policy to us; or

      b. Giving us advance written notice of the date cancellation is to take effect.

   2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

      a. At least 10 days notice:

         (1) If cancellation is for nonpayment of premium; or

         (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

      b. At least 20 days notice in all other cases.

   3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

      a. For nonpayment of premium; or

      b. If your driver's license or that of:

         (1) Any driver who lives with you; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) Any driver who customarily uses "your covered auto";

has been suspended or revoked. This must have occurred:

(1) During the policy period; or

(2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. If the policy was obtained through material misrepresentation.

## B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

## C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

## D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

STATE OF SOUTH DAKOTA                         IN CIRCUIT COURT

COUNTY OF ROBERTS                          FIFTH JUDICIAL CIRCUIT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| NODAK MUTUAL INSURANCE COMPANY, | Civ. #11-55 |
| Plaintiff, | |
| v. | |
| NICHOLAS HELGESON; DALE LAROCHE, as PERSONAL REPRESENTATIVE OF THE ESTATE OF RICHARD CHELL; TERESA THOMPSON, as SPECIAL ADMIN-ISTRATOR OF THE ESTATE OF WINFIELD THOMPSON and JAMIE A. HELGESON, as Guardian Ad Litem for MATTHEW HELGESON, | <u>MEMORANDUM DECISION</u> |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The above-entitled matter is currently before the Court following a Court Trial held in Roberts County on September 19, 2013. This is an action for a declaratory judgment to determine coverage under an auto insurance policy. At the time of trial, Plaintiff was represented by Reed Rasmussen; Defendant Nicholas Helgeson was represented by Kurtis Greenley; Dale LaRoche, as Personal Representative of the Estate of Richard Chell and Teresa Thompson, as Personal Representative of the Estate of Winfield Thompson were represented by Robin Zephier. All attorneys appeared personally at the time set for trial. No answer was ever filed by Jamie A. Helgeson as guardian for Matthew Helgeson, nor was any appearance made at the time of trial.

The Court heard testimony from Carrie Norby, Nicholas Helgeson and Melissa Prochnow. The Court received into evidence Plaintiff's Exhibits 1 through 4, inclusive, Exhibits 7 through 21, inclusive, and Exhibits 23 and 24. The Court also received into evidence Defendant Helgeson's Exhibits AA, BB, CC and DD. Additionally, the Court received into evidence Exhibits A and B from Defendants Chell and Thompson Estates.

1

PLAINTIFF'S EXHIBIT
E

Plaintiff's Exhibit 23 is a Deposition of Gabe Skarphol; Plaintiff's Exhibit 24 is a Deposition of Patrick Nelson; and Defendant Chell and Thompson Estate Exhibit A is a Deposition of Steve Thomas.  By agreement of the parties, these exhibits were received into evidence.  Prior to trial, each party designated the portion of the specific deposition that would be offered at the time of trial.  Opposing parties then had an opportunity to object to those portions of the depositions being offered.  The Court received designations and objections from the various parties by letter and e-mail.  A review of the file at this time does not indicate that the parties ever filed those communications with the Clerk.  Therefore, in connection with the issuance of this Decision, the Court has printed and filed those designations and objections that were previously received to complete the record.

Also pursuant to an agreement of the parties, following completion of testimony before the Court, the parties took the deposition of Anthony Levang on September 20, 2013 and agreed to present that deposition to the Court for its consideration in reaching a decision in this case.  The Court has received the Deposition of Anthony Levang and filed it with the Clerk.

At the conclusion of the testimony, the parties requested time following the Levang deposition to submit post-trial memoranda.  The Court has now received and reviewed Plaintiff's Post Trial Brief dated November 5, 2013; Post Trial Memorandum Of Nicholas Helgeson dated November 5, 2013; Defendants LaRoche And Thompson Estates' Trial Brief dated November 5, 2013; Plaintiff's Reply Brief dated November 12, 2013; Defendant Helgeson's Reply Memorandum dated November 12, 2013 and Defendants LaRoche And Thompson Estates' Reply Brief dated November 12, 2013.

The Court has also now had an opportunity to rule upon the objections made by the parties to the various portions of the depositions that were offered.  The Court has handwritten its rulings on the objections on the original documents filed with the Clerk.  A copy of the objections and rulings has been attached to this Decision for the information of the parties.

This action arises as a result of a motor vehicle accident in Roberts County, South Dakota, on November 6, 2009.  At that time, Nicholas Helgeson was the driver of a 1994 Jeep Grand Cherokee, owned by Patrick Nelson of Fargo, North Dakota, which was involved in an accident resulting in the deaths of Richard Chell and Winfield Thompson.  It is undisputed that the policy of insurance obtained by Patrick Nelson to cover his vehicle had lapsed at the time of the accident.  However, Nicholas was eligible for coverage under a personal auto policy issued by Nodak Mutual Insurance Company to Richard Prochnow and Melissa Prochnow, his step-father and mother, with a policy period from April 2, 2009 through April 2, 2010.

2

This policy, which was admitted at trial as Plaintiff's Exhibit 1, specifically listed Nicholas as a rated driver on a 1996 Chevrolet Monte Carlo. At the time of the accident, Nicholas was driving the 1994 Jeep because his 1996 Chevrolet Monte Carlo was undergoing repairs in a shop in Rosholt, South Dakota. The policy included under the "Definitions" section, Paragraph J. 4. on Page 1 of 12 that "covered auto" means any auto you do not own while used as a temporary substitute for any other vehicle which is out of normal use because of repair. However, Plaintiff relies upon an exclusion found at Paragraph A.8. on Page 3 of 12 indicating that liability coverage is not provided for any insured using a vehicle without a reasonable belief that that insured is entitled to do so; Plaintiff specifically alleges that Nicholas was operating the 1994 Jeep without a reasonable belief that he was entitled to do so.

The sole issue in this case is whether, at the time of the accident, Nicholas Helgeson had a reasonable belief he was entitled to be operating Patrick Nelson's vehicle. "Whether an insured has a reasonable belief that he is entitled to drive another's vehicle is a question of fact. When an insurance company seeks to avoid liability under a policy because of an excluded risk, it has the burden of proving the facts that constitute the exclusion." State Auto. & Cas. Underwriters v. Ishmael, 202 N.W.2d 384, 386 (1972). Under State Farm Automobile Insurance Company v. Bottger, 2011 S.D. 2, the Trial Court must determine in this case whether Nicholas believed he was entitled to drive the 1994 Jeep at the time of the accident; and, if so, then the Court must decide whether that belief was reasonable.

Nicholas testified at the time of trial that he talked over the phone with Patrick Nelson and asked permission to use the 1994 Jeep before driving it in late October, 2009. Nicholas had driven the vehicle on several occasions prior to that time while assisting Patrick in carrying out the duties of Patrick's DJ business and had also used the vehicle for personal reasons on two prior occasions. Nicholas testified that he was granted permission by Patrick over the phone to use the Jeep while his Monte Carlo was being repaired and that Gabe Skarphol was present when this conversation was conducted with the speaker phone function of Nicholas's phone being activated. Nicholas had indicated that he would be using the Jeep to get back and forth to work at his parents' farm. At the time of this conversation, Nicholas was at Gabe's residence in Fargo. The farm was located near Hankinson, North Dakota. Nicholas also testified that no restrictions were placed upon his use of the Jeep.

