**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| TERESA ANN THOMPSON, individually, and as Special Administer of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE OF WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson and the ESTATE OF NICHOLAS HELGESON,<br><br>*Plaintiffs*,<br><br>v.<br><br>WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD. and NODAK INSURANCE COMPANY (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),<br><br>*Defendants*. | ) | Case No. 4:19-cv-04023-LLP<br><br>**BRIEF SUPPORTING MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

This case is the fourth lawsuit arising out of a car accident nearly 10 years ago. It is the second time that Teresa Thompson and the Estate of Winfield Thompson, Sr. (collectively "the Thompson Plaintiffs") have tried to sue attorney William Harrie and the Nilles Law Firm ("the Lawyer Defendants") despite the fact that the Lawyer Defendants represented the opposing party in litigation. Because the Amended Complaint[1] fails to state a legally cognizable claim against them, the Lawyer Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

[1] The Plaintiffs filed an Amended Complaint before serving the Lawyer Defendants with the original complaint. As a result, the Amended Complaint is the operative initial pleading in this case.

## FACTUAL BACKGROUND

### A. The Underlying Lawsuit

As alleged in the Amended Complaint,[2] Winfield Thompson, Sr. and Nicholas Helgeson were in a car accident on November 6, 2009, in Roberts County, South Dakota. (Amended Complaint at ¶¶ 9, 12). Helgeson was driving a vehicle owned by Patrick Nelson. (*Id.* at ¶ 9). Thompson was a passenger in a vehicle driven by Richard Chell. (*Id.*). Helgeson's alleged negligent operation of the motor vehicle caused the crash. (*Id.* at ¶ 11). As a result of the crash, Helgeson passed away. (*Id.* at ¶ 12).

The vehicle owned by Patrick Nelson was insured by Nodak Insurance Company ("Nodak"). (*Id.* at ¶ 10). On December 3, 2010, Nodak commenced a declaratory judgment action ("the Declaratory Judgment Action") to determine whether there was insurance coverage for the accident under Nodak's policy. (*Id.* at ¶ 16). A court trial was held on the declaratory judgment action on September 19, 2013, and the South Dakota Circuit Court determined that Nodak's policy provided insurance coverage. (*Id.* at ¶¶ 18, 25). The Lawyer Defendants were not involved in the Declaratory Judgment Action. (*Id.* at ¶ 17).

While the Declaratory Judgment Action was pending, the Thompson Plaintiffs sued Helgeson in South Dakota Circuit Court for the Fifth Judicial Circuit, Roberts County, South Dakota on August 31, 2012 ("the Underlying Lawsuit"). (*Id.* at ¶ 19). Due to the pending Declaratory Judgment Action, there was an indefinite extension of time to file an answer in the Underlying Lawsuit. (*Id*. at ¶ 22). Nodak hired the Lawyer Defendants from Fargo, North Dakota, to defend Helgeson. (*Id.* at ¶ 23).

[2] The factual allegations in this brief are as stated in the Amended Complaint because this is a Rule 12(b)(6) motion. By describing the facts as such, the Lawyer Defendants are not conceding that the facts will be proven to have occurred as described in the Amended Complaint.

After the decision in the Declaratory Judgment Action decision, counsel for Thompson Plaintiffs sent a letter dated April 14, 2014, to attorney Harrie making a settlement demand. (*Id.* at ¶ 26). On May 12, 2014, counsel for the Thompson Plaintiffs sent another letter to attorney Harrie demanding a formal answer to the complaint in the Underlying Lawsuit within 30 days. (*Id.* at ¶ 30). When there was no answer filed within 30 days, the Thompson Plaintiffs filed a motion for entry of a default judgment against Helgeson. (*Id.* at ¶ 31).

