STATE OF SOUTH DAKOTA    )                  IN CIRCUIT COURT
                        )SS
COUNTY OF BROOKINGS    )        THIRD JUDICIAL CIRCUIT

                              )               Civ. No.

TERESA ANN THOMPSON, Individually,   )
and as Special Administer of the Estate of   )
WINFIELD THOMPSON, SR., Deceased, and   )
the ESTATE of WINFIELD THOMPSON,   )
                              )      **COMPLAINT**
       Plaintiffs,         )

   v.                       )

WILLIAM HARRIE and THE NILLES LAW   )
FIRM, aka NILLES, SELBO &amp; HARRIE,   )
LTD., and NODAK INSURANCE   )
COMPANY, (fna NODAK MUTUAL   )
INSURANCE COMPANY), and NODAK   )
MUTUAL GROUP, INC., a Mutual Holding   )
Company and N.I. HOLDINGS, INC. (An   )
Intermediate Stockholding Company),   )
                              )
       Defendants.        )
                              )
                              )

COMES NOW, the Plaintiffs, Teresa Thompson, individually, and as Special

Administrator of the Estate of Winfield Thompson, deceased, and the Estate of Winfield

Thompson, Sr., by and through their counsel, Robin L. Zephier and Seamus Culhane, make and

file the Plaintiffs' causes of action against the above-named Defendants, the Nilles Law Firm aka

Nilles, Selbo and Harrie, Ltd., and the Defendant Nodak Insurance Company, (fna Nodak

Mutual Insurance Company and a mutual holding company, Nodak Mutual Group, Inc., which

are wholly owned subsidiaries of an interemediate stockholding company known as N.I.

Holding, Inc.), based upon the following facts and allegations, and Plaintiffs specifically also

incorporate the Circuit Court's Order dated March 29, 2016 and the accompanying Findings of

1



Fact and Conclusions of Law dated March 29, 2016 in Civ. No. 12-105. (Attached as **Exhibit "A"**). Therefore, this Complaint is based upon the following statements. Plaintiffs state and allege as follows:

1.      That the Plaintiff Teresa Thompson, is a resident of Sisseton, Roberts County, South Dakota.

2.      Winfield Thompson, deceased, the natural father of Plaintiff Teresa Thompson, was a resident of Sisseton, Roberts County, State of South Dakota.

3.      Upon Plaintiffs' best knowledge and reasonable belief, Plaintiffs' know that Defendant William Harrie is and was at all times relevant to this action, an attorney with the Nilles Law Firm in Fargo, North Dakota, and that Harrie is and was licensed to practice law in the states of North Dakota and Minnesota. According to Plaintiffs' best knowledge and belief, the Nilles Law Firm regularly does insurance defense and personal injury defense work for civil defendants and for insurance companies such as Nodak. Nilles' registered agent is Nilles, Selbo & Harrie of Fargo, North Dakota.

4.      At the time of the subject November 6, 2009 motor vehicle accident, the tortfeasor in the third party negligence action, Civ. No. 12-105, Fifth Circuit Court, Roberts County, South Dakota, Nicholas Helgeson (deceased), was an insured under an automobile insurance policy through the Defendant Nodak Insurance Company, (fna Nodak Mutual Insurance Company), and had said policy in effect at the time of said subject accident in 2009. The Defendant Nodak Insurance Company, (hereinafter, "Nodak"), to the Plaintiffs' best information, knowledge, and belief, was at all times relevant to this action, a duly registered insurance company, registered with the Divisions of Insurance for the State of North Dakota (but apparently not in South Dakota), and transacts insurance business and sells insurance policies in

2

all counties in the state of South Dakota, and within the entire State of North Dakota. Nodak

Insurance Company is now a wholly owned subsidiary of N.I. Holdings, Inc., and a part of

Nodak Mutual Group, Inc. (a mutual holding company). All Nodak companies including N.I.

Holdings, are located in Fargo, North Dakota.

     5.     The acts complained of against said Defendants occurred in the state of South

Dakota, and involved the physical presence and the telephonic communications in and with

parties located within the State of South Dakota.

     6.     On or about August 31, 2012, Plaintiff Teresa Thompson sued Nicholas Helgeson

(now deceased) for the wrongful death of her father Winfield Thompson, Sr., (also deceased) in

Roberts County, South Dakota, Fifth Judicial Circuit Court, Civil No. 12-105.

     7.     On or about October 12, 2012, according to Plaintiffs' best knowledge and belief,

Defendant Attorney William P. Harrie and his law firm, the Nilles Law Firm, were hired by

Defendant Nodak Insurance Company, the auto liability insurance carrier (named insured was

Melissa Prochnow, Helgeson's natural mother), to provide a civil defense for Helgeson in the

third party direct action against Helgeson in the wrongful death vehicle accident civil action,

Civil No. 12-105. Attorney Harrie filed and served a formal written Notice of Appearance on

the case dated October 12, 2012.

