UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE OF WINFIELD THOMPSON, MELISSA PROCHNOW and JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nichol Helgeson, and the ESTATE OF NICHOLAS HELGESON,<br><br>Plaintiffs,<br><br>v.<br><br>WILLIAM HARRIE and THE NILLES LAW FIRM a/k/a NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY (f/k/a NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),<br><br>Defendants. | Case No. 4:19-cv-04023-LLP<br><br>**NODAK DEFENDANTS' BRIEF OPPOSING RULE 12(b)(6) MOTION OF DEFENDANT HARRIE AND DEFENDANT NILLES** |

## INTRODUCTION

William Harrie and The Nilles Law Firm ("Lawyer Defendants") seek dismissal of the Complaint based upon Rule 12(b)(6) for failure to state a claim. The sole basis for the Lawyer Defendants' motion is the assertion a legal malpractice claim is not assignable which presents an issue of first impression under South Dakota law. Nodak Insurance Company, Nodak Mutual Insurance Company, Nodak Mutual Group, Inc. and N.I. Holdings, Inc.

(collectively, "Nodak") oppose the motion because, at best, it is premature and Rule 12 should not be used to decide issues of first impression. Nodak also opposes the motion to the extent it implies complete dismissal is appropriate when Nodak has properly asserted cross-claims against the Lawyer Defendants and the Lawyer Defendants have not, at this point, sought dismissal of the cross-claims.

## FACTUAL BACKGROUND

Winfield Thompson, Sr. and Nicolas Helgeson were involved in a car accident on November 6, 2009 in South Dakota. [Am. Compl., ¶¶ 9, 12.][1] Nodak Insurance Company insured the vehicle Helgeson was driving at the time of the accident. [Am. Compl., ¶ 10.] Nodak Insurance Company hired and paid William Harrie and The Nilles Law Firm to defend Helgeson pursuant to the terms of the liability insurance policy against claim brought by Thompson's estate. [Am. Compl., ¶ 23.] Harrie signed the Answer interposed on Helgeson's behalf and made a handful of appearances in the South Dakota liability action. [Am. Compl., ¶ 36.]

Harrie, however, was not licensed to practice law in South Dakota. [Am. Compl., ¶ 43, 44.] When the court in the liability action learned Harrie was not properly licensed it quashed the Answer and granted default judgment on liability against Helgeson. [Am. Compl., ¶ 71, 72.] Nodak then hired and paid Mark Arndt, a Sioux Falls attorney, to replace Harrie and Nilles and to defend Helgeson. [Am. Compl., ¶ 74.] Nodak subsequently learned that Harrie had failed to inform Nodak (and Helgeson) that he had received a time-limited policy limits settlement demand of $100,000. [ECF 9, ¶ 115.]

---

[1] The Amended Complaint, dated January 9, 2019 (hereinafter "Am. Compl.") was attached to the Notice of Removal and can be found in ECF 1-2 at pages 92 to 131.

Arndt was unsuccessful in getting the default set aside and a jury trial with respect to damages was held on November 1, 2017. [Am. Compl., ¶¶ 75, 77, 78.] The jury ultimately awarded the Thompson estate $127,000. [Am. Compl., ¶ 78.] Helgeson had previously passed away due to unrelated causes. Following the jury's verdict Nodak paid its policy limits in partial satisfaction of the judgment obtained. [Am. Compl., ¶ 79.] After a prior action against Nodak and the Lawyer Defendants were dismissed, Thompson obtained an assignment from Helgeson's estate and commenced this action. Nodak interposed an Answer and asserted cross-claims against the Lawyer Defendants. [ECF 9.]

