UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE of WINFIELD THOMPSON, MELISSA PROCHNOW AND JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM HARRIE and THE NILLES LAW FIRM, aka NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY, (fna NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company),<br><br>Defendants. | Civ. No.: 4:19-cv-04023-LLP<br><br><br><br>**BRIEF IN RESPONSE TO DEFENDANT WILLIAM HARRIE'S AND DEFENDANT NILLES LAW FIRM'S MOTION TO DISMISS** |

Plaintiffs, by and through their counsel of record offer the following in response to William Harrie's and the Nilles Law Firm's Motion to Dismiss the claims against them.

1

# Contents

INTRODUCTION ................................................................................................. 2
UNAUTHORIZED PRACTICE OF LAW & LEGAL MALPRACTICE ............... 3
ASSIGNMENT OF CLAIMS AGAINST HARRIE AND NILLES IS
ACCEPTABLE ..................................................................................................... 5
    Attorneys act zealously with or without the prospect of assigned legal
    malpractice claims. ............................................................................................ 5
    Confidentiality is waived in a legal malpractice claim by either client or assignee.
    ............................................................................................................................ 5
    Allowing assignments on a case-by-case basis does not incentivize the practice
    of assigning legal malpractice claims nor lead to collusion. ............................. 6
    Assignments of legal claims do not debase the legal profession and an
    assignment in this case does not create diametric opposition. ........................... 6
CONCLUSION ..................................................................................................... 7

## INTRODUCTION

William Harrie ("Harrie"), a North Dakota attorney and the firm he is acting on behalf of, The Nilles Law Firm, are chosen and paid by Nodak Insurance Company and Nodak Mutual Group, Inc. ("Nodak") to provide a civil defense to Nicholas Helgeson ("Helgeson") after Helgeson causes a South Dakota car crash that kills two people. Helgeson is sued in South Dakota because of the crash and Nodak is court ordered to provide a defense and indemnity coverage following a South Dakota bench trial.

Yet, Harrie does a poor job of providing Helgeson a civil defense. Harrie is from North Dakota, does not now and to the best of Plaintiffs' knowledge, has never held a South Dakota law license – nor been admitted to practice in South Dakota. First, Harrie exposes Helgeson to a potential judgment not on the merits of the claim by failing to Answer the Complaint against Helgeson arising from the wrongful death suits.

2

Then, Harrie continues to practice law in South Dakota by signing formal pleadings and making formal court appearances without any admission nor license. Meanwhile, Harrie refuses to communicate with Helgeson regarding offers by parties opposing Helgeson to resolve the claim(s) against Helgeson within the scope of Hegelson's court-ordered indemnity coverage, thereby exposing Helgeson (and eventually after Helgeson died, Helgeson's Estate) to a verdict in excess of the Nodak insurance coverage.

Eventually, the trial court having been mislead and believing its self to be a victim of fraud by Harrie, enters default against Helgeson. A trial on the damages Helgeson owes the Estate of Winfield Thompson and Beneficiaries of Thompson's wrongful death claim is held. Indeed, Helgeson's Estate is hit with a verdict in excess of Helgeson's coverage. Helgeson's Estate then voluntarily assigns the legal claims, and this action was instituted in the Estate's name. Now, the "lawyer" defendants request that the Court grant them judgment as a matter of law. But, they are not entitled to judgment in their favor.

## UNAUTHORIZED PRACTICE OF LAW & LEGAL MALPRACTICE

The "lawyer" defendants' motion is primarily premised on case law around the country that indicates that even when a lawyer commits malpractice, the claims against the lawyer cannot typically be assigned. This motion should be denied for two reasons. First, the "lawyer" defendants were not "lawyers" under South Dakota law when they caused Helgeson damages therefore they do not deserve the favorable rules disfavoring the assignment of legal malpractice claims. Second, even if they were attorneys under the law, a case-by-case approach to the assignment of legal malpractice claims makes a lot more sense in this case than does absolving the "lawyer" defendants.

3

William Harrie was already found by the Circuit Court overseeing the underlying action to have committed dishonesty, fraud, deceit or misrepresentation as a result of practicing law without a South Dakota license. (Amended Complaint at ¶56.) "Without this license, no matter how learned he may be in the law, he is not an attorney." *Danforth v. Egan*, 23 S.D. 43, 49 (1909). "We thus find that the word "attorney," when applied to the law, has long since had an established meaning, and refers only to parties licensed to practice." *Id.* at 52. Allowing Harrie to obtain the benefits of having non-assignable claims against him simply by virtue of being an attorney, yet not following any of the required steps to become either licensed or admitted pro hac vice pursuant to SDCL § 16-18-2 creates an absurd result. Judge Schrier did rule in the Memorandum Opinion dated 09/19/18 (Civ 4:18-cv-04022-KES) that unauthorized practice of law essentially is for "legal negligence."

