UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| TERESA ANN THOMPSON, INDIVIDUALLY AND AS SPECIAL ADMINISTER OF THE ESTATE OF WINFIELD THOMPSON, SR., DECEASED; MELISSA PROCHNOW, AS SPECIAL ADMINISTRATOR(S)/PERSONAL REPRESENTATIVE(S) OF THE ESTATE OF NICHOLAS HELGESON; AND JAMIE HELGESON, AS SPECIAL ADMINISTRATOR(S)/PERSONAL REPRESENTATIVE(S) OF THE ESTATE OF NICHOLAS HELGESON;<br><br>Plaintiffs,<br><br>vs.<br><br>WILLIAM HARRIE, THE NILLES LAW FIRM, NODAK INSURANCE COMPANY, NODAK MUTUAL GROUP, INC., A MUTUAL HOLDING COMPANY; AND N.I. HOLDINGS, INC., AN INTERMEDIATE STOCKHOLDING COMPANY;<br><br>Defendants. | 4:19-CV-04023-KES<br><br>ORDER GRANTING MOTION TO DISMISS |

Plaintiffs Teresa Ann Thompson, individually and as special administer of the estate of Winfield Thompson, Sr., deceased, the estate of Winfield Thompson, and Melissa Prochnow and Jamie Helgeson, as special administrator(s)/personal representative(s) of the estate of Nicholas Helgeson,

filed a complaint in state court alleging legal malpractice, fraud and deceit, civil conspiracy, barratry/abuse of process, breach of contract, breach of duty of good faith and fair dealing, bad faith, breach of fiduciary duty, and claims for attorney fees, exemplary damages, and punitive damages against defendants William Harrie, the Nilles Law Firm (collectively "the lawyer defendants"), Nodak Insurance Company, Nodak Mutual Group, Inc., and N.I. Holdings, Inc. (collectively "Nodak"). Docket 1-2. Defendants removed the case to this court. Docket 1. The lawyer defendants move to dismiss all claims asserted against them by plaintiffs under Fed. R. Civ. P. 12(b)(6). Docket 5.[1] The lawyer defendants also move the court to take judicial notice of the entire court file in *Thompson v. Harrie*, 4:18-cv-04022-KES. Docket 7. Both Nodak and plaintiffs oppose the lawyer defendants' motion to dismiss. Dockets 18, 19. For the reasons that follow, the court grants the lawyer defendants' motion to dismiss.

## BACKGROUND

The facts alleged in the complaint, accepted as true, are as follows:

Winfield Thompson passed away as a result of injuries sustained in a 2009 motor vehicle accident with Nicholas Helgeson in South Dakota. In 2012, Teresa Thompson, daughter of Winfield Thompson, brought a wrongful death action in South Dakota against Helgeson, a resident of North Dakota. At the time of the motor vehicle accident, Helgeson (now deceased) was an insured under Nodak's automobile insurance policy. Nodak hired the lawyer

---

[1] Nodak also filed crossclaims against the lawyer defendants, but such crossclaims are not subject to a motion to dismiss.

defendants, located in Fargo, North Dakota, to defend Helgeson in the wrongful death action brought by Teresa Thompson. In 2014, Teresa Thompson's attorney sent a letter to Harrie, which included a settlement demand to Winfield Thompson's estate for the policy limit of $100,000. There was no response from Harrie, the Nilles Law Firm, Nodak, or Helgeson.

Harrie filed pleadings on behalf of Helgeson and appeared as counsel for Helgeson at a deposition and in two court hearings. Harrie was and is licensed to practice law in North Dakota, but he was not licensed to practice law in South Dakota and was not admitted pro hac vice to practice in South Dakota for the wrongful death action. As a result, the state court entered a default judgment against Helgeson. At a trial on damages, a jury awarded $127,000 to Winfield Thompson's estate, and a judgment was entered in favor of Thompson's estate and against Helgeson's estate.

Plaintiffs Teresa Thompson, individually and as special administer of the estate of Winfield Thompson, and the estate of Winfield Thompson brought four causes of action against the lawyer defendants and Nodak in *Thompson v. Harrie*, 4:18-cv-04022-KES: unauthorized practice of law, fraud and deceit, civil conspiracy, and barratry/abuse of process. This court granted the lawyer defendants' motion to dismiss all counts and Nodak's motion to dismiss all counts. *See id.*, Dockets 21, 22.

