# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH DAKOTA
## SOUTHERN DIVISION

| | |
|---|---|
| TERESA ANN THOMPSON, Individually, and as Special Administer/Personal Representative of the Estate of WINFIELD THOMPSON, SR., Deceased, and the ESTATE OF WINFIELD THOMPSON, MELISSA PROCHNOW and JAMIE HELGESON, as Special Administrator(s)/Personal Representative(s) of the Estate of Nicholas Helgeson, and the ESTATE OF NICHOLAS HELGESON, <br><br> Plaintiffs, <br><br> v. <br><br> WILLIAM HARRIE and THE NILLES LAW FIRM a/k/a NILLES, SELBO & HARRIE, LTD., and NODAK INSURANCE COMPANY (f/k/a NODAK MUTUAL INSURANCE COMPANY), and NODAK MUTUAL GROUP, INC., a Mutual Holding Company and N.I. HOLDINGS, INC. (An Intermediate Stockholding Company), <br><br> Defendants. | Case No. 4:19-cv-04023-LLP <br><br> **NODAK DEFENDANTS' MEMORANDUM IN SUPPORT OF RULE 12(C) MOTION TO DISMISS** |

## INTRODUCTION

Pursuant to Federal Rule of Procedure 12(c), Nodak Insurance Company, Nodak

Mutual Insurance Company, Nodak Mutual Group, Inc. and N.I. Holdings, Inc. (collectively,

"Nodak"), hereby moves the Court to dismiss Counts 2 and 3 of the Amended Complaint for a failure to state a claim upon which relief may be granted. Nodak also requests dismissal of the remaining Counts 4 and 5, as such claims do not present cognizable causes of action independent of Counts 2 and 3. Teresa Ann Thompson, as administrator of the Estate of Winfield Thompson and Meslissa Prochnow and Jamie Helgeson, as administrators of the Estate of Nicholas Helgeson (collectively "Plaintiffs") have failed to state an appropriate claim for either first- or third-party bad faith against Nodak and as such the claims against Nodak must be dismissed.

## **BACKGROUND**

Winfield Thompson, Sr. and Nicolas Helgeson were involved in a car accident on November 6, 2009 in South Dakota. [Am. Compl., ¶¶ 9, 12.][1] At the time of the accident, Helgeson was driving a vehicle owned by Patrick Nelson. [Am. Compl., Ex. E at 2.] Nelson's insurance had lapsed at the time of the accident. [Id.] Helgeson was eligible for coverage under a policy held by Melissa Prochnow, Helgeson's mother that listed him as a rated driver of a separate vehicle owned by the Prochnows (the "Policy"). [Id. at 3.] The Policy excluded liability coverage arising out of the use of "a vehicle without reasonable belief that the 'insured' is entitled to do so." [Am. Compl., Ex. C at 4.]

---

[1] The Amended Complaint dated January 9, 2019 (hereinafter "Am. Compl.") was attached to the Notice of Removal and can be found at ECF 1-2 at pages 92 to 131.

***The Declaratory Judgment Lawsuit***

During its investigation of the claim, Nodak interviewed Nelson, through his personal counsel, and determined that Helgeson did not have permission to drive the vehicle at the time of the accident. [Am. Compl., Ex. D at 2.] Based on this information and on the advice of counsel Reed Rasmussen, Nodak initiated a declaratory judgment action on December 3, 2010, seeking a judicial determination that the accident was not covered under the policy as Helgeson did not have permission to use the vehicle and it was not a covered vehicle. [Id.] Rasmussen conducted an investigation, propounded and responded to discovery, and conducted multiple depositions of witnesses in an effort to determine whether Helgeson had a reasonable, subjective belief, that he had permission to drive the vehicle. Both the Thompson Estate and Helgeson were parties to the declaratory judgment action. This information, as well as live testimony from Carrie Norby, Nicholas Helgeson, and Melissa Prochnow, was submitted to the district court during the September 19, 2013 court trial. [Ex. E at 1.] Nodak presented testimony from Nelson, the owner of the vehicle, that he did not give Helgeson permission to drive the vehicle unless Helgeson obtained insurance for the vehicle. [Id. at 3.] Helgeson testified that he believed he had permission to drive the vehicle while his car was being repaired. [Id.] Gabe Skarphol, a mutual friend of Helgeson and Nelson, testified that he was party to a conversation where Nelson granted Helgeson permission to drive the vehicle and was unaware that Nelson conditioned the use of the vehicle on Helgeson obtaining insurance.