Patrick Nelson's testimony was presented by way of deposition and in that deposition, Patrick testified that he did not give permission to Nicholas to use the Jeep because there was an issue as to insurance. Patrick had allowed the insurance on the vehicle to lapse because he was not using the vehicle and it was parked in the parking lot at Gabe's residence. Therefore, he would not allow Nicholas to use the Jeep unless there was insurance coverage on it.

3

While Gabe may have been present during the phone conversation between Patrick and Nicholas, he did not have any specific recollection of that phone conversation. Gabe also testified through deposition and stated in that deposition that although he was the so-called "keeper of the keys" for the 1994 Jeep, he was not made aware that there was no insurance in place on the vehicle.

In determining whether or not Nicholas subjectively believed he had permission to operate the vehicle, this Court must determine the credibility of witnesses. Primarily this determination occurs between the testimony of Nicholas, who testified in the courtroom at the time of trial and the testimony of Patrick provided through his Deposition. The Court had an opportunity to listen to and observe Nicholas while testifying. Nicholas readily admitted that he had previously provided misleading information to law enforcement at the time of the accident about the ownership of the 1994 Jeep and had been incorrect in other statements made to the insurance adjuster and Plaintiff's attorney. However, Nicholas readily admitted these mistakes and explained his actions at the time those prior statements were made.

Patrick's Deposition contains numerous responses to the effect of "not as I recall." In fact, he seems to have very little recollection about anything concerning the case other than that he is sure he did not give permission to Nicholas to operate the vehicle before it was involved in the accident. In reading the portions of the Deposition admitted into evidence, it does not appear that Patrick even agrees that Nicholas, Gabe and others were ever of any assistance to him in carrying out his duties in his DJ business. Based upon all the evidence presented through testimony and depositions, this Court does not find the testimony of Patrick Nelson to be credible.

The Court believes that the preponderance of the evidence in this case establishes that Nicholas had permission from Patrick to use the 1994 Jeep while his Monte Carlo was in the shop for repairs. If Patrick's concern about insurance had been so important, it would seem Patrick would have mentioned that issue to the individual who held the keys to the vehicle. Plaintiff has failed to establish by the greater weight of the evidence that Nicholas knew he was not entitled to drive the vehicle.

Having determined that Nicholas believed he was entitled to drive the 1994 Jeep, thereby satisfying the first prong of the test set forth in Bottger, the Court must then examine whether that belief was a reasonable belief at the time and place of the accident. Relying upon General Accident, Fire and Life Assurance Corporation, LPD. V. Perry, 541 A. 2d 1340 (MD. App. 1988), Plaintiff suggests there are five factors for the Court to consider. The first of these factors is whether Nicholas had express permission to use the vehicle. This again requires the Court to assess the credibility of Nicholas and Patrick. As already determined,

4

the Court finds the testimony of Nicholas to be more credible than that of Patrick and has therefore determined that Nicholas had express permission to use the vehicle.

The second factor is whether Nicholas' use of the vehicle exceeded the permission granted. While Plaintiff argues that Patrick placed restrictions on the area in which the vehicle could be used, review of the evidence shows no such restrictions, even accepting the testimony provided by Patrick at his deposition. While Plaintiff attempts to argue that Nicholas gave the impression that he would only be going a distance of approximately 200 yards to get back and forth from his parents' residence to the farm, he and the Jeep were actually in Fargo at the time he requested to use the vehicle. It also appears from the record that the reason Nicholas took the vehicle to South Dakota was not to work for someone other than his parents but to assist a relative in capturing animals that had strayed from the proper enclosure. Since the vehicle had been driven from Fargo to Hankinson to get to his parents' farm, a distance of an additional 10 miles does not seem to be unreasonable. Nicholas was using the vehicle in the course of his work on the farm. That use did not exceed the permission granted.

The third factor to review is whether Nicholas was legally entitled to drive under the laws of South Dakota. At the time of the accident Nicholas was a licensed driver and there is no evidence that he was not legally entitled to operate the vehicle under the laws of either North Dakota or South Dakota.

The fourth factor for review is whether Nicholas had any ownership or possessory right to the vehicle. Nicholas told the highway patrolman he was in the process of purchasing the Jeep. This was not true, although there may have been discussions at some point in the past about him purchasing the Jeep. At the time of the accident, the only possessory interest Nicholas had in the vehicle was the right to use the vehicle.

The final factor is whether or not there was some form of relationship between Nicholas and Patrick that would cause Nicholas to believe he was entitled to drive the Jeep. In addition to being granted express permission to drive the vehicle, Nicholas and Patrick had been friends and acquaintances and Nicholas had driven the vehicle in the past both to carry out work in assisting Patrick as well as on at least two occasions for his own private errands. There was clearly a relationship between Nicholas and Patrick that would cause Nicholas to believe he was entitled to drive the Jeep.

Based on a review of the above factors, it appears to the Court that Nicholas had a reasonable belief that he was entitled to be operating the Jeep at the time and place of the accident. Therefore, Plaintiff has failed to prove Nicholas used the 1994 Jeep without a reasonable belief that he was entitled to do so.

5

Plaintiff having failed to meet its burden to prove the exclusion set forth under Paragraph A.8 on Page 3 of 12 on Exhibit 1 applies in this case, a Declaratory Judgment should therefore be entered determining that Nicholas Helgeson is entitled to coverage under the policy introduced at trial as Exhibit 1 for the accident occurring on November 6, 2009 in Roberts County, South Dakota. Plaintiff is ordered to fully defend without reservation of rights the claim against Nicholas Helgeson arising from said accident and is further obligated to pay any claims or demands to which Nicholas Helgeson may legally become liable.

Counsel for Defendant Helgeson is hereby directed to draft an appropriate Judgment and Order incorporating the Court's Decision by reference. Unless waived by all other parties, counsel for defendant Helgeson is also directed to prepare Findings of Fact and Conclusions of Law also incorporating the Court's Decision by reference.

Dated this 12th day of March, 2014.

BY THE COURT:

_____
Circuit Judge

ATTEST:

_____
Clerk of Courts

6

# ABOUREZK LAW FIRM

Chr̃  Abourezk
*Robin L. Zephier
Jon J. LaFleur

*Also licensed in Colorado

P.O. BOX 9460
RAPID CITY, SD 57709-9460
(2020 W. Omaha Street)
TEL: (605) 342-0097
FAX: (605) 342-5170

Mike Abourezk
**Alicia D. Garcia

**Also licensed in California

April 14, 2014

William Harrie
Nilles Law Firm
1800 Radisson Tower
201 North Fifth Street
PO Box 2626
Fargo, ND 58101-2626

     RE:    Estate of Thompson and Chell  v. Nicholas Helgeson
            Civil File No.: 12-105

Dear William:

    I am writing to you as the attorney hired to represent Mr. Helgeson on the direct third party liability action against him filed by our clients, the Estates.  Was there ever a formal Answer filed by Defendant in this action?  If so, could you please fax or email me a copy? Thank you.