The day after receiving the motion for default judgment, attorney Harrie signed and filed an answer on behalf of Helgeson. (*Id*. at ¶¶ 31-32). Another Nilles Law Firm attorney, Mark Hanson, who is licensed in South Dakota, was also listed on the answer. (*Id.* at ¶¶ 36, 62). The answer was only signed, however, by attorney Harrie. (*Id.* at ¶ 36). The Court held a hearing on the motion for default judgement on July 31, 2014. (*Id.* at ¶ 37). The Court denied the entry of a default judgment. (*Id.*).

The parties proceeded with discovery in the Underlying Action. (*Id.* at ¶¶ 38-43). On January 21, 2016, counsel for the Thompson Plaintiffs learned that attorney Harrie was not licensed to practice law in South Dakota, and that he was not admitted *pro hac vice* in the case. (*Id.* at ¶¶ 43-44). Because attorney Harrie had signed all the pleadings, the Thompson Plaintiffs filed a renewed motion for default judgment seeking to quash the answer signed by attorney Harrie. (*Id.* at ¶ 45). After receiving the motion, attorney Harrie filed a motion for *pro hac vice* admission. (*Id.* at ¶ 47). The Circuit Court denied attorney Harrie's motion for *pro hac vice* admission and granted the motion for entry of a default judgment based upon Harrie's failure to get properly admitted to practice law in South Dakota courts. (*Id.* at ¶¶ 48, 71). As a result, the Circuit Court quashed the answer in the Underlying Action and entered a default judgment against Helgeson. (*Id.* at ¶¶ 71, 72).

After the entry of the default judgment, attorney Mark Arndt of Sioux Falls succeeded as counsel defending Helgeson. (*Id.* at ¶ 74). Attorney Arndt moved to set aside the default judgment, which was denied. (*Id.* at ¶ 75). Based upon attorney Arndt's motion, the Circuit Court held a jury trial on damages on November 1, 2017. (*Id.* at ¶¶ 77-78). Prior to the trial, Helgeson died as a result of causes unrelated to the accident, and an Estate of Helgeson was the defendant in the Underlying Action ("Helgeson's Estate"). The jury awarded damages of $127,000.00 to Thompson's Estate. (*Id*. at ¶ 78). Nodak then tendered the $100,000.00 policy limits to reduce the amount of the judgment against Helgeson's Estate.

**B. Judge Schreier Dismisses the First Attempt By the Thompson Plaintiffs' Estate to Sue Nodak and the Lawyer Defendants**

In January of 2018, the Thompson Plaintiffs sued the Lawyer Defendants and Nodak in South Dakota Circuit Court for the Third Judicial Circuit. (Motion for Judicial Notice at Ex. A). The Complaint alleged four causes of action: unauthorized practice of law, fraud and deceit, civil conspiracy, and barratry/abuse of process. (Motion for Judicial Notice at Ex. B, at p.2). The claims against the Lawyer Defendants all related to attorney Harrie's allegedly wrongful conduct in defending Helgeson in South Dakota without being licensed in South Dakota. (*See generally* Motion for Judicial Notice at Ex. A).

After removing the case to federal court based upon diversity, both the Lawyer Defendants and Nodak filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On September 19, 2018, Judge Schreier granted the motions and dismissed the complaint without prejudice (Motion for Judicial Notice at Ex. B). Regarding the Lawyer Defendants, Judge Schreier held that the claims for unauthorized practice of law and barratry really sounded in legal malpractice. (Motion for Judicial Notice at Ex. B, at pp.6, 13). As held by Judge Schreier, the legal malpractice claims are barred as a matter of law because the Lawyer Defendants did not owe a duty to the Thompson

Plaintiffs, which were the opposing parties in the lawsuit. (Motion for Judicial Notice Ex. B, at p.7). Regarding the fraud claim, Judge Schreier ruled that the complaint did not comply with the requirements imposed by Rule 9(b) to plead facts with specificity to state a cognizable fraud claim. (Motion for Judicial Notice Ex. B, at pp.10-11). Finally, Judge Schreier dismissed the civil conspiracy claim because there was no underlying cognizable tort plead in the complaint. (Motion for Judicial Notice Ex. B, at p.12).