     8.     On or about June 18, 2014, the Plaintiff received the formal written Answer and

Demand for Jury Trial, signed by William Harrie as "Attorney for Defendant".

     9.     Defendant Harrie appeared for hearings (all by telephone) in Roberts County,

South Dakota on behalf of Nicholas Helgeson, at various proceedings on July 30, 2014, and

December 3, 2015, and at a video conference deposition of Helgeson on June 30, 2015.

     10.     According to Plaintiffs' best knowledge and belief, the Defendants Harrie and the

Nilles Law Firm, as the legal counsel/legal agent, did, and had previously, acted as hired legal counsel and as legal agents for and on behalf of Defendant Nodak Insurance Company on many occasions, including the action in Civ. No. 12-105.

11.    That all the critical acts complained herein giving rise to the Complaint occurred within the state of South Dakota, including the discovery of the alleged negligent and/or intentional conduct of all of the Defendants, the full extent of the related damages, the motor vehicle accident in question and all of the litigation conduct relevant here, did occur within the state of South Dakota. The amount of claimed damages meets the requirements for the jurisdiction of the Circuit Court, and the venue is proper in the county circuit court for the State of South Dakota. Personal and subject matter jurisdiction exists over all parties in this action for all the reasons cited herein, and according to the state's long arm jurisdiction.

12.    That at all times pertinent herein, the Defendants, William Harrie and/or Nilles Law Firm, were acting by and through their agents and/or employees and legal representatives and personnel, including Nodak representatives, which acted for and on behalf of tortfeasor Helgeson and/or Nodak Insurance Company in all relevant acts complained of herein.

## COUNT ONE: UNAUTHORIZED PRACTICE OF LAW

Plaintiffs hereby incorporate paragraphs one through twelve (1-12) of this Complaint as if specifically set forth herein.

13.    That on or about November 6, 2009, the tortfeasor in the separate, but related underlying third party claim, Nicholas Helgeson, the third party tortfeasor, a Nodak Insurance Company insured, operated a motor vehicle owned by Patrick Nelson, near New Effington, Roberts County, South Dakota, in a negligent, careless and reckless manner. That negligence was the sole proximate cause of a motor vehicle accident resulting in bodily injuries and death to the Decedent Winfield Thompson, Plaintiff Teresa Thompson's natural father.

4

14.     That third party tortfeasor Nicholas Helgeson, owed Decedent Winfield
Thompson, a duty to exercise reasonable care in the operation of the motor vehicle that the
tortfeasor was operating at the time of the subject accident. Tortfeasor Helgeson breached that
duty in that he failed to operate the vehicle in a safe and reasonable manner and thereby
proximately and directly caused said motor vehicle accident killing two (2) passengers, including
Decedent Winfield Thompson. The physical injuries and subsequent death of Decedent
Winfield Thompson, occurred when the vehicle Helgeson was driving, crashed into the vehicle
Winfield Thompson was riding in as a passenger, due to Helgeson's negligence, at the
intersection of of 466th Avenue and Highway 127, in Roberts County, South Dakota.

15.     That as a direct and proximate result of the negligence of tortfeasor Helgeson,
Decedent Winfield Thompson suffered serious injuries to his body, and died approximately four
(4) hours later while being medically treated for the accident related injuries.

16.     As a direct and proximate result of tortfeasor Helgeson's breach of his legal duty,
Decedent Winfield Thompson suffered past medical expenses in an amount in excess of
($20,000) and other compensatory and special and general damages including but not limited to
wrongful death, bodily injury, physical and emotional injuries, pain and suffering, loss of
enjoyment of life, disfigurement, funeral expense and other consequential damages. Plaintiff
Teresa Thompson, individually and with the heirs of Winfield Thompson, and the Estate of
Winfield Thompson, also suffered damages as a result of their father's death.

17.     The Decedent Winfield Thompson was not in any way, contributorily negligent in
any manner or form, in causing this accident, or any of the Plaintiffs' damages.

18.     Plaintiff Teresa Thompson is one of the natural surviving daughters of the
decedent, Winfield Thompson.

19.     Plaintiff Teresa Thompson is the administrator of the estate of Winfield

5

Thompson, Sr..

20.     Plaintiffs are entitled to receive damages for and on behalf of the Estate, as well as in their own right, and that of Decedent Winfield Thompson's heirs.