## **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "[A]lthough a complaint need not include detailed factual allegations, 'a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" C*.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir. 2010) (*quoting Twombly,* 550 U.S. at 555). The factual content in the complaint must "allo[w] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal-Mart Stores*, 588 F.3d 585, 594 (8th Cir. 2009) (*quoting Ashcroft,* 556 U.S. at 678). The court must "liberally construe a complaint in favor of the plaintiff." *Huggins v. Fedex Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). The court assesses plausibility by considering only the materials in the pleadings and exhibits attached to the complaint , drawing on experience and

common sense, and reviewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). A well-pleaded complaint will survive a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is remote and unlikely." *Twombly*, 550 U.S. at 556.

## ARGUMENT

### I. THE LAWYER DEFENDANTS ARE NOT ENTITLED TO DISMISSAL AT THIS STAGE OF THE PROCEEDINGS BECAUSE THE RECORD IS INCOMPLETE

The sole basis for the motion to dismiss is the assertion "[l]egal malpractice claims are not . . . assignable as a matter of law." [ECF 6, p. 9, #245.] Notwithstanding this bald assertion, the Lawyer Defendants acknowledge the South Dakota Supreme Court has not addressed the assignability of a legal malpractice action. [ECF 6, p. 10, #246.] As such, this Court must predict how the South Dakota Supreme Court would rule on the issue of whether a malpractice claim is assignable. S*ee Wittrock v. First Nat'l Bank in Sioux Falls*, No. 4:17-CV-04149-KES, 2018 WL 2186473, at *5 (D.S.D. May 11, 2018) (*citing, Raines v. Safeco Ins. Co. of Am.,* 637 F.3d 872, 875 (8th Cir. 2011) ("Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue."")).[2]

---

[2] Nothing in South Dakota's assignment statute prohibits the assignment of a legal malpractice claim. SDCL 43-42-2 provides that "[a] thing in action arising out of a right of property or out of an obligation may be transferred by the owner." *Id.* A "thing in action is a right to recover money or other personal property by a judicial proceeding." SDCL 43-42-1. A legal malpractice claim may be based in negligence or in breach of contract. *Haberer v. Rice,* 511 N.W.2d 279, 286 (S.D. 1994). Tort claims, like claims for negligence, are "things in action" and are therefore generally assignable. *Kobbeman v. Oleson,* 574 N.W.2d 633 (S.D. 1998) (upholding assignment of insurance malpractice claim); *Sherman v. Harris*, 36 S.D. 50, 153 N.W. 925 (1915) (tort action assignable), *overruled on other grounds by Simons v. Kidd*, 73 S.D. 280, 41 N.W.2d 840 (1950). There is no statutory basis to prohibit the assignment of a legal malpractice claim in South Dakota, nor any South Dakota case law announcing such a rule.

The Lawyer Defendants concede that some jurisdictions permit the assignment of a legal malpractice action. [ECF 6, p. 12, 248.] "Courts rejecting a *per se* bar of assigning legal malpractice claims generally analyze the assignability of a legal malpractice claim on a 'case by case basis.'" [ECF 6, p. 12, 248, *citing, Gurksk v. Rosenbaum & Filan, LLC*, 885 A.2d 163 (Conn. 2005).] According to the Lawyer Defendants, "sound public policy reasons" support the non-assignability of a legal malpractice action [ECF 6, p. 10, #246], and that such a rule is consistent with the privity rule followed by South Dakota. There are several flaws with the Lawyer Defendants' position.

First, the strict privity rule has nothing to do with whether a client can assign a malpractice claim. Instead, it simply addresses who can sue a lawyer for damages allegedly caused by the lawyer. *See Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 30, 652 N.W.2d 756, 769 ("to recover for a lawyer's negligence, a plaintiff must first show that an attorney-client relationship existed between the lawyer and the plaintiff.").

Second, even the strict privity rule has exceptions (discussed below). As such, the South Dakota Supreme Court has embraced a case-by-case analysis rather than absolute rule approach in the malpractice context. *See Friske v. Hogan*, 2005 S.D. 70, ¶ 16, 698 N.W.2d 526, 531. ("Although we are not prepared at this point to adopt Restatement (Third) of the Law Governing Lawyers, § 51(3) because it goes beyond the facts of this case, we approve the more limited holding from the *Schreiner* case and adopt this exception to the strict privity rule.")