However, this prior ruling creates a strange result where if someone else committed the same fraud on the court that Harrie did, a banker for example, holding himself out as an attorney meanwhile missing deadlines, breaching standards of care required of attorneys, and ultimately exposing the "client" to a judgment and then a judgment in excess of his "clients" coverage, that banker would be liable to the "client" and there is nothing about that claim that would be non-assignable to another to satisfy the excess verdict.

In one South Dakota case, *Persche v. Jones,* 387 N.W. 2d at 36-37 the Court confirms that if a banker performs the acts of an attorney, he becomes liable in tort. The strange result occurs because the same fraud that Harrie committed upon the trial court and his client is the fraud that he is now claiming protection within. If Harrie is allowed that protection, there exists an absurd result. It is cases like this one that illustrate why not all states do not follow the "strict privity" rule completely banning assignment of all legal malpractice claims.

4

## ASSIGNMENT OF CLAIMS AGAINST HARRIE AND NILLES IS ACCEPTABLE

When the reasoning behind the propositions that the defense cites from *Gurski v. Rosenblum & Filan, LLC*, 885 A2d 163, and *Wegener v. McDonald*, 509 N.W.2d 188 (1992) is evaluated against the facts of this case, it becomes obvious that Harrie and Nilles should not be granted the "lawyer" protection they request.  A case by case is more appropriate, *Gurski* at 172.  A recent Utah Supreme Court decision articulates why this is true and why the varying policy underpinnings are misleading or unfair. *Eagle Mt. City v. Parsons Kinghorn & Harries*, P.C., 408 P.3d 322.

**Attorneys act zealously with or without the prospect of assigned legal malpractice claims.**

Attorneys in the first instance are expected to act zealously on behalf of their clients, and adversaries in the first instance do not strike back.  If they do so, relatively recent updates to Rule 11 and resulting sanctions combined with sanctions for violating rules of professional conduct prevent frivolous lawsuit.  This whole argument is farfetched.  *Eagle Mt. City* at 330 citing *New Hampshire Ins. Co.*, 707 N.E.2d at 336-37; *Gregory v. Lovlien*, 174 Ore. App. 483, 26 P.3d 180, 184 n.6 (Or. Ct. App. 2001); 82 Tex. L. Rev. 481, 498 (2003).  Ultimately, fear that a malpractice claim could be assigned would lead to *more* zealous advocacy, not less.

**Confidentiality is waived in a legal malpractice claim by either client or assignee.**

Once an attorney is sued by a client, client confidentiality is waived and a lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary "To establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client [ . . .]." SD Rules of Professional Conduct, 1.6 (b)(3). Voluntarily assignment of the claims via freedom of contract does not change the scope of the

5

waiver. Therefore, the attorney-client privilege does not justify a complete bar to voluntary assignments. *Eagle Mt. City* at 331.

**Allowing assignments on a case-by-case basis does not incentivize the practice of assigning legal malpractice claims nor lead to collusion.**

Courts routinely look at assignment of legal claims based upon three prior occurrences, primarily a serious concern that a consented judgment will not reflect the actual loss. A consented judgment, an assignment against the litigation counsel, and a promise not to enforce the judgement. *Skipper v. ACE Prop. & Cas. Ins. Co., 413 S.C. 33, 775 S.E.2d 37, 38 (S.C. 2015)*. Here, there was no such concern. There was 8 years of difficult litigation between the underlying parties concluding in a jury trial and verdict. Is it not as though Nicholas Helgeson nor his Estate was ever colluding with Thompsons and their counsel nor artificially inflating the judgment. It was entirely the opposite – a jury determined the verdict.

**Assignments of legal claims do not debase the legal profession and an assignment in this case does not create diametric opposition.**

The damages caused to Helgeson and his Estate were primarily as a result of failures to contact Helgeson and his Estate regarding settlement discussions that would have allowed the dismissal of the claims against Helgeson and his Estate within the insurance policy limits. Further, damages were as a result of a default entered because Harrie refused to request admission as an attorney in South Dakota and default was entered. There is little issue of strategy. All parties to the underlying litigation *wanted* the insurance policy limits to be offered and it would have unquestionably resolved the dispute.

Yet, both Helgeson and his Estate were unaware of Harrie's failures to meaningfully conduct settlement negotiations that would have led to that resolution. Meanwhile, it does not

take a clever advocate or a shift in positions among parties or attorneys to demonstrate that committing fraud on a court for failing to be admitted as an attorney in that court to practice law is *below the standard of care* and that should not have happened. This case is completely devoid of reasons to prevent the assignment of the legal malpractice claims. In fact, not allowing the assignment of these claims could let a lawyer and law firm that committed fraud on a South Dakota court to escape without any repercussions.

## CONCLUSION

For these reasons, the "lawyer" defendants' motion must be denied.

Dated April 1, 2019.

                                          TURBAK LAW OFFICE, P.C.
                                          Attorneys for Plaintiff

                                          By: Seamus W. Culhane
                                               26 South Broadway, Suite 100
                                               Watertown, SD 57201
                                               605-886-8361
                                               seamus@turbaklaw.com