The Thompson plaintiffs subsequently entered into an agreement with the Helgeson estate. Thompson's estate agreed not to execute on its judgment against Helgeson's estate in exchange for an assignment of the Helgeson

3

estate's potential claims against the lawyer defendants and Nodak. The parties entered into a written agreement formalizing the assignment on December 26, 2018. Melissa Prochnow and Jamie Helgeson, special administrators of the Helgeson estate, and the Helgeson estate are now listed as plaintiffs in this lawsuit. Other than the assignment of claims against the lawyer defendants and Nodak, plaintiffs' current lawsuit alleges the same underlying facts as the previous lawsuit and brings the same claims, with a few additional claims against Nodak.

## **LEGAL STANDARD**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The court determines plausibility by considering the materials in the pleadings and exhibits attached to the complaint, by drawing on experience and common sense, and by viewing the plaintiff's claim as a whole. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012). Inferences are construed in

4

favor of the non-moving party. *Id.* at 1129 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)). The court may also "consider 'those materials that are necessarily embraced by the pleadings.' " *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 998 (8th Cir. 2016) (quoting *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014)). "Those materials include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.' " *Id.* (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)). Materials that are part of the public record may also be considered in ruling on a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## DISCUSSION

The lawyer defendants contend that only two claims in plaintiffs' complaint are asserted against the lawyer defendants: legal malpractice in count 1 and punitive damages in count 5. Docket 6 at 8. In response, plaintiffs do not appear to object to this contention. *See* Docket 19. Thus, the court will only address these two claims.

### I.  Legal Malpractice

Under South Dakota law, a claim for legal malpractice requires four elements: (1) an attorney-client relationship that creates a duty, (2) the attorney breached that duty, (3) the attorney's breach proximately caused an injury to the client, and (4) the client sustained damages. *Hamilton v. Sommers*, 855 N.W.2d 855, 862 (S.D. 2014). In the previous lawsuit, this court

5

determined that the Thompson plaintiffs failed to state a claim against the lawyer defendants for legal malpractice because the lawyer defendants, as counsel for Helgeson in the underlying litigation with Thompson, did not have an attorney-client relationship with the Thompson plaintiffs. *See Thompson v. Harrie*, 4:18-cv-04022-KES, Docket 21 at 7. Thus, the lawyer defendants did not owe a duty to the Thompson plaintiffs. *Id.*

Now Helgeson's estate has assigned any claim it has against Harrie, the Nilles Law Firm, and Nodak to the Thompson plaintiffs. The lawyer defendants argue that plaintiffs fail to state a claim upon which relief can be granted because, as a matter of law, a legal malpractice claim is not assignable. Docket 6 at 8. The lawyer defendants acknowledge that the South Dakota Supreme Court has not explicitly held that legal malpractice claims are not assignable. *Id.* at 10. But, they argue, there are strong public policy reasons that numerous other jurisdictions have recognized in concluding such claims cannot be assigned. *Id.* In response, plaintiffs contend that under a case by case approach, sometimes assignment of a legal malpractice claim is acceptable. Docket 19 at 3-6. Nodak argues that dismissing plaintiffs' claims against the lawyer defendants is premature at this stage. Docket 18 at 6.

The majority of courts have concluded that the assignment of a legal malpractice claim is against public policy for numerous reasons.[2] Some courts

---

[2] For a detailed discussion of the public policy considerations related to assignment of legal malpractice claims and a survey of numerous jurisdictions' analysis on the issue, *see Gurski v. Rosenblum & Filan, LLC*, 885 A.2d 163, 167-75 (Conn. 2005).

6

cite to the unique and personal relationship between an attorney and client involving a duty of confidentiality or note that assignment is incompatible with an attorney's fiduciary duty of loyalty to the client. *See Wagener v. McDonald*, 509 N.W.2d 188, 191 (Minn. Ct. App. 1993) ("We believe the assignment of legal malpractice claims is against Minnesota's public policy" in part because it is "incompatible with the attorney's duty to act loyally towards the client" and "incompatible with the attorney's duty to maintain confidentiality."). Others state that assignment would encourage commercialization of legal malpractice claims and increase the number of unwarranted malpractice actions. *See Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 316 (Tex. App. 1994) ("Most of the authorities disallowing assignment have reasoned that to allow assignability would make possible the commercial marketing of legal malpractice causes of action by strangers, which would demean the legal profession."). And some have cited to the risk of collusion between an assignor and assignee so the plaintiff in the underlying litigation could collect on his or her judgment. *See Coffey v. Jefferson Cty. Bd. of Educ.*, 756 S.W.2d 155, 157 (Ky. Ct. App. 1988) (noting that the assignment agreement appeared "so collusive that [it] should be held to be against public policy.").