[Id. at 4.] On March 12, 2014, the district court determined that Nodak failed to establish that the exclusion applied because Helgeson had a reasonable, subjective belief that he had permission to drive the vehicle. [Id. at 5.]

**The Wrongful Death Lawsuit**

On September 26, 2012, while the declaratory judgment lawsuit was underway, attorneys for the Thompson Estate commenced suit against Helgeson for personal injury and wrongful death. [Am. Compl., ¶ 19; Ex. C.] Counsel for the Thompson Estate gave Helgeson an indefinite amount of time to answer or otherwise plead. [Am. Compl., ¶ 22.] Nodak hired the Nilles Law Firm to defend the lawsuit, with the understanding that a member of the Nilles Law Firm who was licensed to practice law in South Dakota would handle the case, that William P. Harrie would obtain *pro hac vice* admission or obtain local counsel. On October 12, 2012, Harrie filed a Notice of Appearance in the suit. [Am. Compl., ¶ 23.] On April 14, 2014, counsel for the Thompson and Chell Estates made a policy limits demand of $100,000. [Am. Compl., ¶ 26.] The time-limited demand required a response by April 28, 2014. [Id.]

The Nilles Law Firm and Harrie failed to communicate that demand to Nodak within the appropriate time period. Nodak was unable to respond to the demand because no one at the Nilles Law Firm ever communicated the existence, amount, or time sensitive nature of the demand to any person at Nodak within the appropriate time limits. [See, generally, ECF 9.]

On May 12, 2014, counsel for Thompson revoked the indefinite extension and demanded an Answer be filed within 30 days. [Am. Compl., Ex. G.] The Nilles Law Firm and Harrie failed to serve an Answer within 30 days and failed to inform Nodak of the existence of either letter or the time sensitive nature of the revocation of the indefinite extension. On June 17, 2014, Thompson moved for default judgment. On June 18, 2014, after years of being the attorney of record, Harrie filed an Answer to the Complaint. Though Harrie signed the Answer, the name of his law partner, Mark Hanson (who was licensed in South Dakota) also appeared on the signature block.

On June 31, 2014, the district court denied the motion for default judgment and accepted the Answer signed by Harrie. [Am. Compl., ¶ 37.] Harrie participated in depositions, appeared at hearings, signed discovery responses and other pleadings, and engaged in the defense of the liability case. Eventually, counsel for Thompson discovered he was not licensed to practice in South Dakota and renewed their motion for default judgment and to strike all pleadings signed by Harrie. [Am. Compl., ¶ 45.] The district court granted the motion and entered default judgment on liability against Helgeson. [Am. Compl., ¶¶ 71, 72.] Nodak then hired and paid Mark Arndt, a Sioux Falls attorney, to replace Harrie and the Nilles Law Firm and to defend Helgeson. [Am. Compl., ¶ 74.]

Arndt was unsuccessful in getting the default set aside and a jury trial with respect to damages was held on November 1, 2017. [Am. Compl., ¶¶ 75, 77, 78.] The jury ultimately awarded the Thompson estate $127,000. [Am. Compl., ¶ 78.] Helgeson had previously

passed away due to unrelated causes. Following the jury's verdict Nodak paid its policy limits in partial satisfaction of the judgment obtained. [Am. Compl., ¶ 79.]

### Prior Federal Court Lawsuit

Plaintiffs Teresa Thompson, individually and as Special Administer of the Estate of Winfield Thompson, and the Estate of Winfield Thompson brought four causes of action against the Lawyer Defendants and Nodak in Thompson v. Harrie, 4:18-cv-04022-KES: unauthorized practice of law, fraud and deceit, civil conspiracy, and barratry/abuse of process. This Court granted the Lawyer Defendants' motion to dismiss all counts and Nodak's motion to dismiss all counts, after determining that "the lawyer defendants did not owe a duty to plaintiffs" and as a result "plaintiffs failed to state a claim for damages for the unauthorized practice of law against the lawyer defendants" and therefore there could be no third party liability on the part of Nodak. Thompson v. Harrie, 4:18-cv-04022-KES, ECF 21, at 9.