    Enclosed, please find the Memorandum Decision and a proposed stipulation regarding the declaratory action entitled Nodak vs. Helgeson, et al..  After a trial was held on September 19, 2013, the Judge agreed with the Defendants in that case that Defendant Helgeson believed he had permission to drive said vehicle and Helgeson is entitled to coverage under his Nodak policy.  It has been agreed that Nodak will not appeal.  See the attached Stipulation Regarding Post Trial Matters.  Therefore, at this time we are requesting that Nodak pay the per person per accident policy limits of $100,000 for the Estate of Winfield Thompson and $100,000 for the Estate of Richard Chell.  Both of these fine and loved gentlemen lost their lives as a result of the tragic motor vehicle accident.  In light of the conclusion of the declaratory action, we make this proposal and require that a formal response be received from you on or before Monday, April 28, 2014 at 5:00 p.m. mountain time.  If this proposal is not accepted by that time, we will not be making any more policy limits proposals in the future.  Thank you very much, William.  Take care.

               Sincerely,

PLAINTIFF'S EXHIBIT
F

Robin L. Zephier
Attorney for Plaintiffs

RLZ/bj
cc:   Clients
       Kurt Greenley

# ABOUREZK LAW FIRM

Char. Abourezk
Robin L. Zephier
on J. LaFleur

Also licensed in Colorado

P.O. BOX 9460
RAPID CITY, SD 57709-9460
(2020 W. Omaha Street)
TEL: (605) 342-0097
FAX: (605) 342-5170

Mike Abourezk
**Alicia D. Garcia

**Also licensed in California

May 12, 2014

William Harrie
Nilles Law Firm
1800 Radisson Tower
201 North Fifth Street
PO Box 2626
Fargo, ND 58101-2626

RE:   Estate of Thompson and Chell  v. Nicholas Helgeson
Civil File No.: 12-105

Dear William:

I am writing to you to ask you to please file your formal Answer on the above-referenced matter within 30 days of the date of this letter.  I am forced to write this letter to you in light of the fact that I have not received any type of response from you to my earlier communication dating back to early April, 2014.

If you should have any questions, please feel free to contact me.  Thank you very much, William.  Take care.

Sincerely,

Robin L. Zephier
Attorney for Plaintiffs

RLZ/bj
cc:   Clients
Kurt Greenley

PLAINTIFF'S
EXHIBIT
G

STATE OF SOUTH DAKOTA     )
                        )§
COUNTY OF ROBERTS        )

IN CIRCUIT COURT

FIFTH JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )
And As Special Administrator for the )
Estate of WINFIELD THOMPSON )
deceased, and DALE LAROCHE, )
Individually, And As Special Administrator )
for the Estate of RICHARD CHELL, )
deceased, )
                        )
              Plaintiffs, )
                        )
v.                             )
                        )
NICHOLAS HELGESON, )
                        )
             Defendant. )

Civil No.

**COMPLAINT**

COMES NOW, the Plaintiff, Teresa Thompson, individually, and on behalf of the Estate of Winfield Thompson, deceased, and the Estate, and Dale LaRoche, individually, and on behalf of the Estate of Richard Chell, deceased, and the Estate, by and through Plaintiffs' Counsel of Record, Robin L. Zephier, and for Plaintiffs' causes of action against the above-named Defendant, state and allege as follows:

       1.     Plaintiff, Teresa Thompson, was, at the time of this accident, a resident of the City of Agency Village, Roberts County, State of South Dakota.

       2.     Winfield Thompson, deceased, the natural father of Plaintiff Teresa Thompson, was, at the time of this accident, a resident of Sisseton, Roberts County, State of South Dakota.

       3.     Plaintiff, Dale LaRoche, was, at the time of this accident, a resident of Stacy, Chisago County, Minnesota.

       4.     Richard Chell, deceased, the relative of Plaintiff Dale LaRoche, was at the time of this accident, a resident of Sisseton, Roberts County, South Dakota.

PLAINTIFF'S
EXHIBIT
H

5.     Defendant, Nicholas Helgeson, is, upon information and belief, at all times relevant, a resident of the City of Fargo, Cass County, State of North Dakota.

6.     The amount in controversy exceeds the jurisdictional requirements of this Court and venue is proper in this Court in that this action arose near New Effington, Roberts County, South Dakota.

7.     The circuit court's jurisdiction is appropriate in that the jurisdictional amount of the claims exceed said monetary requirement.

## COUNT ONE - NEGLIGENCE

8.     Plaintiffs specifically incorporate Paragraphs one (1) through seven (7), inclusive, as if set forth fully herein.

9.     On or about November 6, 2009, Decedent Winfield Thompson was a front seat passenger in a vehicle driven by Decedent Richard Chell and both were headed east on South Dakota Highway 127 near the intersection of 466th Avenue, near New Effington, Roberts County, South Dakota.

10.     Defendant, Nicholas Helgeson, was the operator of a 1994 Jeep Cherokee, license plate number HOC507, which was/is registered and licensed in the State of North Dakota under the name of Patrick Nelson, the owner of the jeep.  Helgeson was comtemplating purchasing the Jeep from Nelson, according to Helgeson.

11.     Defendant , Nicholas Helgeson was given the 1994 Jeep Cherokee to operate and possess and therefore, had the constructive and implied permission of the vehicle owner (Nelson) to drive said vehicle.

12.     On November 9, 2009, Defendant Hegleson was driving the 1994 Jeep Cherokee

2

south on 466th Avenue near the intersection of South Dakota Highway 127, near New Effington, Roberts County, South Dakota.

13.     Defendant Helgeson, failed to stop at a stop sign and collided with Richard Chell's vehicle, directly and proximately causing severe and mortal bodily injury, leading to the death of Richard Chell and Plaintiff Winfield Thompson, both decedents.

14.     Defendant, Nicholas Helgeson, owed Decedent Chell, the Plaintiff and the Decedent Thompson, a duty to exercise reasonable care in the operation of the vehicle he was driving. Defendant Helgeson breached his duty owed to Decedent Chell, the Plaintiffs and the Decedent Thompson in that Defendant failed to operate the vehicle in a safe and reasonable manner, failed to stop at a stop sign, failed to yield the right of way and failed to utilize a last clear chance to avoid the collision.

15.     As a direct and proximate result of the Defendant's breach of duty, Decedent Winfield Thompson suffered imminent and fatal bodily injuries, medical expenses in excess of $70,000.00 and funeral expenses in excess of $10,000.00. Decedent had to be cut out of the vehicle and transported by air ambulance to Fargo, North Dakota with life threatening injuries. Decedent Thompson survived with these mortal injuries for several hours before dying. Plaintiff Teresa Thompson suffered bodily injuries due to the stress of losing her father, including, but not limited to past physical and emotional injuries, loss of support, loss of companionship, pecuniary loss, costs of medical treatment for such injuries, past medical expenses in excess of $70,000.00, present and future physical and emotional pain and suffering, grief, loss of enjoyment of life, and other consequential damages. The Estate suffered damages in that the Estate's claims for survival, fear, anxiety, horror, mortal pain and anguish from imminent death, and the same

3

medical and funeral expenses, as referenced above.