### C. Thompson Estate Obtains an Assignment of the Claims from Helgeson Estate and Sues the Lawyer Defendants and Nodak Again

After Judge Schreier dismissed their complaint, the Thompson Plaintiffs agreed that they would not execute on the judgment against Helgeson's Estate if Helgeson's Estate assigned its potential claims against the Lawyer Defendants and Nodak to the Thompson Plaintiffs. (Amended Complaint at ¶ 80). To effectuate that agreement, the Thompson Plaintiffs entered into a written agreement on December 26, 2018 with the representatives of the Helgeson's Estate. That agreement is titled Agreement for the Assignment of Causes of Action/Covenant Not to Execute/Release of Claim to UI or UM Settlement Proceeds ("Assignment Agreement"). (Affidavit of Jason R. Sutton at Ex. C).[3]

In the Assignment Agreement, Helgeson's Estate expressly assigned any cause of action it has against the Lawyer Defendants, including any claim for malpractice, to Theresa Thompson and Thompson's Estate. The operative provision of the Assignment Agreement states:

> 1. The ESTATE OF HELGESON shall assign to THOMPSON any and all claims/causes of action, including but not limited to claims for bad faith, barratry, fraud, deceit, unauthorized practice of law, civil conspiracy, punitive damages, and legal negligence/malpractice, which the ESTATE OF HELGESON had at the time of entry of judgment in Civ. No. 12-105, against Nodak, Harrie, and the Nilles Law Firm, and which arose out of the claims at issue in the Civil Action, and which arise out of the handling of the Civil Action and/or related insurance claims and/or out of the potential claims concerning

[3] The Amended Complaint refers to the assignment but does not attach the document.

> Harrie and/or the Nilles Law Firm, and/or out of the acts and omissions of those parties undertaken in connection with the claims underlying the Civil Action, and also including any claims made and/or anticipated to be made in the pending Federal Court civil action Case No. 4:18-CV-4022-KES.

(Sutton Aff. at Ex. A, at p.2). Under paragraph 4 of the Assignment Agreement, the Thompson Plaintiffs are entitled to all of the proceeds recovered from the assigned claims against the Lawyer Defendants and Nodak. (*Id.*). Consistent with the Assignment Agreement, the representatives of Helgeson's Estate have in fact assigned all interest in their claims against the Lawyer Defendants to the Thompson Plaintiffs. (Sutton Aff. Ex. C, at pp.7-8).

After obtaining the assignment, the Thompson Plaintiffs again sued the Lawyer Defendants and Nodak in South Dakota Circuit Court. Although the Helgeson Estate is listed as a plaintiff, it has no interest in the litigation pursuant to the Assignment Agreement. The Lawyer Defendants and Nodak have again removed this action based upon diversity jurisdiction.

According to the Amended Complaint, there is only two claims asserted against the Lawyer Defendants. Count 1 asserts a claim for legal malpractice against the Lawyer Defendants. Count 5 asserts a claim for punitive damages. None of the other claims in the Amended Complaint apply to the Lawyer Defendants. The Lawyer Defendants move to dismiss the claims against them in the Amended Complaint for failure to state a claim.

## LEGAL STANDARD

"A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to review only the pleadings to determine whether they state a claim upon which relief can be granted." *Thunder Horse v. United States*, 2007 WL 666803, at *2 (D.S.D. Feb. 27, 2007). "A Rule 12(b)(6) motion to dismiss requires the court to accept as true all factual allegations contained in a complaint and review the complaint to determine whether its allegations show that the pleader is entitled to relief." *Lutgen*

*v. S. Dakota Dep't of Soc. Servs.*, 2012 WL 4499139, at *1 (D.S.D. Sept. 28, 2012) (citing *Schaaf v. Residential Funding Corp*., 517 F.3d 544, 549 (8th Cir. 2008)). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); Fed. R. Civ. P. 8(a)(2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Jacobs ex rel. Jacobs v. Evangelical Lutheran Good Samaritan Soc'y*, 2010 WL 5439767, at *1 (D.S.D. Dec. 28, 2010) (citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "In addition, some factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