21.     The acts of Nicholas Helgeson directly and proximately caused Winfield Thompson's death on November 6, 2009.

22.     Decedent suffered fatal internal injuries which caused his death.

23.     Decedent survived for 4 hours after the injury, until his ultimate death on November 6, 2009.

24.     The Circuit Court, Honorable Jon S. Flemmer, did previously rule on an initial Plaintiffs' (First) Motion for Default Judgment filed by Plaintiff Teresa Thompson in Civ. No. 12-105, dated June 17, 2014, where the Circuit Court (the Trial Court) denied said motion because an Answer signed by Helgeson's attonrey, Defendant Harrie, had been filed approximately 33 days beyond the time to Answer.

25.     The formal Answer had been initially due on May 14, 2014, based upon correspondence between counsel prior to the Plaintiff's First Motion for Default Judgement being filed.

26.     The Circuit Court at a hearing held on July 30, 2014, did deny said Plaintiffs' (First) Motion for Default Judgment and did allow the leeway for Helgeson's Answer to stand, which was filed on or about June 18, 2014.

27.     The previous formal Answer filed by defense counsel, Defendant Harrie, dated June 18, 2014, listed Attorney Mark Hanson, (a member of Defendant Harrie's Fargo, North Dakota law firm, Defendant Nilles Law Firm), and Defendant Harrie, but the Answer was only actually signed by Defendant Harrie, and not by Mr. Hanson.

28.     That Defendant Harrie did physically appear as defense counsel at a discovery

6

deposition of his client, Mr. Helgeson, taken by video conference from Fargo, North Dakota, on June 30, 2015.

29.     That Plaintiff Teresa Thompson did file a Plaintiff's First Motion to Compel dated December 30, 2015, to attempt to re-depose Mr. Helgeson as a result of Defendant Harrie's abusive conduct and advisements to his client during said June 30, 2015 deposition. Harrie appeared at the hearing on said motion. The Circuit Court granted the motion to redepose Helgeson.

30.     That Plaintiffs' counsel did discover on or about January 21, 2016, or soon thereafter, that Defense attorney Defendant Harrie, was not licensed to practice law in the state of South Dakota, and that Defendant Harrie had never sought admission to practice in South Dakota on the case by Pro Hac Vice, at all, from October 12, 2012 through January, 2016.

31.     Defendant Harrie represented Nicholas Helgeson for nearly four (4) years and did nothing to disclose or reveal his alleged unauthorized practice of law in the State of South Dakota in this case, to anyone, including the Trial Court, nor did he file for Pro Hac Vice to be admitted to practice in South Dakota at any time prior to the events in early February 2016.

32.     That based upon the information learned by Plaintiffs' counsel, a Renewed Motion for Default Judgment against Helgeson, and a Motion to Quash all prior pleadings signed by Defendant Harrie, were filed and served upon Helgeson and Defendant Harrie on or about January 26, 2015.

33.     Harrie then sought Pro Hac Vice admission to practice in the South Dakota Court by Affidavit and Motion filed by Attorney Greg Peterson of Aberdeen, South Dakota, dated January 28, 2016.

34.     That Plaintiff Teresa Thompson did file an objection to Harrie's Pro Hac Vice Admission request, dated January 28, 2016.

7

35.     That the Circuit Court, on February 26, 2016, did rule upon Defendant Harrie's January 28, 2016 Motion for Pro Hac Vice, and determined that the Motion for Pro Hac Vice filed by Mr. Peterson on behalf of Defendant Harrie, was denied.

36.     The Circuit Court found that Defendant Harrie did not comply with the requirements of SDCL §16-18-2 before he commenced practicing law in South Dakota, which requirements are mandatory, and not subject to substantial compliance.

37.     The Circuit Court specifically found that Defendant Harrie unlawfully practiced law in South Dakota from June 2014 to January 26, 2016, appearing for at least one deposition and two formal hearings before the Trial Court (one on July 31, 2014, and the second on December 3, 2015).

38.     During the time from June 2014 to January 26, 2016, Defendant Harrie never attempted to remedy his non-compliance with SDCL §16-18-2. Rather, Defendant Harrie continued to practice in South Dakota without notifying the Court, or the Plaintiffs.

39.     The Circuit Court specifically found that, Defendant Harrie's conduct counsels against him satisfying subsection six (6) of SDCL 16-18-2. It provides:

> A statement that the applicant is familiar with the rules of the State Bar of South Dakota governing the conduct of members of the State Bar of South Dakota, and will at all times abide by and comply with the same so long as such trial or hearing is pending, and he or she has not withdrawn as counsel therein[.]  SDCL 16-18-2(6).