Third, and perhaps most importantly, the public policy considerations the Lawyer Defendants insist prohibit the assignment of a malpractice action may or may not exist here.

For instance, the Lawyer Defendants contend "[a]uthorizing assignment of a malpractice claim to the opposition party in the underlying action creates 'a demeaning reversal of roles,' which would severely undermine the credibility of the lawyers and the legal system." [ECF 6, p. 12, #248.] According to the Lawyer Defendants "[t]o prove causation on the malpractice claim, the party receiving the assignment would have to prove that they would have **lost** in the underlying litigation but for the attorneys' negligence." [ECF 6, p. 12, #248.] Such "diametrically" opposition positions should not be permitted because such "abrupt and shameless shift of positions" would give the public a bad perception of lawyers and litigation. (*Id.*).

Here, it is not possible to determine what exactly Thompson, standing in Helgeson's shoes, is complaining about so on this record it is impossible to determine whether any of the public policy reasons advanced by the Lawyer Defendants even apply. For instance, to the extent the legal malpractice claim is premised on the fact Harrie was not properly licensed in South Dakota or that he failed to communicate a time sensitive settlement demand to his clients those actions would not involve a "shameless shift of position" or give anyone the impression that litigation is a "mere game".

As such, when public policy is presented as the sole basis for adoption of an absolute rule it is imperative for the court to have a complete record in order to fully evaluate the policy considerations at play. Notably, in refusing to apply a strict privity rule in *Hogan* the South Dakota Supreme Court rejected some of the same public policy reasons advanced by the Lawyer Defendants for application of an absolute non-assignability rule here. *Friske v. Hogan*, 2005 S.D. 70, ¶ 11, 698 N.W.2d 526, 529. Simply put, this Court should be extremely

reluctant to make predictions about South Dakota law without a more complete record. *See Stuart v. Springs Indus., Inc.*, No. CIV.A. 0:12-373-CMC, 2012 WL 3597213, at *2 (D.S.C. Aug. 20, 2012) ("This is an important and novel question which this court declines to decide on motion to dismiss, particularly as the proper resolution may be clarified by further development of the facts.") (*citing, Unysis Corp. v. South Carolina Budget and Control Bd. Div. of Gen. Servs.,* 346 S.C. 158, 551 S.E.2d 263 (S.C. 2001) ("[a]s a general rule, important questions of novel impression should not be decided on a motion to dismiss" unless development of the record will not aid in the resolution of the issues)).

## II. THE LAWYER DEFENDANTS ARE NOT ENTITLED TO DISMISSAL OF NODAK'S CROSS-CLAIMS

The motion to dismiss does not include any of the cross-claims asserted by Nodak. In addition, the sole basis for the motion – the claimed non-assignability of a legal malpractice claim -- does not apply to Nodak because it had an attorney-client relationship with Harrie and Nilles. As such, a blanket dismissal of the Lawyer Defendants would not be appropriate.

Nodak hired and paid for Harrie and Nilles to defend Helgeson. With respect to the defense of the underlying tort claims Nodak and Helgeson shared a common-interest. As such, Nodak and Helgeson both had an attorney-client relationship with Harrie and Nilles. In fact, the very case the Lawyer Defendants cite for proposition a legal malpractice claim is not assignable recognizes that a lawyer may have more than one client and that such a relationship may be express or implied. *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 27, 652 N.W.2d 756, 768 (*citing, Keegan,* 519 N.W.2d at 611) (citation omitted).)

In *Glover,* the South Dakota Supreme Court noted that an attorney-client relationship is created when:

> (1) a person seeks advice or assistance from an attorney; (2) the advice or assistance sought pertains to matters within the attorney's professional competence; and (3) the attorney expressly or impliedly agrees to give or indeed gives the advice or assistance.