  The minority view rejects an automatic bar on legal malpractice assignments, but instead favors a case-by-case determination on whether the cause of action may be assigned. *See Thurston v. Continental Cas. Co.*, 567 A.2d 922, 923 (Me. 1989) (concluding that the reasoning of other jurisdictions that "flatly prohibit" assignment of any legal malpractice claim is not

7

persuasive). Other jurisdictions have specifically concluded that, while not adopting a per se bar on assignability, assigning a legal malpractice claim to the adverse party in the underlying litigation is prohibited. *See Kommavongsa v. Haskell*, 67 P.3d 1068, 1078 (Wash. 2003) (reasoning that while some public policy concerns cited by other courts "may be overstated," the public policy concerns in the context of assignment to an adversary are "legitimate and persuasive."); *Freeman v. Basso*, 128 S.W.3d 138, 142 (Mo. Ct. App. 2004) (holding that public policy bars assignment of a legal malpractice claim to an adversary in the underlying litigation because "the parties attempting to bring a claim for legal malpractice are the very parties who benefited from that malpractice (assuming that it occurred) during a previous stage of this litigation.").

The South Dakota Supreme Court has not explicitly addressed whether a legal malpractice claim is assignable at all, or whether the claim can be assigned to the adverse party in the underlying litigation that gave rise to the alleged malpractice. Because the South Dakota Supreme Court has not addressed the issue, this court must place itself in the South Dakota Supreme Court's position and attempt to predict how the Court would likely resolve the matter. *See Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) ("Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue."). In making this prediction, a federal court "may consider 'relevant state precedent, analogous decisions, considered dicta, . . . and any

8

other reliable data.' " *Id.* (quoting *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997)).

The court begins with SDCL § 43-42-2, which provides that "[a] thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner." SDCL § 43-42-1 defines a thing in action as "a right to recover money or other personal property by a judicial proceeding." The first case the court considers is *Kobbeman v. Oleson*, 574 N.W.2d 633 (S.D. 1998). In *Kobbeman*, the plaintiff was injured in a car accident and collected the policy limits from the tortfeasor's insurance company. *Id.* at 634. To recover additional damages, he received an assignment of the tortfeasor's cause of action against his insurance agents, and in exchange, the plaintiff agreed not to execute on any judgment he might obtain against the tortfeasor. *Id.* The plaintiff then sued the tortfeasor's insurance agents for failure to obtain a requested umbrella insurance policy. *Id.* at 634-35. In this insurance malpractice action, the South Dakota Supreme Court upheld the "assignments of a cause of action in exchange for a covenant not to execute in instances of failure to procure requested insurance" as a "tenable method" to transfer a cause of action but held that the assignment became ineffective when the statute of limitations expired. *Id.* at 636, 641.

Despite the holding in *Kobbeman*, the court predicts that here, based on other previous decisions, the South Dakota Supreme Court would prohibit assignment of a legal malpractice case to the adversary of the underlying litigation. First, "South Dakota recognizes the common-law prohibition on the

9

assignment of personal injury claims." *A. Unruh Chiropractic Clinic v. De Smet Ins. Co. of South Dakota*, 782 N.W.2d 367, 370 (S.D. 2010). This is somewhat driven by the desire to prevent "maintenance and champerty, i.e., profiteering and speculating in litigation, 'which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law.' " *Id.* (quoting *McKellips v. Mackintosh*, 475 N.W.2d 926, 928 (S.D. 1991)). The Court, pointing to a public policy concern, noted that "maintenance, champerty, and the concerns underlying those doctrines continue to prohibit the assignment of litigation claims." *Id.*

The Court in *Unruh Chiropractic* also addressed the split of authority among jurisdictions on whether the prohibition on assignment of personal injury claims likewise prohibits the assignment of proceeds of a claim. *Id.* at 370-71. Examining the difference between legal and equitable assignments, the Court explained:

> The assignment of a personal injury claim is a legal assignment that involves the transfer of a present right which divests the assignor of all control over that which is assigned. On the other hand, one can only obtain an equitable assignment of a prospective settlement or judgment arising from a claim because it is an assignment . . . of a future right, such as money to be acquired in the future.

*Id.* at 372 (internal quotations and alterations omitted).

Thus, "legal assignments of claims directly implicate maintenance and champerty[,]" due to the assignor's transfer of control to the assignee. *Id.* But, the Court noted, other courts that enforce equitable assignments work around public policy concerns such as maintenance and champerty because the

10

"equitable assignor retain[s] exclusive control over his lawsuit and any settlement thereof." *Id.* (alteration in original) (internal quotation omitted).