### Assignment and Bad Faith Lawsuit

The Thompson Plaintiffs subsequently entered into an agreement with the Helgeson Estate whereby the Thompson Estate agreed not to execute on its judgment against Helgeson's Estate in exchange for an assignment of the Helgeson Estate's potential legal malpractice claims against the Lawyer Defendants and bad faith claims against Nodak. Thompson and Helgeson entered into a written agreement formalizing the assignment on December 26, 2018. Melissa Prochnow and Jamie Helgeson, Special

Administrators of the Helgeson Estate, and the Helgeson Estate are listed as Plaintiffs in this lawsuit along with Teresa Thompson, as Special Administrator for the Thompson Estate.

On August 1, 2019, this Court dismissed Plaintiffs' claims against the Lawyer Defendants, concluding that South Dakota has "limited assignments in general" and that a "legal malpractice action cannot be assigned to the adversary in the underlying litigation." [ECF 25 at 13.]

## ARGUMENT

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standards that govern motions to dismiss under Rule 12(b)(6) also govern motions for judgment on the pleadings under Rule 12(c)." Ellis v. City of Minneapolis, 860 F.3d 1106, 1109 (8th Cir. 2017).

Under Rule 12(b)(6) and Rule 12(c), plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court must "take the plaintiff's factual allegations as true." Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). But is not required to accept as true legal conclusions "couched as ... factual allegation[s]" in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted). The plausibility standard requires that the complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594. Materials that are part of the public record may also be considered in ruling on a Rule 12 motion to dismiss. Porous Media Corp v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999).

South Dakota law recognizes both first- and third-party bad faith claims. Hein v. Acuity, 731 N.W.2d 231, 235 (S.D. 2007). "Third-party bad faith is traditionally based on principles of negligence and arises when an insurer wrongfully refuses to settle a case brought against its insured by a third-party." Id. An insurer commits third-party bad faith when it breaches "its duty to give equal consideration to the interests of its insured when making a decision to settle a case." Id. First-party bad faith, in contrast, "is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." Id. The test for first-party bad faith claims requires the plaintiff to show "(1) an absence of a reasonable basis for denial of policy benefits, and (2) the insurer's knowledge of the lack of a reasonable basis for denial." Zochert v. Protective Life Ins. Co., 921 N.W.2d 479, 490 (S.D. 2018) (citation omitted). A first-party bad faith claim in South Dakota may be based on a "failure to comply with a duty under the insurance contract," but still must involve "an insurance company consciously [engaging] in wrongdoing." Id. (citation omitted).

Here, Plaintiffs have asserted both first- and third-party bad faith claims related to the handling of the Helgeson claim and defense of the lawsuit. Plaintiffs have failed to allege a plausible claim under either theory of bad faith and as such their claims against Nodak must be dismissed.

## II. PLAINTIFFS LACK STANDING TO PURSUE THE BAD FAITH CLAIMS AGAINST NODAK.

### A. The Thompson Plaintiffs lack independent standing to bring any claim against Nodak.

"Standing is an essential and unchanging part of the case-or-controversy requirement of Article III of the United States Constitution." Anderson v. Wells Fargo Bank, N.A., 266 F.Supp.3d 1175, 1180 (D.S.D. 2017) (cleaned up). In South Dakota, "[s]tanding is established through being a real party in interest and is statutorily controlled" and can only be established "if the litigant can show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of Defendant." Agar Sch. Dist. No. 58-1 v. McGee, 527 N.W.2d 282, 285 (S.D. 1995) (internal quotations and citations omitted). Ordinarily, standing requires "that an individual maintain a personal stake in the outcome of the litigation." Howlett v. Stellingwerf, 908 N.W.2d 775, 779 (S.D. 2018).

Similar to the claims at issue in the prior federal court lawsuit, the Thompson Plaintiffs, in their individual capacity, lack standing to claim any independent damages resulting from Nodak's alleged bad faith. While Nodak may have owed certain duties to its insured, Nicholas Helgeson, as the federal court in the first lawsuit already concluded,

Nodak owed no duty to the Thompson Estate at any time during the proceedings. The Thompson Estate was an adversary and stranger to the contract between Nodak and Helgeson. The Thompson Estate lacks the legal standing to assert any rights under the terms of the contract between Helgeson and Nodak and therefore suffered no compensable legal injury based duties arising under that insurance contract. Accordingly, to the extent that the Complaint references damages to "all Plaintiffs" or any independent damages claimed by the Thompson Plaintiffs, such claims should be dismissed, and all corresponding allegations struck from the Amended Complaint. [See, e.g., Am. Compl. ¶¶ 123; 125; 129; 151.]

### B. The assignability of bad faith claims is limited to assignment of the breach of contract claim.

South Dakota recognizes a very limited right of assignment. "A thing in action arising out of the violation of a right of property or out of an obligation may be transferred by the owner." SDCL § 43-42-2. A "thing in action" is limited to "a right to recover money or other personal property." SDCL § 43-42-1. As a general rule, "right of action for damages for a breach of contract" may be assigned. Kobbeman v. Oleson, 574 N.W.2d 633, 643 n.9 (S.D. 1998) (J. Sabers, dissenting). However, "South Dakota recognizes the common-law prohibition on the assignment of personal injury claims." A. Unruh Chiropractic Clinic v. De Smet Ins. Co. of South Dakota, 782 N.W.2d 367, 370 (S.D. 2010). As this Court is aware, "personal injury claims cannot be assigned, proceeds of personal

injury claims cannot be assigned, and equitable claims that violate public policy cannot be assigned. This leaves little room for assignment of claims, other than the insurance malpractice claim addressed in <u>Kobbeman</u>." [ECF 21 at 11.]

Bad faith claims present a unique mixture of tort and contract claims. In South Dakota, the cause of action for bad faith is based on "a contractual relationship, whereby the insurer has accepted a premium from its insured to provide coverage." <u>Hein</u>, 731 N.W.2d at 236. Along with this contractual duty, the insurer owes a "tort duty of equal consideration in insurance bad faith cases exists in the third-party claims process." <u>Lead GHR Enters, Inc. v. Am. States Ins. Co.</u>, 369 F.Supp.3d 909, 927 (D.S.D. 2019). The damages available in some circumstances, include damages for emotional distress akin to personal injury damages. <u>Paulsen v. Ability Ins. Co.</u>, 906 F.Supp.2d 909, 913 (D.S.D. 2012). South Dakota distinguishes "between the contract-based claims governed by [SDCL § 58-12-3] and the tort-based claim of bad faith." <u>Tripp v. Western Nat'l Mut. Ins. Co.</u>, 664 F.3d 1200, 1205 (8th Cir. 2011). To the extent that any bad faith claim may be assigned, that assignment must be limited to the breach-of-contract damages available in a bad faith claim and cannot be extended to included damages for emotional distress.

South Dakota has not directly addressed the assignability of a bad faith claim prior to or since the <u>Unruh</u> decision, but has considered at least one case involving an assigned bad faith claim. <u>See</u> <u>Crabb v. Nat'l Indem. Co.</u>, 205 N.W.2d 633 (S.D. 1973). In <u>Crabb</u>, a plaintiff obtained a wrongful death verdict in excess of the insurance policy limits after

the insurer declined earlier opportunities to settle. After entry of the verdict, the insured assigned "all the claims, demands, and causes of action which he might have had against the insurer" to the plaintiff. Id. at 635. The assignee commenced a bad faith action that was limited to recovering "the unpaid balance of $10,000 on the judgment rendered in [the underlying wrongful death suit] because of the insurer's alleged wrongful refusal to settle." Id. The jury awarded the excess judgment and that award was affirmed on appeal. Id. The *Crabb* court had no occasion to consider the policy implications of the assignment of a bad faith claim generally and did not consider whether any such assignment would extend to damages for emotional distress. To the extent that bad faith claims are assignable under South Dakota law, Nodak submits that the recoverable damages of an assigned bad faith claim are limited to those obtained in Crabb – the amount of the judgment in excess of policy limits.

This limitation is consistent with the rationale expressed in this Court's previous Order and the South Dakota Supreme Court's decision in Unruh. As the Court is aware, South Dakota recognizes the prohibition on the assignment of personal injury claims for two main policy reasons: "first, prior to wrongful death statutes, personal claims did not survive the death of the victim; and second, the prohibition prevented maintenance and champerty...which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law." Unruh, 782 N.W.2d at 370 (citations omitted). Here,

both of these sound policy considerations favor limiting the assignment of any bad faith claim to a claim for damages under the contract.

First, Helgeson is now deceased and while his estate is entitled to bring an action on his behalf, the assignment of that derivative cause of action to his former adversary is plainly not authorized or condoned by the survival statute in either South Dakota or North Dakota. See SDCL § 43-42-2 ("Upon the death of the owner [a thing in action] passes to his personal representatives..."); NDCC § 30.1-18-03 ("a personal representative of a decedent domiciled in this state at the decedent's death has the same standing to sue and be sued in the courts of this state at the decedent's death as the decedent had immediately prior to death."). Neither statute considers or authorizes the assignment of such claim by the personal representatives of the decedent and the assignment here has alienated the cause of action from the individual who was purportedly injured in the first place—Helgeson himself.[2]

Second, the assignment of Helgeson's bad faith claim to his former adversary implicates concerns regarding both maintenance and champerty. The assignment at issue

---

[2] Further complicating issues is the manner in which the Plaintiffs would be able to prove the emotional distress they claim was suffered by Helgeson. "To recover damages for emotional distress in South Dakota, a plaintiff must establish that he sustained a pecuniary loss because of the bad faith of the insurer." Athey v. Farmers Ins. Exch., 234 F.3d 357, 363 (8th Cir. 2000). "The survivability of a claim depends upon what pecuniary damages are supported by the facts." Paulsen, 906 F.Supp.2d 909, 915 (D.S.D. 2012). Since Helgeson passed away in 2018, medical records alone, it is doubtful that Plaintiffs will be able to present admissible evidence, let alone expert testimony, supporting any claim for emotional distress. The emotional distress claim, supported by medical records alone, with no right to cross-examine Helgeson, should not be allowed.

is a full legal assignment of Helgeson's rights against Nodak. "[L]egal assignment of claims directly implicate maintenance and champerty, due to the assignor's transfer of control to the assignee." [ECF 25 at 10.] "Maintenance is defined as an officious intermeddling in a suit that in no way belongs to one, by maintaining or assisting either party with money or otherwise, to prosecute or defend it." McKellips v. Mackintosh, 475 N.W.2d 926, 930 (S.D. 1991) (citation omitted). Whereas champerty is "a form of maintenance" and "involves an agreement under which a person who has no interest in the suit of another undertakes to maintain or support it at his own expense in exchange for part of the litigated matter in event of a successful conclusion of the cause." Id. Here, the assignment is a clear example of intermeddling in a suit in which they have no valid or cognizable interest and as such runs afoul of South Dakota's desire to limit the influence of maintenance and champerty.

As such, the assignment of the bad faith claims must be limited to a cause of action for damages under the insurance contract as all other forms of damages available for bad faith insurance practices are not assignable under South Dakota law. Each count of the complaint referencing any emotional damage suffered by Helgeson or any extra-contractual damages must be dismissed. [See, e.g., Am. Compl., ¶¶ 127, 128 at ¶ 1 of the "Wherefore" clause]. Plaintiffs have failed to properly plead a cognizable third-party bad faith claim properly limited to the breach of contract claim and as such Count 2 of the Amended Complaint should be dismissed.

III.    **PLAINTIFFS HAVE FAILED TO PROPERLY PLEAD A FIRST-PARTY BAD   FAITH CLAIM**

In the first-party context, an insurer "does not act like…a fiduciary with respect to its insured as it does for a claim by a third-party against its insured." Zochert v. Protective Life Ins. Co., 921 N.W.2d 479, 489 (S.D. 2018). "[A]n insurer and and insured are adversaries in the first party situation." Bertelsen v. Allstate Ins. Co., 796 N.W.2d 685, 700 (S.D. 2011). A first-party bad faith claim arises when an insurance company "consciously engages in wrongdoing during its processing or paying benefits to its insured." Hein at 235. In order to prove a first-party bad faith claim, an insured must show (1) ''an absence of a reasonable basis for denial of policy benefits [,]'' and (2) ''the knowledge or reckless disregard of a reasonable basis for denial." Champion, 399 N.W.2d at 324. ''[T]he knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is reckless disregard or a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.'' Id. Bad faith conduct can include a failure to conduct a reasonable investigation of the claim and a failure to provide an adequate defense. Biegler, 621 N.W.2d at 599.

Here, Plaintiffs allege Nodak acted in bad faith by (1) initiating the declaratory judgment action and (2) failing to provide an adequate defense to the Thompson lawsuit.

First, there can be no finding of bad faith where an insurer commences a declaratory judgment action based on a preliminary investigation of the facts and a reasonable reading of the insurance policy. "[T]he scope of coverage of an insurance

policy is determined from the contractual intent and the objectives of the parties as expressed in the contract." St. Paul Fire & Marine Ins. Co. v. Schilling, 520 N.W.2d 884, 887 (S.D. 1994). "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." Opperman v. Heritage Mut. Ins. Co., 566 N.W.2d 487, 489 (S.D. 1997). There is no duty to defend where "the allegations in the complaint clearly fall outside policy coverage." Demaray v. De Smet Farm Mut. Ins. Co., 801 N.W.2d 284, 288 (S.D. 2011). It is well-settled that the insured and insurer are adversaries in the first-party bad faith context and that "an insured is permitted to challenge claims that are fairly debatable." Hein, 731 N.W.2d at 235. Only "a frivolous or unfounded refusal to comply with a duty under an insurance contract constitutes bad faith." Id. Here, Nodak had a well-founded and reasonable basis to initially deny coverage and seek a declaratory judgment action: the owner of the vehicle denied giving Helgeson permission to drive the vehicle and Helgeson had mislead law enforcement and Nodak about the true ownership of the vehicle.

Based on Nodak's preliminary investigation, which included an interview of the owner of the vehicle and a review of law enforcement records, Nodak concluded, based on the advice of counsel of Ardnt, that Helgeson did not have permission to drive the vehicle. Nelson testified, under oath, that he did not give Helgeson permission to drive his vehicle at the time of the accident, Nodak reasonably interpreted its policy to exclude coverage for Helgeson's unauthorized use of the Nelson vehicle. Nelson's statements,

combined with the fact that Helgeson gave inconsistent information about ownership of the vehicle to law enforcement and had provided wholly inaccurate information to Nodak employees and counsel for Nodak, provided Nodak a good faith basis to conclude that the policy exclusion applied. Even though the declaratory judgment action took years to reach its conclusion, the delay was not caused by Nodak alone, difficulty contacting and communicating with Helgeson substantially contributed to the delay of the proceeding as a whole. Further, whatever delay Nodak caused does not, standing alone, establish bad faith. Arp v. AON/Combined Ins. Co., 300 F.3d 913, 916 (8th Cir. 2002) (applying South Dakota law, stating "being dilatory or even slow doesn't in and of itself amount to bad faith."). Plaintiffs have failed to state a claim for first-party bad faith based solely on Nodak's unsuccessful prosecution of a declaratory judgment action.

Second, the record establishes that once Nodak's duty to defend was established through the declaratory judgment action, Nodak retained and funded the defense of the lawsuit. While the defense was ultimately unsuccessful, and significantly impaired by Harrie's unilateral decision to engage in the unlicensed practice of law, Plaintiffs have failed to state a colorable claim for bad faith based on the breach of the duty to defend. The South Dakota federal court recently predicted that the South Dakota Supreme Court would adopt § 12 of the Restatement of the Law of Liability Insurance (Am. Law Inst., Revised Proposed Final Draft No. 2, Sept. 7, 2018) as it relates to the standard for the bad faith breach of the duty to defend. "A lawyer hired by an insurance company to represent

an insured is not an agent of the company such that the company should be held

vicariously liable for the lawyer's misconduct." Sapienza v. Liberty Mutual Fire Ins. Co., 389

F.Supp.3d 648, 654 (D.S.D. 2019). "Instead, the lawyer is an independent contractor who

owes the insured a duty to exercise his or her own judgment when representing the

insured." Id. However, § 12 provides two narrow scenarios under which the insurer may

be liable for providing an inadequate defense due to the malpractice of defense counsel:

> (1) If an insurer undertakes to select counsel to defend a legal action against
> the insured and fails to take reasonable care in so doing, the insurer is
> subject to liability for the harm caused by any subsequent negligent act or
> omission of the selected counsel that is within the scope of the risk that
> made the selection of counsel unreasonable.
>
> (2) An insurer is subject to liability for the harm caused by the negligent act
> or omission of counsel provided by the insurer to defend a legal action when
> the insurer directs the conduct of the counsel with respect to the negligent
> act or omission in a manner that overrides the duty of the counsel to
> exercise independent professional judgment.

Plaintiff has failed to allege any facts regarding Nodak's selection of the Nilles Law

Firm to defend the Thompson claim nor any facts that would support a conclusion that

Nodak overrode or otherwise prevented the Nilles Law Firm, or Harrie, from delivering

competent legal services.  The comments to § 12 provide that

> What constitutes negligence in the selection of defense counsel is a fact-
> specific question that turns on the insurer's efforts to assure that the lawyer
> has adequate skill and experience in relation to the claim in question, as well
> as adequate professional liability insurance...The insurer is not subject to
> liability for all wrongful acts of the selected counsel, but rather only for acts
> or omissions within the scope of the risk that made the selection of counsel
> unreasonable.

Restatement of the Law of Liability Insurance § 12, reporter's note b. With respect to negligent selection, Plaintiffs have failed to allege, and there is no evidentiary support to support a claim that Nodak lacked reasonable care in selecting the Nilles Law Firm and there are no facts to support an inference that Nodak was or could have been on notice of Harrie's intention or capacity to commit the unlicensed practice of law. Nodak was wholly unaware that, when retaining the Nilles Law Firm and Harrie, that Harrie would choose to engage in the unlicensed practice of law, fail to seek *pro hac vice* admission, fail to allow his South Dakota-licensed law partners to sign the pleadings and conduct the defense of the lawsuit, and/or fail to obtain local South Dakota counsel. Nothing in Nodak's past dealings with the Nilles Law Firm or Harrie put them on notice of Harrie's intent or capacity to engage in the unlicensed practice of law or the Nilles Law Firm's complete lack of oversight of and communication with Harrie. Nodak did not consent to or endorse Harrie's unlicensed practice of law. Moreover, as soon as Nodak became aware of the unlicensed practice of law, Nodak retained separate, licensed defense counsel and made every effort to provide a vigorous and meritorious defense on behalf of Helgeson. Newly retained counsel attempted unsuccessfully to have the default judgment set aside and continued to defend the lawsuit through trial. As soon as Nodak became aware of Harrie's actions, Nodak took steps to provide a full defense to the lawsuit in good faith. As such, Nodak cannot be liable for the negligent selection of defense counsel.

Likewise, Plaintiffs have failed to allege, and there is no evidentiary support a claim that Nodak overrode the professional advice of Harrie at any point during the defense of the Helegeson lawsuit. "[C]ourts and the draft of § 12 of the Restatement have rejected the notion that insurers are vicariously liable for any malpractice committed by defense counsel. The authors of the Restatement found no cases 'holding a liability insurer liable for the torts of counsel based on a theory of apparent authority or negligent supervision.'" *Sapienza*, 389 F.Supp.3d at 656 (quoting Restatement of the Law of Liability Insurance § 12 reports' note d). Plaintiffs have failed to allege any facts that support a plausible inference that Nodak was so closely involved in the Helgeson defense that it could be liable for any of the consequences of Harrie's departures from the standard of care. Instead, as evidenced by Nodak's crossclaim for malpractice, it is clear that Harrie's negligent acts and omissions fall squarely at the feet of the Nilles Law Firm and Harrie. Harrie and the Nilles Law Firm failed to inform Nodak of significant developments in the case and failed, at any point, to disclose to Nodak that he had been defending the lawsuit, signing pleadings, and appearing at hearings without proper admission or licensure. Accordingly, Plaintiffs have failed to state a colorable claim for the breach of the duty to defend on a theory that Nodak overrode the professional advice of Harrie.

Plaintiffs have failed to properly state a claim for first-party bad faith. As such, Count 3 of the Amended Complaint must be dismissed.

## IV.     BECAUSE COUNTS 2 AND 3 FAIL, COUNTS 4 AND 5 MUST ALSO BE DISMISSED

Count 4 of the Amended Complaint makes a claim for attorney fees under SDCL §
58-12-3 as a result of the "vexatious and unreasonable" failure "or refusal to timely and
properly provide defense counsel in the underlying action." [Am. Compl. ¶¶ 176-178.] The
"objective of SDCL § 58-12-3 is to discourage contesting insurance coverage and to
reimburse an insured for any reasonable attorney fees necessarily incurred in defending
or enforcing a valid insurance contract right." All Nation Ins. Co. v. Brown, 344 N.W.2d 493,
494 (S.D. 1984). The only attorney fees that could potentially be recoverable under the
statute were those paid to Helgeson's personal counsel in the declaratory judgment
action and cannot be extended to "the amount of the Judgment upon Jury Verdict" as
claimed in the Amended Complaint. [Am. Compl. ¶ 178.]

But, as discussed above, even the fees incurred by Helgeson's personal counsel in
the declaratory judgment action cannot be recovered because it is clear from the
Amended Complaint and the attached district court documents that the initiation and
litigation of the declaratory judgment action was based on bona fide coverage dispute
supported by an investigation, multiple witness interviews, advice of counsel, and a
reasonable interpretation of the policy. "Where there are open questions of fact or law
determinative of the insured's liability, the insurer, acting in good faith, may insist on a
judicial determination of such questions without subjecting itself to penalties for
vexatious refusal to pay." Howie v. Pennington Cty., 563 N.W.2d 116, 119 (S.D. 1997). The

pleadings attached to the complaint establish that the declaratory judgment action was not a "vexatious and unreasonable" denial of benefits, but rather a genuine legal dispute based on Nodak's good faith investigation of the claim. Nodak had a right to pursue the declaratory judgment action and cannot be penalized for a vexatious refusal to pay based on the legitimate declaratory judgment action.

With respect to Count 5, South Dakota law permits a jury to award punitive damages for "any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed[.]" SDCL § 21-3-2. "[P]unitive damages are not allowed absent an award for compensatory damages." Schaffer v. Edward D. Jones & Co., 521 N.W.2d 921, 928 (S.D. 1994). Because Plaintiffs have failed to state colorable claims for compensatory damages against Nodak, the claim for punitive damages must fail.

Moreover, Punitive damages may not be awarded for a breach of contract, an insured may "seek punitive damages from her insurer when prosecuting a bad faith action." Biegler v. Am. Family. Mut. Ins. Co., 621 N.W.2d 592, 604 (S.D. 2001) (citing Harter v. Plains Ins. Co., 579 N.W.2d 625 (S.D. 1998). Because the assignment is limited to the breach of contract cause of action and damages, Plaintiffs should not be permitted to maintain a claim for punitive damages. As such, Count 5 of the Amended Complaint should be dismissed.

**<u>CONCLUSION</u>**

Plaintiffs lack standing to pursue the bad faith claims against Nodak as set forth in the Amended Complaint and these claims fail to meet the plausibility standard. As such, Nodak respectfully requests that all counts against Nodak be dismissed.

Date:  October 31, 2019

_____
Angela Beranek Brandt (#3091)
Patrick H. O'Neill Jr. (*pro hac vice*)
LARSON • KING, LLP
30 East Seventh Street, Ste. 2800
Saint Paul, MN  55101
(651) 312-6500 | Fax: (651) 312-6618
abrandt@larsonking.com
*Attorneys for Nodak Defendants*