16.     As a direct and proximate result of the Defendant's breach of duty, Decedent Richard Chell suffered imminent and fatal bodily injuries, medical expenses in excess of $5,000.00 and funeral expenses in excess of $10,000.00.  Plaintiff Dale LaRoche suffered bodily injuries due to the stress of losing his relative, including, but not limited to past physical and emotional injuries, loss of companionship, pecuniary loss, costs of medical treatment for such injuries, past medical expenses in excess of $10,000.00, present and future physical and emotional pain and suffering, loss of enjoyment of life, and other consequential damages.  The Estate suffered damages in that the Estate's claims for survival, fear, anxiety, horror, mortal pain and anguish from imminent death, and the same medical and funeral expenses, as referenced above.

17.     Defendant Nicholas Helgeson was ultimately given a citation by law enforcement for a violation of S.D.C.L. § 32-29-2.1, failure to stop at stop sign.   Defendant was tried and convicted by a Roberts County jury on or about March 9, 2011 for the stop sign violation.

WHEREFORE, Plaintiffs pray for judgment, jointly and severally, and individually, against the Defendant as follows:

1.     For the actual expenses incurred in the treatment of the injuries sustained by the Plaintiff, the Estate of Winfield Thompson, deceased, in excess of $70,000.00 and at least $10,000.00 in funeral expenses, and for Plaintiff Teresa Thompson, her damages for loss of companionship, pecuniary loss, and grief in excess of $50,000.00, from the subject accident and for the actual expenses, attorney fees and costs, and prejudgment interest on medical bills and other special damages.

4

2.    For the actual expenses incurred in the treatment of the injuries sustained by the Plaintiff, the Estate of Richard Chell, deceased, in excess of $5,000.00 and at least $10,000.00 in funeral expenses, and for Plaintiff Dale LaRoche, his damages for loss of companionship, pecuniary loss, and grief in excess of $50,000.00, from the subject accident and for the actual expenses, attorney fees and costs, and prejudgment interest on medical bills and other special damages.

2.    For such monetary compensation as shall fully compensate each of the Plaintiffs for the past, present and future pain, anguish, fear, anxiety, horror, loss of enjoyment of life, loss of companionship, loss of support, grief, pecuniary loss, mortal pain and anguish, wrongful death and survivorship damages sustained by Winfield Thompson and Teresa Thompson, and Dale LaRoche and Richard Chell, individually, and on behalf of the Estate to the date of trial and which is likely to continue into the future, in a sum to be determined by a jury in this case.

3.    For any and all other relief that the Court deems just and equitable under the circumstances.

DATED this 31st day of August, 2012.

ABOUREZK & ZEPHIER, P.C.

By: _____
Robin L. Zephier
Attorney for Plaintiffs
PO Box 9460
2020 West Omaha Street
Rapid City, South Dakota 57709
(605) 342-0097

5

TRIAL BY JURY IS HEREBY REQUESTED

6

STATE OF SOUTH DAKOTA    )               IN CIRCUIT COURT
                              )SS
COUNTY OF BROOKINGS    )      THIRD JUDICIAL CIRCUIT

                              )      Civ. No. 05CIV 19-00006

TERESA ANN THOMPSON, Individually,   )
and as Special Administer/Personal   )
Representative of the Estate of WINFIELD   )
THOMPSON, SR., Deceased, and the   )
ESTATE of WINFIELD THOMPSON,   )
MELISSA PROCHNOW AND JAMIE   )
HELGESON, as Special   )
Administrator(s)/Personal Representative(s) of   )
the Estate of Nicholas Helgeson, and the   )
ESTATE OF NICHOLAS HELGESON,   )

        Plaintiffs,           )

        v.                )      **AMENDED SUMMONS**

WILLIAM HARRIE and THE NILLES LAW   )
FIRM, aka NILLES, SELBO & HARRIE,   )
LTD., and NODAK INSURANCE   )
COMPANY, (fna NODAK MUTUAL   )
INSURANCE COMPANY), and NODAK   )
MUTUAL GROUP, INC., a Mutual Holding   )
Company and N.I. HOLDINGS, INC. (An   )
Intermediate Stockholding Company),   )

        Defendants.

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NODAK MUTUAL GROUP, INC.**, BY AND THROUGH THEIR

REGISTERED AGENT MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

      You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

1

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint.

DATED this 9th day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

STATE OF SOUTH DAKOTA    )               IN CIRCUIT COURT
                                 )SS
COUNTY OF BROOKINGS     )        THIRD JUDICIAL CIRCUIT

                                 )      Civ. No. 05CIV 19-00006
                                 )
TERESA ANN THOMPSON, Individually,  )
and as Special Administer/Personal     )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the    )
ESTATE of WINFIELD THOMPSON,    )
MELISSA PROCHNOW AND JAMIE    )
HELGESON, as Special                )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the  )
ESTATE OF NICHOLAS HELGESON,   )
                                 )
        Plaintiffs,           )
                                 )
       v.                )     **AMENDED SUMMONS**
                                 )
WILLIAM HARRIE and  THE NILLES LAW )
FIRM, aka NILLES, SELBO &  HARRIE,   )
LTD., and NODAK INSURANCE       )
COMPANY, (fna NODAK MUTUAL     )
INSURANCE COMPANY), and NODAK   )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An  )
Intermediate Stockholding Company),    )

        Defendants.

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NODAK INSURANCE COMPANY**, BY AND THROUGH THEIR

REGISTERED AGENT, MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

      You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

<center>1</center>

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint.

DATED this 9th day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

STATE OF SOUTH DAKOTA        )              IN CIRCUIT COURT
                             )SS
COUNTY OF BROOKINGS          )              THIRD JUDICIAL CIRCUIT

                                       )    Civ. No. 05CIV 19-00006
                                       )
TERESA ANN THOMPSON, Individually,     )
and as Special Administer/Personal     )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the       )
ESTATE of WINFIELD THOMPSON,           )
MELISSA PROCHNOW AND JAMIE             )
HELGESON, as Special                   )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON,           )
                                       )
          Plaintiffs,                  )
                                       )
     v.                                )    **AMENDED SUMMONS**
                                       )
WILLIAM HARRIE and  THE NILLES LAW     )
FIRM, aka NILLES, SELBO &  HARRIE,     )
LTD., and NODAK INSURANCE              )
COMPANY, (fna NODAK MUTUAL             )
INSURANCE COMPANY), and NODAK          )
MUTUAL GROUP, INC., a Mutual Holding   )
Company and N.I. HOLDINGS, INC. (An    )
Intermediate Stockholding Company),    )

          Defendants.


THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **N.I. Holdings, Inc.**, BY AND THROUGH THEIR REGISTERED AGENT,

MICHAEL ALEXANDER, AT 1101 1ST AVE., N., FARGO, ND:

    You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

1

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of

the day of service.

You are further notified that if you fail to do so, judgment by default will be taken

against you for the relief demanded in the Amended Complaint.

DATED this 9th day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
Robin L. Zephier
Attorney for Plaintiffs
PO Box 9460
2020 West Omaha Street
Rapid City, South Dakota 57709
(605) 342-0097

Turbak Law Office, P.C.
Seamus Culhane
26 W. Broadway, Suite 100
Watertown, SD 57201-3670
(877) 380-8517

Attorneys for Plaintiffs

2

STATE OF SOUTH DAKOTA    )
                             )SS
COUNTY OF BROOKINGS      )

IN CIRCUIT COURT

THIRD JUDICIAL CIRCUIT

Civ. No. 05CIV 19-00006

|  |  |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON,<br><br>           Plaintiffs,<br><br>    v.<br><br>WILLIAM HARRIE and  THE NILLES LAW FIRM, aka NILLES, SELBO &  HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),<br><br>           Defendants. | **AFFIDAVIT OF SERVICE** |

Three (3) Summons' and Amended Complaints to **Nodak Insurance Company**, **Nodak Mutual**

**Group, Inc.,** and **N.I. Holdings, Inc**, came into my hands on the _9_ day of January, 2019, and

that I served the same upon _Michael Alexander_ personally by delivering to and leaving

copies thereof with _Michael Alexander_, in _Argo_, _North Dakota_
                             (Name)           (City)            (State)

_Cass_ County, _Cass_ on this _10_ day of _Jan_, 2019 at _2:00PM_

O'Clock _XX_ a.m/p.m. (CST).

1

Chuck Anderson
Affiant

Subscribed and sworn to before me this _10th_ day of _January_, 2019.

STATE OF _North Dakota_ )
                               ) §
COUNTY OF _Cass_          )

     BEFORE ME, the undersigned authority, personally appeared Chuck Anderson, known to me to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed the same for the purposes described herein.

     IN WITNESS WHEREOF I have hereunto set my hand and official seal.

Notary Public, State of _North Dakota_

My commission expires: _Dec. 11, 2022_

(SEAL)

JESSICCA BYE
Notary Public
State of North Dakota
My Commission Expires Dec. 11, 2022

_____
Notary Public

My commission expires:_____

[SEAL]

2

STATE OF SOUTH DAKOTA )       IN CIRCUIT COURT
                                    )SS
COUNTY OF BROOKINGS )       THIRD JUDICIAL CIRCUIT

                                            )       Civ. No.05CIV-19-000006
                                            )
TERESA ANN THOMPSON, Individually, )
and as Special Administer/Personal )
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the )
ESTATE of WINFIELD THOMPSON, )
MELISSA PROCHNOW AND JAMIE )
HELGESON, as Special )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON, )
                                            )
           Plaintiffs, )
                                            )
      v. )       **PLAINTIFFS' EX PARTE MOTION**
                                            )       **TO SERVE BY PUBLICATION**
WILLIAM HARRIE and THE NILLES LAW )
FIRM, aka NILLES, SELBO & HARRIE, )
LTD., and NODAK INSURANCE )
COMPANY, (fna NODAK MUTUAL )
INSURANCE COMPANY), and NODAK )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An )
Intermediate Stockholding Company), )
           Defendants.

COMES NOW, the Plaintiffs Teresa Thompson, Individually, and as Special

Administrator/Personal Representative of the Estate of Winfield Thompson, Sr., (deceased),

Melissa Prochnow and Jamie Helgeson, as Special Administrator(s)/Personal Representatives of

the Estate of Nicholas Helgeson, by and through the undersigned counsel, Robin L. Zephier, and

hereby move this Court for an order permitting service of the Amended Summons on the named

Defendant William Harrie, by publication.

1

This motion is made in good faith and for and upon the grounds that Plaintiffs have made diligent good faith efforts to personally serve William Harrie, individually, through personal service in Fargo, North Dakota, but William Harrie, when confronted with a private process server showing up at his Law Office at 201 5th St N, in Fargo, North Dakota, has refused to come out of his office to accept the Amended Summons and Amended Complaint by the Private Process Server, Chuck Anderson of Moorehead, Minnesota. This has now occurred twice since Monday January 14, 2019, once on Monday January 14, 2019 and again on Tuesday January 15, 2019.

Therefore, Plaintiff prays that this Court will grant an Order authorizing Plaintiffs to serve the Amended Summons for Defendant William Harrie by publication in the West Fargo Pioneer, a newspaper for the City of Fargo, North Dakota, and which serves the Fargo-Morehead area, including mostly all of Harrie's past and present suspected residence and place of work within Fargo and the greater Fargo-Moorehead area. Plaintiffs are also providing the Cass County Sheriff and the Becker County Sheriff (Minnesota), the Amended Summons and Amended Complaint pursuant to South Dakota Rules of Civil Procedure, SDCL § 15-2-31, for personal service in accordance with said statute. Plaintiffs filed the Amended Summons and the Amended Complaint, with the Clerk of Courts of the Brookings County, Third Circuit Court, on or about January 9, 2019. Defendant William Harrie is being extremely elusive and purposefully evasive. As outlined in the attached Affidavit of Robin L. Zephier, even personal service by Admission of Service through Harrie's and his law firm's attorney, Ron McLean, was attempted since December 2018 and on up through today, January 15, 2019. (See **Ex. B**, email exchanges between counsel). The claims and damages of Plaintiffs are severe and significant and it would not be in the best interest of justice to deny Plaintiffs this opportunity to preserve their claims

against the Defendant Harrie individually.  The co-defendants the Nilles Law Firm and Nilles, Selbo & Harrie, as corporations, were personally served by the civil process server personally serving those corporate defendants' registered agent on January 14, 2019.

WHEREFORE, the Plaintiffs request that this Court order that service by publication may be made upon the Defendant William Harrie, by publication of said Amended Summons, in the West Fargo Pioneer, for four consecutive weeks in compliance with South Dakota Codified Laws, Rules of Civil Procedure, SDCL 15-9-7, 15-9-19 and SDCL § 15-2-31.

Dated this 15th day of January, 2018.

ABOUREZK, ZEPHIER & LAFLEUR

/s/ Robin L. Zephier
Robin L. Zephier
Attorneys for Plaintiffs
Post Office Box 9460
2020 West Omaha
Rapid City, South Dakota 57709
(605) 342-0097

STATE OF SOUTH DAKOTA      )
                                 )SS

COUNTY OF BROOKINGS       )

IN CIRCUIT COURT

THIRD JUDICIAL CIRCUIT

Civ. No.05CIV-19-000006

TERESA ANN THOMPSON, Individually,    )
and as Special Administer/Personal        )
Representative of the Estate of WINFIELD  )
THOMPSON, SR., Deceased, and the      )
ESTATE of WINFIELD THOMPSON,      )
MELISSA PROCHNOW AND JAMIE      )
HELGESON, as Special                  )
Administrator(s)/Personal Representative(s) of  )
the Estate of Nicholas Helgeson, and the   )
ESTATE OF NICHOLAS HELGESON,    )
                                  )
        Plaintiffs,                )
                                  )
      v.                           )
                                  )
WILLIAM HARRIE and  THE NILLES LAW  )
FIRM, aka NILLES, SELBO &  HARRIE,    )
LTD., and NODAK INSURANCE        )
COMPANY, (fna NODAK MUTUAL      )
INSURANCE COMPANY), and NODAK    )
MUTUAL GROUP, INC., a Mutual Holding  )
Company and N.I. HOLDINGS, INC. (An   )
Intermediate Stockholding Company),     )
                                 
      Defendants.

**AFFIDAVIT OF ROBIN L. ZEPHIER IN SUPPORT OF PLAINTIFFS' EX PARTE MOTION TO SERVE BY PUBLICATION**

STATE OF SOUTH DAKOTA      )
                                 )

COUNTY OF PENNINGTON       )

COMES NOW your Affiant, Robin L. Zephier, who states, deposes, alleges, and says

under oath, the following:

1

1.  That I am the attorney representing the Plaintiffs Teresa Thompson, The Estate of Winfield Thompson, Sr. (Deceased), Melissa Prochnow, Jamie Helgeson, and the Estate of Nicholas Helgeson, Deceased, in this matter.

2.  To my reasonable knowledge, the Defendant William Harrie's most recent residential address is 718 Wyndemere Drive, West Fargo, ND 58078-4038 and the address to his employment is 201 5th St. N, Fargo, ND, at the Nilles Law Firm. Mr. Harrie is a practicing attorney in Fargo, Cass County, North Dakota. The Amended Complaint is for causes of action for legal negligence and fraud.

3.  That our law firm sent a Amended Summons and Amended Complaint to a Process Server, Mr. Chuck Anderson of Moorehead, Minnesota on January 9, 2019.  (See **Ex. A**, Amended Summons).  The process server notified our firm that William Harrie refused to come out of his office to accept service of the Amended Summons and Amended Complaint.  This happened once on Monday, January 14, 2019, and again on Tuesday January 15, 2019.  Mr. Harrie's law firm, the Nilles Law Firm is located in Fargo, North Dakota, and Mr. Harrie's actual personal office is outside of the reach of the common areas of the Firm's reception area and Mr. Anderson was not allowed to proceed to Mr. Harrie's personal office in the building for said reason.  It was inappropriate for Mr. Anderson to leave said pleadings with anyone but Mr. Harrie.

4.  Plaintiffs have made a diligent effort to personally serve William Harrie, also,  by asking the attorney for William Harrie and The Nilles Law Firm, Mr. Ron McLean in North Dakota, to admit service.  The attempt to have Harrie and his Firm admit service through McLean started in December 2018 and ran up to and

including today, Tuesday January 15, 2019.  Plaintiffs were advised by Mr.

Mclean that his clients, the Nilles Law Firm and Harrie, would not admit service.

See **Ex. B**, email exchanges between counsel.  This started prior to the Plaintiffs'

attempted service by having a process server serve William Harrie and William

Harrie refused, as indicated above.

5.      That in January 2018, Plaintiff attempted to personally serve William Harrie in a

different previous action through the Cass County, (N.D.)  Sheriff, and William

Harrie refused to accept personally service at that time as well.  However, service

was eventually made through his attorney Ron McLean, who admitted service

upon Harrie and the Nilles Law Firm in that circumstance in early 2018 (a year

ago).  The present case involved many of the same parties as the earlier case,

Civil File No. 4:05CIV19-000038, but the previous case was removed to federal

court.

6.      Another attempt was done on Tuesday January 15, 2019, and the Process Server

was advised by one of the assistants that Mr. Harrie was in the cities and would

not return until Friday January 18, 2019.

7.      According to Affiant, it would be a horrible miscarriage of justice for this Court

to not allow Plaintiffs to personally serve the elusive Defendant William Harrie

by publication as herein stated, because to deny said request would serve to

reward the elusive, evasive and uncooperative behavior of this particular party

litigant.  Mr. Harrie is a necessary party to said litigation.

Dated this _15th_ day of January, 2019.

Robin L. Zephier
Affiant

    BEFORE ME, the undersigned authority, personally appeared Robin L. Zephier, known to me to be the person whose name is subscribed to the within instrument, and he acknowledged that he executed same for the purposes described herein.

Notary Public

My commission expires: _9-14-21_

[SEAL]

4

STATE OF SOUTH DAKOTA          )                    IN CIRCUIT COURT
                               )SS
COUNTY OF BROOKINGS            )                 THIRD JUDICIAL CIRCUIT

                                                   Civ. No. 05CIV 19-00006

                                          )
                                          )
TERESA ANN THOMPSON, Individually,        )
and as Special Administer/Personal        )
Representative of the Estate of WINFIELD  )
THOMPSON, SR., Deceased, and the          )
ESTATE of WINFIELD THOMPSON,              )
MELISSA PROCHNOW AND JAMIE                )
HELGESON, as Special                      )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the  )
ESTATE OF NICHOLAS HELGESON,              )
                                          )
          Plaintiffs,                     )
                                          )
     v.                                   )        **AMENDED SUMMONS**
                                          )
WILLIAM HARRIE and  THE NILLES LAW        )
FIRM, aka NILLES, SELBO &  HARRIE,        )
LTD., and NODAK INSURANCE                 )
COMPANY, (fna NODAK MUTUAL                )
INSURANCE COMPANY), and NODAK             )
MUTUAL GROUP, INC., a Mutual Holding      )
Company and N.I. HOLDINGS, INC. (An       )
Intermediate Stockholding Company),       )

          Defendants.

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **WILLIAM HARRIE**, AT 1800 RADISON TOWER, 201 N. 5TH STREET,

FARGO, ND:

     You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

1



served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint.

DATED this 9TH day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

**Puetz, BJ**

| | |
|---|---|
| **From:** | Zephier, Robin |
| **Sent:** | Tuesday, January 15, 2019 11:59 AM |
| **To:** | Ron McLean; Wendy Brekke |
| **Cc:** | Zephier, Robin; Puetz, BJ |
| **Subject:** | re William Harrie |

Ron
Just so you know, Mr. Harrie has refused personal service twice now, since Monday.

Robin Zephier
Attorney for Plaintiffs



**PLAINTIFF'S EXHIBIT**

1

**Puetz, BJ**

| | |
|---|---|
| **From:** | Ron McLean <rmclean@serklandlaw.com> |
| **Sent:** | Friday, January 11, 2019 3:10 PM |
| **To:** | Zephier, Robin; Wendy Brekke |
| **Cc:** | Puetz, BJ |
| **Subject:** | RE: Thompson v. Harrie et al |

Robin:

We forwarded the executed assignment agreement to our clients but I have not heard back as to whether or not this changes my ability to accept service.

I will let you know if/when I hear back from the clients.

Thanks.
Ron

-----Original Message-----
From: Zephier, Robin [mailto:rzephier@azlaw.pro]
Sent: Friday, January 11, 2019 2:52 PM
To: Ron McLean <rmclean@serklandlaw.com>; Wendy Brekke <wbrekke@serklandlaw.com>
Cc: Zephier, Robin <rzephier@azlaw.pro>; Puetz, BJ <bjpuetz@azlaw.pro>
Subject: FW: Thompson v. Harrie et al

Ron

Here is the executed assignment agreement.  Will that change your clients' minds on admission of service?  Again, I must hear back by 4 pm mountain time today, 1-11-19.

RZ


From: Puetz, BJ <bjpuetz@azlaw.pro>
Sent: Friday, January 11, 2019 1:50 PM
To: Zephier, Robin <rzephier@azlaw.pro>
Subject: Thompson v. Harrie et al

IRS CIRCULAR 230 NOTICE: Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended. PRIVILEGED AND CONFIDENTIAL: This message contains confidential information and may be subject to protection by the laws or terms of applicable confidentiality agreements, and is intended only for the message recipient(s). If you are not the intended

1

recipient you are hereby notified that any dissemination, distribution, or copying of this email is strictly prohibited and may be subject to legal restriction or sanction. If you are not the intended recipient indicated in this message (or responsible for delivery of the message to such person), notify sender at Serkland Law Firm immediately and delete this e-mail from your system.

**Puetz, BJ**

| | |
|---|---|
| **From:** | Ron McLean <rmclean@serklandlaw.com> |
| **Sent:** | Friday, January 11, 2019 12:07 PM |
| **To:** | Zephier, Robin; Wendy Brekke |
| **Cc:** | Puetz, BJ |
| **Subject:** | RE: re Thompson v. Harrie, et al |

Robin:

I do not have authority from the clients to admit service.

My clients are concerned, among others, that we have not received a copy of the Notice of Assignment.

Thanks.
Ron

-----Original Message-----
From: Zephier, Robin [mailto:rzephier@azlaw.pro]
Sent: Friday, January 11, 2019 12:33 PM
To: Ron McLean <rmclean@serklandlaw.com>; Wendy Brekke <wbrekke@serklandlaw.com>
Cc: Zephier, Robin <rzephier@azlaw.pro>; Puetz, BJ <bjpuetz@azlaw.pro>
Subject: FW: re Thompson v. Harrie, et al
Importance: High

Jan. 11, 2019.....sorry.

From: Zephier, Robin
Sent: Friday, January 11, 2019 11:31 AM
To: Ron McLean <rmclean@serklandlaw.com>; 'Wendy Brekke' <wbrekke@serklandlaw.com>
Cc: Zephier, Robin <rzephier@azlaw.pro>; Puetz, BJ <bjpuetz@azlaw.pro>
Subject: FW: re Thompson v. Harrie, et al
Importance: High

Hello Ron and Wendy

I must hear from you one way or another today, Friday January 11, 2108 before 4 pm mountain time.

Thank you.

Robin Zephier

Attorney for Plaintiffs

1

From: Zephier, Robin
Sent: Thursday, January 10, 2019 2:30 PM
To: Ron McLean <rmclean@serklandlaw.com <mailto:rmclean@serklandlaw.com >>; Wendy Brekke
<wbrekke@serklandlaw.com <mailto:wbrekke@serklandlaw.com> >
Cc: Zephier, Robin <rzephier@azlaw.pro <mailto:rzephier@azlaw.pro> >; Puetz, BJ <bjpuetz@azlaw.pro
<mailto:bjpuetz@azlaw.pro> >
Subject: re Thompson v. Harrie, et al


Hello Ron and Wendy

Has there been a decision made on the admission of service of the three lawyer/law firm defendants?

Thanks

Robin Zephier

IRS CIRCULAR 230 NOTICE: Any tax advice contained in this email was not intended to be used, and cannot be used, by
you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended. PRIVILEGED AND
CONFIDENTIAL: This message contains confidential information and may be subject to protection by the laws or terms of
applicable confidentiality agreements, and is intended only for the message recipient(s). If you are not the intended
recipient you are hereby notified that any dissemination, distribution, or copying of this email is strictly prohibited and
may be subject to legal restriction or sanction. If you are not the intended recipient indicated in this message (or
responsible for delivery of the message to such person), notify sender at Serkland Law Firm immediately and delete this
e-mail from your system.

## Zephier, Robin

| | |
|---|---|
| **From:** | Zephier, Robin |
| **Sent:** | Friday, December 21, 2018 2:18 PM |
| **To:** | 'Ron McLean' |
| **Cc:** | Zephier, Robin |
| **Subject:** | re William Harrie and Nilles Law Firm |

Hello Ron

I am writing to you to let you know that we are expecting to receive the signed assignment of claims from the Nicholas Helgeson estate in the next day or so. I wanted to touch base with you about the prospect of admitting service on behalf of the Nilles Firm and Mr. Harrie for the next suit which will allow us on behalf of the Thompson Estate and Teresa Thompson to pursue any and all claims that Nicholas Helgeson and his Estate has or may have against Mr. Harrie, the Nilles Law Firm, and Nodak in a new action. We have the complaint ready to go. I know that you had admitted service of the summons and complaint for us back in January 2017 on the other case. This case will deal with the first party direct claims of legal negligence/malpractice, etc. and the bad faith claims and punitive damages resulting from the conduct, of which our client has been assigned to pursue. We did not have the assignment from Helgeson/Helgeson Estate in the previous litigation. The previous suit ended up being handled by a firm out of Sioux Falls in the end. But we will be starting this new one within the next week or so, and will need to personally serve Harrie and the Firm. Do you believe that you could once again admit service of process for Mr. Harrie and for Nilles? If not, or if you suggest some other means, please let me know as soon as you can.

Thanks Ron.

Sincerely

Robin Zephier

STATE OF SOUTH DAKOTA    )
                          )SS
COUNTY OF BROOKINGS     )

IN CIRCUIT COURT

THIRD JUDICIAL CIRCUIT

Civ. No.05CIV-19-000006

|  |  |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON,<br><br>       Plaintiffs,<br><br>    v.<br><br>WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),<br><br>       Defendants. | **ORDER ON PLAINTIFFS' EX PARTE MOTION TO SERVE BY PUBLICATION** |

THIS MATTER having come before this Court on the Plaintiffs' Ex Parte Motion To Serve by Publication, the Court having reviewed its file and being fully advised herein, hereby

ORDERS, ADJUDGES AND DECREES that the Plaintiffs' Ex Parte Motion To Serve by Publication is granted, and that the said Amended Summons shall be published in the West Fargo Pioneer once a week, in each publication, and for four consecutive weeks. After the

Order is signed, the Plaintiffs shall mail a copy of the Amended Summons and Amended

Complaint to the Defendant William Harrie at his last known address(es), if reasonably known.

Dated this ____ day of _____, 2019.

Attest:
Dvoracek, Ashley
Clerk/Deputy

BY THE COURT:
Signed: 1/16/2019 9 24 28 AM

Honorable Dawn M. Aman-Elshere
Circuit Court Judge

ATTEST:

_____
Clerk of Court

STATE OF SOUTH DAKOTA    )            IN CIRCUIT COURT
                            )SS
COUNTY OF BROOKINGS     )       THIRD JUDICIAL CIRCUIT

                            Civ. No. 05CIV 19-00006

|  |  |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **AMENDED SUMMONS** |
| WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company), | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NILLES SELBO & HARRIE**, BY AND THROUGH THEIR REGISTERED

AGENT, SHANNON M. GREGAR, 1800 RADISON TOWER, 201 N. 5ᵀᴴ STREET, FARGO,

ND:

      You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint.

DATED this 9TH day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
Robin L. Zephier
Attorney for Plaintiffs
PO Box 9460
2020 West Omaha Street
Rapid City, South Dakota 57709
(605) 342-0097

Turbak Law Office, P.C.
Seamus Culhane
26 W. Broadway, Suite 100
Watertown, SD 57201-3670
(877) 380-8517

Attorneys for Plaintiffs

2

STATE OF SOUTH DAKOTA      )
                                 )SS

COUNTY OF BROOKINGS      )

IN CIRCUIT COURT

THIRD JUDICIAL CIRCUIT

Civ. No. 05CIV 19-00006

| | |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **AMENDED SUMMONS** |
| WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company), | ) ) ) ) ) ) ) ) ) |
| Defendants. | |

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **NILLES LAW FIRM,** BY AND THROUGH THEIR REGISTERED AGENT,

SHANNON M. GREGAR, 1800 RADISON TOWER, 201 N. 5TH STREET, FARGO, ND:

         You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

1

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of the day of service.

You are further notified that if you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint.

DATED this 9TH day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

2

STATE OF SOUTH DAKOTA    )                    IN CIRCUIT COURT
                             )SS
COUNTY OF BROOKINGS     )      THIRD JUDICIAL CIRCUIT

                            )      Civ. No. 05CIV 19-00006

                            )

TERESA ANN THOMPSON, Individually,  )
and as Special Administer/Personal  )
Representative of the Estate of WINFIELD  )
THOMPSON, SR., Deceased, and the  )
ESTATE of WINFIELD THOMPSON,  )
MELISSA PROCHNOW AND JAMIE  )
HELGESON, as Special  )
Administrator(s)/Personal Representative(s) of  )
the Estate of Nicholas Helgeson, and the  )
ESTATE OF NICHOLAS HELGESON,  )
                            )

        Plaintiffs,           )

                            )
     v.                   )      **AMENDED SUMMONS**
                            )

WILLIAM HARRIE and THE NILLES LAW  )
FIRM, aka NILLES, SELBO & HARRIE,  )
LTD., and NODAK INSURANCE  )
COMPANY, (fna NODAK MUTUAL  )
INSURANCE COMPANY), and NODAK  )
MUTUAL GROUP, INC., a Mutual Holding  )
Company and N.I. HOLDINGS, INC. (An  )
Intermediate Stockholding Company),  )

        Defendants.

THE STATE OF SOUTH DAKOTA SENDS GREETINGS TO THE ABOVE NAMED

DEFENDANT, **WILLIAM HARRIE**, AT 1800 RADISON TOWER, 201 N. 5TH STREET,

FARGO, ND:

      You are hereby summoned and required to answer the Amended Complaint of the above

named Plaintiffs to the Plaintiffs' counsel, Abourezk, Zephier & LaFleur, P. O. Box 9460, Rapid

City, South Dakota, 57709, a copy of said Amended Complaint is hereto annexed and herewith

<center>1</center>

served upon you, within thirty (30) days after service of this Summons upon you, exclusive of
the day of service.

You are further notified that if you fail to do so, judgment by default will be taken
against you for the relief demanded in the Amended Complaint.

DATED this 9TH day of January, 2019.

ABOUREZK, ZEPHIER & LAFLEUR

By:/s/ Robin L Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460
    2020 West Omaha Street
    Rapid City, South Dakota 57709
    (605) 342-0097

    Turbak Law Office, P.C.
    Seamus Culhane
    26 W. Broadway, Suite 100
    Watertown, SD 57201-3670
    (877) 380-8517

    Attorneys for Plaintiffs

2

| | | |
|---|---|---|
| STATE OF SOUTH DAKOTA | ) | IN CIRCUIT COURT |
| | )SS | |
| COUNTY OF BROOKINGS | ) | THIRD JUDICIAL CIRCUIT |

Civ. No. 05CIV 19-00006

TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON,

Plaintiffs,

v.

WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),

Defendants.

**AFFIDAVIT OF SERVICE**

Two (2) Amended Summons' and Amended Complaints to **Nilles Law Firm aka Nilles**, and **Selbo & Harrie**, came into my hands on the ___14th___ day of January, 2019, and that I served the same upon _Shannon M. Gregor_ , personally by delivering to and leaving copies thereof with _Shannon Gregor_ , in _Fargo_ , _Cass_ County, _North Dakota_ on this _14th_ day of _January_ , 2019

1

(State)

at ___4___ O'Clock  p̶m̶.a.m.(p.m.)(CST).
(State),

_____

Chuck Anderson
Affiant

Subscribed and sworn to before me this _16th_ day of _January_, 2019.

STATE OF _North Dakota_ )
                                          ) §
COUNTY OF _Cass_          )

     BEFORE ME, the undersigned authority, personally appeared Chuck Anderson, known
to me to be the person whose name is subscribed to the within instrument, and he acknowledged
that he executed the same for the purposes described herein.

     IN WITNESS WHEREOF I have hereunto set my hand and official seal.

_____

Notary Public, State of _North Dakota_

My commission expires: _Dec. 11, 2022_

(SEAL)

JESSICCA BYE
Notary Public
State of North Dakota
My Commission Expires Dec. 11, 2022

_____

Notary Public

My commission expires: _____

[SEAL]

2

STATE OF SOUTH DAKOTA    )                  IN CIRCUIT COURT
                            )SS
COUNTY OF BROOKINGS     )           THIRD JUDICIAL CIRCUIT

TERESA ANN THOMPSON, Individually, )
and as Special Administer/Personal )          Civ. No.05CIV 19-000006
Representative of the Estate of WINFIELD )
THOMPSON, SR., Deceased, and the )
ESTATE of WINFIELD THOMPSON, )
MELISSA PROCHNOW AND JAMIE )
HELGESON, as Special )
Administrator(s)/Personal Representative(s) of )
the Estate of Nicholas Helgeson, and the )
ESTATE OF NICHOLAS HELGESON, )
                               )
         Plaintiffs,        )
                               )
     v.                    )      **ADMISSION OF SERVICE**
                               )
WILLIAM HARRIE and  THE NILLES LAW )
FIRM, aka NILLES, SELBO &  HARRIE, )
LTD., and NODAK INSURANCE )
COMPANY, (fna NODAK MUTUAL )
INSURANCE COMPANY), and NODAK )
MUTUAL GROUP, INC., a Mutual Holding )
Company and N.I. HOLDINGS, INC. (An )
Intermediate Stockholding Company), )

        Defendants.

     Personal service of a copy of the enclosed and attached *Amended Summons and*

*Amended Complaint,* has been made upon the Defendant William Harrie for effective personal

service upon himself, and is hereby admitted by receipt of true copies thereof on this 18th day

of January, 2019.

                          William Harrie, Defendant

                       1

SUBSCRIBED AND SWORN to before me this ___18th___ day of January, 2019.

_____
Notary Public

My commission expires:

[S E A L] BRENDA JO BRUNELLE
Notary Public
State of North Dakota
My Commission Expires June 18, 2023

2