"Though 'matters outside the pleading' may not be considered in deciding a Rule 12 motion to dismiss, documents 'necessarily embraced by the complaint' are not matters outside the pleading." *Enervations, Inc. v. Minnesota Mining & Manufacturing, Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). A party cannot avoid a motion to dismiss by failing to attach the documents on which it relies to the complaint, and the movant can provide those documents to the Court as part of the motion to dismiss because the documents are "necessarily embraced by the complaint." *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 687 (8th Cir. 2003). When ruling on a Rule 12 motion to dismiss, the Court also may take judicial notice and consider items in the public record. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## ARGUMENT

In the Amended Complaint, Plaintiffs assert two claims against the Lawyer Defendants: (1) Count 1 for Legal Malpractice; and (2) Count 5 for Punitive Damages. The Amended Complaint fails to state a plausible claim for relief against the Lawyer Defendants.

### I. Count 1 of the Complaint Fails To State a Claim Upon Which Relief Can Be Granted Because A Legal Malpractice Claim Is Not Assignable as a Matter of Law.

In Count 1 of the Amended Complaint, the Thompson Plaintiffs assert a claim for legal malpractice against the Lawyer Defendants. Under South Dakota law, there are four elements to a legal malpractice claim: "(1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual damage." *Hamilton v. Sommers*, 2014 SD 76, ¶ 21, 855 N.W.2d 855, 862. The existence of a duty is a question of law for the Court. *Hamilton*, at ¶ 22, 855 N.W.2d at 862. It has long been recognized that:

> The attorney owes his primary and paramount duty to his client. The very nature of the adversary process precludes reliance by opposing parties. While it is true that the attorney owes a general duty to the judicial system, it is not the type of duty which translates into liability for negligence to an opposing party where there is no foreseeable reliance by that party on the attorney's conduct.

*Bickel v. Mackie*, 447 F. Supp. 1376, 1381 (N.D. Iowa), aff'd, 590 F.2d 341 (8th Cir. 1978).

As such, "[n]egligence is an improper standard upon which to base liability of an attorney to an adverse party." *Id.* at 1382. *See also Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 9 (D.D.C. 1990) ("[A]n attorney owes *no duty to opposing counsel or an adverse party*.") (emphasis added); *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 588, 283 Cal. Rptr. 732, 741 (Ct. App. 1991) ("The courts have recognized repeatedly that attorneys owe no duty of care to adversaries in litigation or to those with whom their clients deal at arm's length."); *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979) ("In the present context, the duty is owed by

the lawyer to his client and to the legal system. It does not form a basis for a suit by an opposing party."); 61 A.L.R.4th 615 (Originally published in 1988) (noting that a "party has no cause of action for negligence against an adversary's attorney" in the following courts: Arizona, California, Colorado, Delaware, D.C., Florida, Georgia, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, Virginia, and Wisconsin.).

This rule has also generally been recognized in South Dakota. According to the South Dakota Supreme Court, "to recover for a lawyer's negligence, a plaintiff must first show that an attorney-client relationship existed between the lawyer and the plaintiff." *Chem-Age Indus., Inc. v. Glover*, 2002 SD 122, ¶ 30, 652 N.W.2d 756, 769. *See also* Restatement (Third) of the Law Governing Lawyers § 51 (1998) (noting those circumstances where an attorney owes a non-client a duty to use care, all which are inapplicable here).

The Thompson Plaintiffs already tried once to sue the Lawyer Defendants directly for legal malpractice. Judge Schreier properly dismissed that action for failure to state a claim because the Lawyer Defendants were not in an attorney-client relationship with the Estate of Thompson. (Motion for Judicial Notice at Ex. B, at p.7). Instead, the Thompson Plaintiffs were the opposite party in litigation. (*Id.*). As a result, Judge Schreier held that the Lawyer Defendants did not owe a duty to the Thompson Plaintiffs, and the claims for legal malpractice failed as a matter of law. (*Id.*).

Now, in this case, the Thompson Plaintiffs attempt to circumvent Judge Schreier's decision by obtaining an assignment of claims from the Lawyer Defendants' client—the Estate of Helgeson. (Amended Complaint at ¶ 80). Legal malpractice claims are not, however, assignable as a matter of law.

Although the South Dakota Supreme Court has not addressed the assignability of a legal malpractice action, the strong majority of other jurisdictions have held that public policy prohibits assigning legal malpractice claims as a matter of law. *See, e.g., Wagener v. McDonald*, 509 N.W.2d 188, 190 (Minn. Ct. App. 1993) (stating that the majority of jurisdictions have held legal malpractice claims cannot be assigned as a matter of public policy); *Delaware CWC Liquidation Corp. v. Martin*, 584 S.E.2d 473, 477 (W. Va. 2003) (same); *Earth Science Laboratories, Inc. v. Adkins & Wondra, P.C.*, 523 N.W.2d 254, 256 (Neb. 1994) (same); *Weiss v. Leatherberry*, 863 So. 2d 368, 371 (Fla. Ct. App. 2003) (describing the "majority rule that a cause of action for legal malpractice is not assignable"); *Can Do, Inc. Pension and Profit Sharing Plan and Successor Plans v. Manier, Herold, Hollabough & Smith*, 922 S.W.2d 865, 868 (Tenn. 996) ("[A] majority of jurisdictions have concluded that public policy considerations militate against allowing assignment of legal malpractice actions.").

Sound public policy reasons prohibit assignments of legal malpractice claims. The Minnesota Court of Appeals in *Wegener v. McDonald*, 509 N.W.2d 188 (1992), identified those policy considerations. As stated by the *Wegener* court, permitting an assignment of a legal malpractice claim "would be incompatible with the attorney's duty to act loyally to towards the client." *Id.* at 191 (citing *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 341 (Ind. 1991)). An assignment also would be inconsistent with the attorney's duty to maintain confidentiality. *Id.* Third, the inherently personal and fiduciary nature of the attorney client relationship prohibits assignments. *Id.* (citing *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 133 Cal. Rptr. 83, 87 (1976)). Further, the court recognized that there is a "risk of collusion in assignment situations." *Id.* (citing *Coffey v. Jefferson County Bd. of Educ.*, 756 S.W.2d 155 (Ky. Ct. App. 1988)). These collusion risks are further exacerbated when the client assigns his or her claim against their

attorney to the opposing party in the underlying action. *See id.* Finally, "[t]he assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney." *Id.* (quoting *Goodley v. Wank & Wank, Inc.*, 62 Cal. App. 3d 389, 133 Cal. Rptr. 83, 87 (1976)). "The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession." *Id.*

Like most other jurisdictions, this Court should hold that legal malpractice claims are not assignable under South Dakota law. Due to the unique nature of the attorney-client relationship, South Dakota strictly follows the privity rule providing that attorneys can only be liable to their clients. *Chem-Age Industries, Inc. v. Glover*, 2002 SD 122, ¶ 30, 652 N.W.2d 756, 769 ("South Dakota has long subscribed to the strict privity rule in attorney malpractice cases."). South Dakota applies the privity rule for sound policy reasons. First, the privity rule "preserves an attorney's duty of loyalty to and effective advocacy for the client." *Id.* at ¶ 31. "Second, adding responsibility to nonclients creates the danger of conflicting duties." *Id.* "Third, once the privity rule is related, the number of persons a lawyer might be accountable to could be limitless." *Id.* Finally, relaxing the privity rule "would imperil attorney-client confidentiality." Based on these considerations, the South Dakota Supreme Court is unwilling to expand attorney liability to non-clients.

Critically, the same policy considerations requiring strict enforcement of the privity rule also prohibit assignment of legal malpractice claims. Compare *Chem-Age Industries, Inc.*, at ¶¶ 31-32, with *Wegener*, 509 N.W.2d at 191-92. Ultimately, permitting assignment of legal malpractice claims would debase the legal profession. And the South Dakota Supreme Court has recognized "that which tends to debase the learned professions is at war with public interest and

is therefore contrary to public policy." *Bartron v. Codington County*, 2 N.W.2d 337, 345 (S.D. 1942).

Admittedly, a minority of jurisdictions do permit an assignment of legal malpractice cases in certain instances. Courts rejecting a *per se* bar of assigning legal malpractice cases generally analyze the assignability of a legal malpractice claim "on a case-by-case basis." *Gurski v. Rosenbaum & Filan, LLC*, 885 A.2d 163, 173 (Conn. 2005). But even in those jurisdictions, many courts prohibit assigning legal malpractice claims to the opposing party in the underlying lawsuit. *See, e.g., Gurski*, 885 A.2d at 173-74; *Tate v. Goins, Underkofler, Crawford & Langdon*, 24 S.W.3d 627, 633 (Tex. App. 2000); *Kommavongsa v. Haskell*, 67 P.3d 1068, 1078-79 (Wash. 2003); *cf. Otis v. Arbella Mutual Ins. Co.*, 824 N.E.2d 23, 33 (Mass. 2005) (holding judicial estoppel barred assignment of legal malpractice claim to adversary in underlying action).

Authorizing assignment of a malpractice claim to the opposing party in the underlying action creates "a demeaning reversal of roles," which would severely undermine the credibility of lawyers and the legal system. *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 317 (Tex. Ct. App. 1994). "The two litigants would have to take positions diametrically opposed to their positions during the underlying litigation because the legal malpractice case requires a 'suit within a suit.'" *Id.* at 318. To prove causation on the malpractice claim, the party receiving the assignment will have to prove they would have ***lost*** in the underlying litigation but for the attorneys' negligence. *Id.* Of course, this is diametrically opposite of the position taken by that party in the underlying action. *Id.* "For the law to countenance this abrupt and shameless shift of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a mere game and not a search for truth." *Id.*

Like in *Zuniga*, this case involves assignment of a malpractice claim to the opposing party in litigation. As a result, even if an assignment of a legal malpractice claim may be appropriate in other settings, the assignment in this case is impermissible as a matter of law. In turn, Count 1 of the Amended Complaint fails to state a claim, and it should be dismissed.

**II. Punitive Damages Cannot Be Recovered from the Lawyer Defendants.**

Plaintiffs only other count against the Lawyer Defendants is Count 5 of the Amended Complaint, and it asserts a claim for punitive damages. (Amended Complaint at ¶¶ 179-180). "It is well settled that a recovery of punitive damages requires a finding of an independent tort with accompanying actual damages." *Grynberg v. Citation Oil & Gas Corp.*, 1997 SD 121, ¶ 65, 573 N.W.2d 493, 511. As stated above, Count 1—the only substantive claim against the Lawyer Defendants—fails to state a claim upon which relief can be granted. In turn, Plaintiffs' claim for punitive damages also fails as a matter of law.

**CONCLUSION**

For the above stated reasons, this Court should grant the Lawyer Defendants' Motion to Dismiss for Failure to State a Claim and dismiss the claims in the Amended Complaint against the Lawyer Defendants with prejudice.

Dated this 8th day of February, 2019

*/s/ Jason R. Sutton*
Thomas J. Welk
Jason R. Sutton
BOYCE LAW FIRM, L.L.P.
300 S. Main Avenue
P.O. Box 5015
Sioux Falls, SD 57117-5015
(605) 336-2424
tjwelk@boycelaw.com
jrsutton@boycelaw.com
*Attorneys for the Lawyer Defendants*