40.     The Circuit Court found that between June 2014 and January 26, 2016, Defendant Harrie of the Nilles Law Firm of Fargo, North Dakota, did commit the unauthorized practice of law in the State of South Dakota in violation of SDCL §16-18-1 and 16-18-2.

41.     That between June 2014 and January 26, 2016, Defendant Harrie never once

reasonably, willingly or formally disclosed this unauthorized practice of law to Plaintiffs'

counsel Mr. Zephier, or to the Trial Court.

42.    Defendant Harrie's conduct in the case indicated that he could not satisfy the

requirements of SDCL 16-18-2 (6), which provides that the "applicant is familiar with the rules

of the State Bar of South Dakota governing the conduct of members of the State Bar of South

Dakota, and will at all times abide by and comply with the same so long as such trial or hearing

is pending, and he or she has not withdrawn as counsel therein[.]".

43.    The Circuit Court found that doing what he did in the case, Defendant Harrie

engaged in conduct involving dishonesty, fraud, deceit or misrepresentation when he began

practicing law without a license in front of the Circuit Court and by failing to notify the Court

for one year and seven months.

44.    Defendant Harrie's conduct in this case did constitute a violation of Rule 8.4 (c)

of the South Dakota Rules of Professional Conduct.  Rule 8.4 (c) states that it is professional

misconduct for a lawyer to: "(c) Engage in conduct involving dishonesty, fraud, deceit or

misrepresentation".

45.    The Circuit Court, upon examination of Defendant Harrie's conduct and his

affidavit for pro hac vice admission, was not satisfied that Harrie could "observe the ethical

standards required of attorneys in this state[.]"

46.    The Circuit Court's conclusion in the matter in denying Defendant Harrie's

admission to practice law in this state under the pro hac vice statutory requirements, was further

solidified by the lack of civility and professionalism exhibited by Defendant Harrie at the

Deposition of Nicholas Helgeson conducted on June 30, 2015.

47.    The Circuit Court determined that the Plaintiffs Teresa Thompson and the Estate

9

of Winfield Thompson, were and are prejudiced by Defendant Harrie's conduct and his unauthorized practice of law in this State, and in the case.

48.     The Circuit Court determined that the Court's time had been wasted in that Defendant Harrie made several appearances before the Trial Court and, although the Court did not directly ask Defendant Harrie if he was licensed to practice law in South Dakota, Defendant Harrie did not indicate to the Court that he was not licensed to do so, and appeared on his own at that time, without licensed counsel.

49.     While it appeared that a member of the law firm that Defendant Harrie is a part of, Mr. Hansen, was licensed to practice law in South Dakota, the name of Mr. Hansen was on the formal Answer, but the signature on the June 18, 2014 formal Answer of Helgeson, was Mr. Harrie's signature, and Mr. Harrie was not authorized to practice law in South Dakota at that time. Mr. Harrie also appeared before the Court on his own on each occasion without notifying the Court or party opponents of his unlicensed status.

50.     The appropriate way for an attorney who is not licensed in South Dakota to become able to proceed in appearing in South Dakota as set forth in the pro hac vice statutes, SDCL 16-18-2, is to follow that procedure, but that procedure was not even attempted to be followed until Mr. Peterson became involved in the case, and the request for pro hac vice admission was made on January 28, 2016.

51.     The Circuit Court was familiar with the prior proceedings and matters that the Trial Court had been involved in regarding the declaratory action and the criminal proceeding involving Helgeson.

52.     The Circuit Court recognized that the pro hac vice statute would require an

10

attorney like Defendant Harrie in that situation, to appear with a South Dakota resident attorney present in the Trial Court for all court hearings, as well as actually having the admission pro hac vice completed before any legal pleadings were signed or filed.

53.     While Mr. Hansen could certainly have signed pleadings and made appearances as a licensed member of the South Dakota bar, he did not take those actions in the case at all. It was only Defendant Harrie who appeased.

54.     The Circuit Court concluded that the formal Answer prepared and filed by Defendant Harrie in June 2014, was quashed, as Defendant Harrie was not authorized to practice law in South Dakota at the time that he took action on behalf of the Helgeson by signing and filing formal pleadings in the Court, and appearing and arguing before the Trial Court without a license in South Dakota or without admission pro hac vice.

55.     While Default Judgment may be a harsh remedy, the Circuit Court must examine whether or not there was excusable neglect and whether there was a meritorious defense.

56.     While there had been a defense set forth in the formal Answer of June 18, 2014, the neglect and conduct in the case by Mr. Harrie, is in the failure to become admitted prior to proceeding with the formal proceedings in this South Dakota court. This is not excusable.

57.     To allow the formal June 18, 2014 Answer to stand, in the Circuit Court's determination and discretion, would simply reward the conduct and allow the action to proceed, when, in fact, no legitimate Answer was ever filed.

58.     The pleadings signed and/or filed by Defendant Harrie acting as defense counsel for Helgeson, because of Harrie's unauthorized practice of law in South Dakota, were ruled to be null and void, including the formal Answer dated June 18, 2014.

59.     The Circuit Court concluded that the appropriate action was to quash the Answer

11

and all other pleadings signed by Defendant Harrie and to therefore, grant the Plaintiffs'
Renewed Motion for Default Judgment in asmuch as Defendant Harrie's actions were a nullity,
and no Answer or responsive pleading has been filed at all in this case.

60.     On March 29, 2016, the Honorable Jon S. Flemmer signed an Order Granting
Plaintiffs' Renewed Motion for Default Judgment, and signed the Findings of Fact and
Conclusions of Law (**Exhibit A**).

61.     Plaintiffs sustained damages as a direct and proximate cause of Defendant Nodak
Insurance Company's and Defendant Harrie's, breach, of their duty to properly represent
Helgeson and as a result of Harrie's unauthorized practice of law, which ended up costing
Plaintiffs time and expense in the form of attorneys fees, costs of litigation, and damages
associated with anxiety, mental suffering, negligent/intentional infliction of emotional distress,
frustration, humiliation, worry, embarrassment, pain and suffering, loss of peace of mind, loss of
trust in the court system,  lost income, travel expenses, and other consequential losses.

62.     Defense counsel Mark Arndt of Sioux Falls took over Helgeson's civil defense on
the case on March 4, 2016.  Arndt moved to set aside the default judgment.  The Court denied
said motion on March 29, 2016.

63.     A Damages trial was set to be held on November 1, 2017, in order to determine
the full extent, nature and amount of Plaintiffs' damages.

64.     Attorney Arndt, on Helgeson's behalf, filed a May 18, 2016 Motion for Jury Trial
to be held on the damages, rather then to have a court trial.  Thompson opposed said motion.

65.     The Circuit Court held a hearing on April 10, 2017, and granted Helgeson's
Motion to have a Jury Trial on the Plaintiffs' damages.

66.     The January 20, 2016 depositions of the Thompson heirs were deemed invalid by

Plaintiffs as a result of Harrie's unauthorized practice of law which had, up until that point, remained unknown, concealed, suppressed, misrepresented, and/or purposefully hidden from Plaintiffs and the Court.

67.     Harrie's conduct in practicing law in South Dakota without a license caused undue delay and significant added monetary expense because of its illegality.

68.     Defendant Nodak and Defendant Nilles Law Firm apparently and/or obviously knew or should have known of the fact that in this case, Civ. No. 12-105, Harrie was practicing law in a South Dakota case without a proper South Dakota law license or without proper pro hac vice admission.

69.     Defendants Nodak, Nilles, and Harrie, all did, or should have reasonably known, that such information such as Harrie's lack of legal authorization to practice in South Dakota in this case, was an obvious fact that absolutely needed to be revealed and disclosed to the Court and their opponents in the litigation, Plaintiffs. Defendants therefore knew or should have known that such concealment, suppression, misrepresentation and nondisclosure of such a material fact would and will cause damage to the party opponents, the Plaintiffs. But Defendants went ahead recklessly and purposefully, anyway, despite that knowledge or those likely consequences, and in light of what the Defendants each knew not to be the truth.

70.     That Defendants Harrie, Nilles and Nodak acted intentionally, wantonly, oppressively, purposefully, willingly, and with reckless disregard for Plaintiffs' rights, remedies, interests, or condition, when the Defendants chose to intentionally deceive and/or defraud the Court and the Plaintiffs in Civ. No. 12-105, as a result of Harrie's conduct.

### COUNT TWO: FRAUD AND DECEIT

13

Plaintiffs hereby incorporate paragraphs one (1-70) of the Complaint as if fully set forth herein

71.    Fraud in South Dakota pursuant to SDCL § 20-10-1 is defined as:

> One who willfully deceives another, with an intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

72.    Deceit in South Dakota pursuant to SDCL § 20-10-2 is defined as:

> (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true;
> (3) the suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact, or
> (4) a promise made without any intention of performing.

73.    The Circuit Court has already determined as a matter of fact and law that Defendant Harrie has committed "fraud," "deceit", "dishonesty" and "misrepresentation" in his actions in practicing law in the State of South Dakota without a South Dakota law license or by proper admission under pro hac vice.

74.    Harrie's law firm, Defendant Nilles Law Firm in Fargo, North Dakota, it is alleged, knew or should have known of Harrie's conduct, individually and/or collectively, and that Harrie had done similar things in the past with other clients and other cases.

75.    Harrie's conduct is legally imputed to that of the Nilles Law Firm as he is a partner in that firm and the Nilles Law Firm did or should have authorized and/or condoned all of Harrie's conduct in Civ. No. 12-105 and in other similar South Dakota personal injury and insurance claim defense claims and cases over the past years.

76.    Defendant Harrie and Defendant Nilles Law Firm, to Plaintiffs' best knowledge

14

and belief, have been hired by Defendant Nodak Mutual Insurance Company for many previous and subsequent personal injury and/or insurance defense cases out of South Dakota, other then the case involving Helgeson in Civ. No. 12-105. Nodak Mutual employed Harrie and Nilles, whereby Nodak paid Harrie and Nilles to represent Nodak itself and/or Nodak Insureds (such as Prochnow and Helgeson) in cases involving South Dakota events, courts and persons. Harrie and Nilles therefore served as Nodak's agents in an agency setting, and/or as employer and employee, and/or as master and servant under respondiat superior principles and considerations, at all times relevant to these proceedings.

77.     That therefore as a result of the agent and agency relationship and/or the employer/employee relationship of Nodak to Harrie and Nilles, Harrie's and Nills' conduct and knowledge, is also legally imputed to Nodak by either actual and/or constructive knowledge, awareness, permission, authorization (ostensible, actual, apparent and/or direct) and acquiesce.

78.     The fraudulent conduct of Harrie committed in South Dakota by and through his appearance though telecommunications, at hearings and/or depositions and by signing pleadings, forms the basis of the fraudulent inducement which occurred, and created a proximate cause and/or direct cause resulting in damage to Plaintiffs, the Court(s), and the public at large.

79.     Harrie's conduct in practicing law without a license in South Dakota in Civ. No. 12-105, and by intentionally not disclosing his unlicensed status to the Court, caused damage to Plaintiffs in the form of undue delay, pain and suffering, anxiety, mental anguish, intentional infliction of emotional distress, negligent infliction of emotional distress, worry, frustration, embarrassment, loss of peace of mind, humiliation, lost income, loss of trust in the Courts, pain and suffering, travel expenses, attorneys fees in excess of $200,000, litigant expenses in excess of $50,000, and other consequential losses.

80.     Harrie and Nilles, and Nodak, all intentionally and/or negligently and/or recklessly concealed and/or suppressed Harrie's and Nilles' unauthorized practice of law to the Court and to the Plaintiffs, since October 2012, when Harrie first signed an appearance in Fifth Circuit Court in Civ. No. 12-105, and through 2016.

81.     Harrie, Nilles and Nodak, intentionally misrepresented Harrie's status as a properly authorized or licensed attorney in South Dakota, since Harrie's first appearance in Civ. No. 12-105 in October 2012, and through 2016.

82.     Harrie, Nilles and Nodak, intentionally deceived the Plaintiffs (and the Courts) by Harrie's unauthorized practice of law in South Dakota since his first appearance in Civ. No. 12-105, in October 2012 and through 2016.

83.     The individual and combined intentional and/or negligent conduct of the Defendants Harrie, Nilles and/or Nodak, on a joint and several basis, in defrauding, concealing, suppressing, misrepresenting, and deceiving the Plaintiffs (and the Courts and the public) by Harrie's unauthorized practice of law in South Dakota in Civ. No. 12-105, from October 2012 through 2016, directly and/or indirectly induced the Plaintiffs (and the Courts) to continue spending time, money, expense, emotional energy, and physical and emotional effort on pursuing justice in Civ. No. 12-105, not knowing of Harrie's concealed and undisclosed unauthorized practice of law, all to Plaintiffs' detriment and damage.

84.     By committing fraud, deceit, dishonesty and misrepresentation in these matters, the Defendants, proximately and directly caused damage to the Plaintiffs in the form of attorneys fees, costs of litigation, intentional/negligent infliction of emotional distress, anxiety, pain and suffering, worry, frustration, humiliation, embarrassment, loss of peace of mind, loss of trust in the court system, lost income, travel expenses and other consequential losses.

16

## COUNT THREE:
## CIVIL CONSPIRACY AGAINST DEFENDANTS HARRIE, NILLES LAW FIRM, AND NODAK INSURANCE COMPANY

Plaintiffs hereby incorporate paragraphs one through eight four (1-84) of the Complaint as if fully set forth herein.

85.     Since the time of initiation of the litigation in Civ. No. 12-105, and now as of the date of the present action, Nodak Mutual Insurance Company has changed its name to Nodak Insurance Company which is a subsidiary of a holding company known as Nodak Mutual Group, Inc., in Fargo, North Dakota.  Nodak Insurance Company is a wholly owned subsidiary of N.I. Holdings, Inc., in Fargo North Dakota.  Nodak Mutual Group, Inc., is a mutual holding company recently formed and owns 55% of the N.I. Holdings, Inc., All of the Nodak Companies, including N.I. Holdings, are located in and have registered agents in Fargo, North Dakota.

86.     Conspiracy to violate the law, occurs when one or more parties (persons, artificial persons, entities, companies, corporations, etc.), agree to violate the law.  In this action, Plaintiffs' best knowledge and reasonable belief suggests that all Defendants knew of Harrie's conduct in the case of Civ. No. 12-105, and potentially in many other previous and/or subsequent claims and cases, and all defendants conspired to continue to violate the law of the unauthorized practice of law in South Dakota courts.

87.     That between October 12, 2012 and January 21, 2016 Defendants Nodak, Harrie and Nilles, knew or should have reasonably known that Harrie was practicing law in South Dakota without a license, with the full permission, consent, acquiescence and/or knowledge of all Defendants..

88.     According to Plaintiffs' best knowledge and belief, Defendants Harrie, Nilles and Nodak have both suppressed and failed to reasonably disclose their use of unlicensed attorneys, to its policyholders and to the public, as well as to the Courts and to party opponents, when suppression of these facts is likely to, and actually does, mislead the policyholders, courts and litigants, as it did Plaintiffs, here.

89.     According to Plaintiff best knowledge and belief, Defendants Harrie, Nilles Law Firm and Nodak, have and may have been committing the unauthorized practice of law, in the State of South Dakota on many other similar insurance related and personal injury actions and claims in South Dakota, such as the one involving Helgeson in Civ. No. 12-105, in the past, present, and since January 2016.

90.     The arrogant and snub nature in which Defendant Harrie conducted himself in the tort action in Civ. No. 12-105, before he was caught in his unauthorized practice of law conduct in 2016, reasonably suggest that he and his firm, as the main legal defense firm for Nodak Insurance Company's insurance claims and cases in North and South Dakota, may be utilizing or have utilized, unlicensed attorneys in other claims in South Dakota, with the apparent and /or actual knowledge, consent, permission, and/or acquiescence of Nodak Insurance Company and of course, Harrie and Nilles.

91.     Harrie's and Nodak's conduct in Civ. No. 12-105 suggests that it was no significant concern that Harrie was practicing law in South Dakota without a license to do so. That conduct suggest culpability and an intent to continue to do so. If that is true, then such is a conspiracy to violate state law and the rules of the South Dakota Courts, and the rights and remedies of party opponents such as Plaintiffs here.

92.     The effect of this alleged civil conspiracy is to violate state, tribal and federal law,

18

to breach duties of reasonableness, ethics, good faith and fair dealing, and to unfairly defraud, and to deceive innocent party litigants, opponents, claimants, the Courts and the public, and consumers in general, including Plaintiffs here.

93.     Nodak, as an insurance corporation along with its parent and subsidiary companies, N.I. Holdings, Inc., and Nodak Mutual Group, Inc., are required to abide by the laws of any state where they transact the business of insurance (sales, marketing, claims handling, etc.). therefore, Nodak and its companies are required to abide by the specific South Dakota insurance regulation statutes such as SDCL §58-6-1, 58-6-2, 58-33-49, 58-33-66 (2), 58-33-67, and 58-33-68.

94.     The alleged civil conspiracy committed by the Defendants as mentioned herein, proximately and directly caused damage to the Plaintiffs as previously enunciated in Counts I, II and III.

## COUNT FOUR: BARRATRY/ABUSE OF PROCESS

Plaintiffs hereby incorporates paragraphs one through ninety four (1-94) of this Complaint as if fully set forth herein.

95.     According to Plaintiffs' best knowledge and reasonable belief, Harrie's conduct in the civil action in South Dakota Circuit Court Civ. No. 12-105, was an abuse of the civil process was done with knowledge, foresight, awareness, and reckless disregard of Harrie's true status as an unlicensed/unauthorized attorney to practice law in South Dakota.

96.     Defendant Harrie's conduct is imputed to that of his firm, Nilles, and to his employer and principal Nodak though agency principles and respondiat superior, so that if any abuse of the civil legal process had occurred as alleged in Civ. No. 12-105, and/or in previous

and/or subsequent civil claims or actions, then all of the Defendants are liable to the Plaintiffs under a theory of joint and several liability.

97.    Barratry in South Dakota pursuant to SDCL § 20-9-6.1 is defined as:

> Claim of barratry. Barratry is the assertion of a frivolous or malicious claim or defense or the filing of any document with malice or in bad faith by a party in a civil action. Barratry constitutes a cause of action which may be asserted by filing a pleading in the same civil action in which the claim of barratry arises or in a subsequent action. A claim of barratry shall be determined in the same manner as any other substantive cause of action asserted in that civil action.

98.    According to Plaintiffs' best knowledge and reasonable belief, Defendant Harrie, Nilles and Nodak knew that Harrie and others at the Nilles Law Firm, were getting hired by Nodak on insurance defense and personal injury defense claims and cases in South Dakota (and possibly in other states), when Harrie and/or any other attorneys from the Nilles Law Firm were not licensed to practice law in South Dakota.

99.    According to Plaintiffs best knowledge and reasonable belief, that if Defendants all knew that such unauthorized practice of law was occurring in South Dakota on said claims and cases, and the Defendants purposefully and intentionally proceeded in the face of that known fact, then such intentional and/or reckless conduct would and was conducted in a malicious way and with bad faith toward the Courts, the public, and to the innocent opposing parties, such as Plaintiffs here.  Such malicious and/or bad faith conduct, constitutes barratry, and constitutes a separate cause of action against each of the Defendants individually, and jointly and severally. Barratry and abuse of process are claims that stand on their own as separate and distinct violations of the law beyond, fraud, deceit, conspiracy, the unauthorized practice of law, negligence, or punitive damages.

100.    Plaintiffs suffered separate harm and damage as a result of the Defendants'

20

barratry and abuse of process conduct, which proximately and directly caused said damage in the form of pain and suffering, intentional/negligence infliction of emotional distress, anxiety, mental suffering, worry, embarrassment, undue delay, humiliation, loss of peace of mind, loss of trust in the court system, attorneys fees, litigation costs, travel expenses, loss of income, and other consequential losses.

### COUNT FIVE: PUNITIVE DAMAGES

Plaintiffs hereby incorporate paragraphs one through one hundred (1-100) of this Complaint as if fully set forth herein.

100.     According to Plaintiffs' best knowledge and belief, in doing all the things herein alleged, Defendants Harrie, Nilles and/or Nodak Insurance Company acted intentionally, recklessly, wantonly, vexatiously, oppressively and/or maliciously and were guilty of a wanton and reckless disregard of the contractual, common law and statutory rights of the Plaintiffs.

101.     Plaintiffs are entitled to punitive damages as the only way of deterring Defendants Harrie, Nilles and/or Nodak Insurance Company from continuing to employ these wrongful, oppressive, deceitful, fraudulent, unreasonable and vexatious tactics against innocent party/litigants, including, but not limited to, Plaintiffs, and the Courts of South Dakota and the public at large.

WHEREFORE, Plaintiffs request for judgment individually, and jointly and severally, against each of the Defendants as follows:

1.     For the actual expenses incurred in the full and complete compensation for all tort and statutory damages sustained by Plaintiffs in the subject incident and as a result of the Defendants' fraud, deceit, civil conspiracy, abuse of process, barratry, unauthorized practice of law, negligence, reckless conduct, and any and all subsequent and nondisclosure conduct, and

for the actual expenses incurred incidental to the said damages, past, present and future, and to the procuring of said expenses, reimbursements, losses and damages to the date of trial, together with interest thereon;

2.  For such monetary compensation as shall fully compensate for all of the losses, including, but not limited to, pain and suffering, mental anguish, worry, anxiety, frustration, humiliation, embarrassment, loss of income, travel expenses, undue delay, negligent and intentional infliction of emotional distress, loss of trust, loss of peace of mind, attorneys fees, litigation costs and consequential loss sustained by Plaintiffs to the date of trial with interest thereon and which is likely to continue into the future, in a sum to be determined by the jury in this case;

3.  For an additional sum as and for punitive or exemplary damages in an amount to be set by the jury herein, based upon the best financial information available as to each Defendant according to SDCL §21-3-2.

4.  For Plaintiffs' attorney fees, costs, and expenses of these proceedings, and because of Defendants' vexatious, unreasonable, intentional and abusive conduct;

5.  For prejudgment interest on any award to which Plaintiffs are held entitled by the jury; and

6.  For such other and further relief as the Court deems just and equitable.

DATED this 18th day of January, 2018.

ABOUREZK, ZEPHIER, & LAFLEUR


By: /s/ Robin L. Zephier
    Robin L. Zephier
    Attorney for Plaintiffs
    PO Box 9460

2020 West Omaha Street
Rapid City, South Dakota 57709
(605) 342-0097

Seamus Culhane
Turbak Law Office, P.C.
26 W. Broadway, Suite 100
Watertown, SD 57201-3670
(877) 380-8517

**TRIAL BY JURY IS HEREBY REQUESTED**