*Id.* (*quoting, McVaney v. Baird, Holm, McEachen, Pedersen, Hamann & Strasheim,* 237 Neb. 451, 466 N.W.2d 499, 506 (1991).

Here, Nodak undeniably sought advice and assistance from the Lawyer Defendants and the Lawyer Defendants held themselves out as competent to provide such advice. More importantly, the Lawyer Defendants expressly agreed to the retention by Nodak and agreed to provide the legal services requested. This is more than sufficient to establish an attorney-client relationship. Moreover, whether an attorney-client relationship existed is ordinarily a question of fact. *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 24, 652 N.W.2d 756, 767 (*citing, Keegan v. First Bank of Sioux Falls,* 519 N.W.2d 607, 611 (S.D.1994). As such, Rule 12 dismissal is not appropriate.

Even if a formal attorney-client relationship did not ultimately exist between Nodak and the Lawyer Defendants, Nodak was clearly an intended beneficiary of the attorney-client relationship between the Lawyer Defendants and Helgeson such that the Lawyer Defendants wed Nodak a duty of care. In *Friske v. Hogan*, 2005 S.D. 70, ¶ 12, 698 N.W.2d 526, 530 the South Dakota Supreme Court recognized that even certain non-clients can sue a lawyer for malpractice. In doing so, the court noted:

> The Restatement (Third) of the Law Governing Lawyers provides that a lawyer may owe a duty of care to nonclients when and to the extent that:

> (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
>
> (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and
>
> (c) the absence of such a duty would make enforcement of those obligations to the client unlikely.

*Id. (quoting,* Restatement (Third) of the Law Governing Lawyers, § 51(3) (2004)).

According to the Court in *Hogan*, "[w]e have previously noted that other jurisdictions have recognized an exception to the strict privity rule, 'particularly in contract actions. . . .'" *Id.* at ¶ 12, 698 N.W.2d 526, 530. The court then created an exception allowing non-client to pursue recovery in the will and trust context where the non-clients were among the beneficiaries of the lawyers work. While the court did not adopt the Restatement (Third) of the Law Governing Lawyers, § 51(3) in toto it created an exception to the rule and held:

> Hogan [lawyer] knew that Doug [client] intended as the primary objective that the services benefit the nonclients, such a duty would not significantly impair Hogan's performance of his obligations to Doug, and the absence of such a duty would make enforcement of those obligations unlikely. Under this exception to the strict privity rule, nonclient beneficiaries, such as the Friske children, may maintain a malpractice action against the attorney who drafted the testamentary instrument.

*Id.* at ¶¶ 16-17, 698 N.W.2d 526, 531.

Here, the Lawyer Defendants knew that they were being asked to defend Helgeson and that doing so was part-and-parcel of Nodak's contractual obligation to defend and indemnify Helgeson under the Nodak insurance policy. The Lawyer Defendants owed duties to both Helgeson and Nodak and requiring such duties did not in any way impair the duties owed to Helgeson. In fact, Helgeson and Nodak shared a common interest with respect to the defense of Thompson's claims and the duties owed by the Lawyer Defendants were

completely aligned. Lastly, by not acknowledging and allowing a duty to exist between Nodak and the Lawyer Defendants makes enforcement of the Lawyer Defendants obligation difficult, if not, impossible.

## CONCLUSION

The Lawyer Defendants' motion to dismiss is premature to say the least. This Court should be reluctant to address an issue of first impression and create a sweeping absolute non-assignment rule without a full and complete record that allows an evaluation of the claimed public policy considerations at play. The motion also does not apply to the cross-claims brought by Nodak nor could it since an assignment is not necessary for Nodak to seek redress from the Lawyer Defendants.

Date: April 1, 2019

*/s/ Angela Brandt*

Angela Beranek Brandt (#3091)
LARSON • KING, LLP
30 East Seventh Street, Ste. 2800
Saint Paul, MN  55101
(651) 312-6500 | Fax: (651) 312-6618
abrandt@larsonking.com

**Attorneys for Nodak Defendants**

LK 1828031