While the South Dakota Supreme Court recognized the distinction between legal and equitable assignments, it also recognized that "equitable assignments violating public policy may not be enforced." *Id.* It further noted that although "public policy strongly favors freedom to contract," there are times when other public policy considerations or the general welfare of the public will outweigh one's freedom to contract. *Id.* at 372-73. The Court ultimately concluded that the assignment of proceeds to a personal injury claim was prohibited, stating "we leave it to the Legislature to balance the competing public policies and authorize assignments of proceeds should it determine that the opposing policy concerns no longer prohibit such assignments." *Id.* at 374.

The Court's careful analysis in *Unruh Chiropractic* shows that personal injury claims cannot be assigned, proceeds of personal injury claims cannot be assigned, and equitable claims that violate public policy cannot be assigned. This leaves little room for the assignment of claims, other than the insurance malpractice claim addressed in *Kobbeman,* under South Dakota law. It also shows how the South Dakota Supreme Court recognizes the importance of public policy considerations in determining whether an assignment is allowed at all.

In that vein, the South Dakota Supreme Court likewise endorses public policy considerations in the area of legal malpractice actions. For instance, in

11

*Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 769 (S.D. 2002), the South Dakota Supreme Court discussed how a legal malpractice claim requires a plaintiff to show that an attorney-client relationship existed between the lawyer and the plaintiff because "South Dakota has long subscribed to the strict privity rule in attorney malpractice cases." *Id.* The Court then noted that the strict rule of privity has not been relaxed in legal malpractice cases (like it has in other jurisdictions) in part because the rule "preserves an attorney's duty of loyalty to and effective advocacy for the client." *Id.* (citation omitted). And "[b]ecause trust and confidence between attorney and client are essential, the relationship requires greater protection from third-party claims than do nonconfidential relationships." *Id.* at 770.

*Kobbeman* indeed permitted the assignment of an insurance malpractice action, but it did not discuss any public policy considerations that may guide this court on a determination regarding assignment of legal malpractice actions. *Kobbeman*, 574 N.W.3d at 635-37. In legal malpractice actions, the South Dakota Supreme Court still prioritizes considerations such as the duty of loyalty, confidentiality, and the essential element of trust between lawyer and client—a relationship requiring "greater protection" than "nonconfidential relationships." *Chem-Age Indus.*, 652 N.W.2d at 769-70. These reasons—the duties pertaining specifically to the legal profession—are commonly cited by other courts as a reason why the assignment of a legal malpractice claim is against public policy. *See Wagener*, 509 N.W.2d at 190-92.

Thus, the South Dakota Supreme Court has (1) limited assignments in general in South Dakota, *see Unruh Chiropractic*, 782 N.W.2d at 370-74, and (2) relied upon the duties of loyalty and confidentiality as a matter of public policy to protect lawyers from "limitless" litigation, *see Chem-Age Indus.*, 652 N.W.2d at 769-70. Given these previous decisions, the court predicts that the South Dakota Supreme Court would follow the majority rule in concluding that a legal malpractice action cannot be assigned to the adversary in the underlying litigation. As such, the lawyer defendants' motion to dismiss for failure to state a claim is granted.

## II. Punitive Damages

Punitive damages are a form of relief and not a "claim" that is subject to a Rule 12(b)(6) motion to dismiss. *Benedetto v. Delta Air Lines, Inc.*, 917 F. Supp. 2d 976, 984 (D.S.D. 2013) (citing *Sec. Nat'l Bank of Sioux City v. Abbott Labs.*, 2012 WL 327863, at *21 (N.D. Iowa Feb. 1, 2012)). "[S]o long as there are surviving claims," punitive damages "are not subject to a motion to dismiss." *Sec. Nat'l Bank of Sioux City*, 2012 WL 327863, at *21; *see also Hoaas v. Griffiths*, 714 N.W.2d 61, 67 (S.D. 2006) (stating that the South Dakota Supreme Court has "consistently held that punitive damages are not allowed absent an award for compensatory damages." (quotation omitted)). Because plaintiffs' complaint is not being dismissed in its entirety and no party is being dismissed, the court will not address the issue of punitive damages at this time.

## CONCLUSION

13

Given the South Dakota Supreme Court's previous decisions, the court predicts that the South Dakota Supreme Court would find the assignment of a legal malpractice claim to the adversary in the underlying litigation to be prohibited as a matter of public policy. Thus, it is

ORDERED that the lawyer defendants' motion to dismiss (Docket 5) is granted.

IT IS FURTHER ORDERED that the lawyer defendants' motion to take judicial notice (Docket 7) is granted.

Dated August 1, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE